# Exhibit B



# OFFICE OF THE DISTRICT CLERK
# ERIC GARZA

974 East Harrison Street – Brownsville, Texas 78520
Office (956) 544-0838   Fax (956) 544-0841

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

## COVER LETTER-REQUEST

DATE:_____

DISTRICT CLERK:

RE: CAUSE NO. _____ 2016-DCL-00459 _____

_____ Mitchell _____ VS. _UHS Harlingen Hospital_

### ENCLOSED FOR FILING, PLEASE FIND THE FOLLOWING:

☑ Plaintiff's Original Petition.  ☐ Plaintiff's _____ Amended Petition.
☐ Defendant's Original Answer.☐ Defendant's ___ __ ___ Amended Answer.
☐ Our firm check in the amount of $_____for court costs.
☐ Motion _____
☐ Order _____
☐ Judgment _____
☐ Decree of Divorce _____
☐ Jury Fee Request and deposit of $ _____
☑ Other _Electronic payment of fees_____
_____

### PLEASE INDICATE YOUR REQUEST BELOW:

☐ Request for Issuance of Writ of Withholding to Employer - $15.00 fee paid
   By: _____
☐ Prepare an Abstract of Judgment - $8.00 fee paid by _____
☐ Prepare Writ of Execution -$8.00 fee paid _____
☐ Prepare Order of Sale - $8.00 fee paid _____
☑ Prepare Citation and return for out-of-county service.
☐ Prepare Citation and have Defendant(s) served by Sheriff's Office.
☐ Prepare Citation by Certified Mail, Return Receipt Requested.
☐ Prepare Citation and serve Defendant(s) by Civil Process server _____
☐ File among papers in the above styled and numbered cause.
☐ Other _____
_____

Signature _____

☑ Attorney   ☐ Party in the case   ☐ Other
Print Name: _____ William Akins_____

_____
Received by: Deputy District Clerk
Ck#_____   Cash _____

2016-DCL-00459                                    Cameron County - 444th District Court

CAUSE NUMBER *(FOR CLERK USE ONLY)*: _____    COURT *(FOR CLERK USE ONLY)*: _____

STYLED  Bobby Mitchell v. VHS Harlingen Hospital Co., et al.

(e.g. John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| Name:<br>William Akins<br><br>Address:<br>100 Congress #2000<br><br>City/State/Zip:<br>Austin, TX 78701<br><br>Signature:<br>[signature] | Email:<br>Wakins@fisherboyes<br>.com<br><br>Telephone:<br>214-924-9504<br><br>Fax:<br>214-981-3768<br><br>State Bar No:<br>24011972 | Plaintiff(s)/Petitioner(s):<br>Bobby Mitchell<br><br><br>Defendant(s)/Respondent(s):<br>VHS Harlingen Hospital<br>VHS Harlingen Holdings<br>Central Financial Control<br><br>[Attach additional page as necessary to list all parties] | ☑ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other:<br><br>Additional Parties in Child Support Case:<br><br>Custodial Parent:<br><br>Non-Custodial Parent:<br><br>Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case (select only 1):**

| | Civil | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☑ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract: | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional Liability:<br><br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability List Product:<br><br>☐ Other Injury or Damage: | ☐ Eminent Domain/ Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property:<br><br>**Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus— Pre-indictment<br>☐ Other: | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children<br><br><br>**Other Family Law**<br>☐ Enforce Foreign Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities of Minority<br>☐ Other: | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order<br><br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Parentage/Paternity<br>☐ Termination of Parental Rights<br>☐ Other Parent-Child: |
| **Employment** | | **Other Civil** | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: | ☐ Administrative Appeal<br>☐ Antitrust/Unfair Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: | | |

| **Tax** | *Probate & Mental Health* | |
|---|---|---|
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: |

**3. Indicate procedure or remedy, if applicable (may select more than 1):**

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

**4. Indicate damages sought (do not select if it is a family law case):**
☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☑ Over $100,000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☐ Over $1,000,000

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

CAUSE NO. _____ 2016-DCL-00459

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Cameron County - 444th District Court |
| | § | _____ JUDICIAL DISTRICT |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | |
| INDIVIDUALLY AND D/B/A VALLEY | § | |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | CAMERON COUNTY, TEXAS |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | |

---

## ORIGINAL PETITION OF PLAINTIFF BOBBY MITCHELL.

---

Plaintiff Bobby L. Mitchell, files his Original Petition against Defendants VHS Harlingen Hospital Company, LLC, VB Harlingen Holdings, Individually and d/b/a Valley Baptist Medical Center, and Syndicated Office Systems, LLC, Individually and d/b/a Central Financial Control.

### DISCOVERY CONTROL PLAN

1.      Pursuant to Rule 190.3 of the Texas Rules of Civil Procedure, Mr. Mitchell intends to conduct discovery pursuant to a Discovery Control Plan—By Rule (Level 2).

### PARTIES

2.      Plaintiff Bobby L Mitchell, ("Mr. Mitchell") is an adult resident of Willacy County, Texas, and resides at 394 West Harris Avenue, Raymondville, Texas 78580-2435.

3.      Defendant VHS Harlingen Hospital Company, LLC ("VHS"), is a foreign limited liability company structured under the laws of Tennessee.    VHS operates under numerous

assumed names, including Valley Baptist Medical Center – Harlingen, whose physical address is 2101 Pease St, Harlingen, TX 78550.  VHS may be served with process by serving its registered agent in Texas: CT Corporation System, at 1999 Bryan St. Ste. 900, Dallas, TX 75201-3136.

4.      Defendant VB Harlingen Holdings, Individually and d/b/a Valley Baptist Medical Center ("VB") is a domestic non-profit corporation. Defendant has its principal place of business at 2101 Pease St., Harlingen, TX 78550. Defendant may be served with process by serving its registered agent: Kimberly Anderson, 1267 North Stuart Place Road, Harlingen Texas, 78552.

5.      Defendant Syndicated Office Systems, LLC, Individually and d/b/a Central Financial Control ("CFC") is a foreign limited liability company that is structured under the laws of California.  Defendant has a principal place of business at 1445 Ross Ave., Suite 1400, Dallas, Texas 75202. Defendant may be served with process by serving its registered agent in Texas: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX, 75201-3136.

JURISDICTION AND VENUE

6.      This Court has jurisdiction over this lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.  Pursuant to Texas Rule of Civil Procedure 47(c), Mr. Mitchell states that, at this time and subject to amendment, he seeks both non-monetary relief and monetary relief over the minimum jurisdictional requirements, but not more than $500,000.00.

7.      Venue is proper in Cameron County pursuant to Texas Civil Practice & Remedies Code § 15.002 because VHS/VB's principal place of business is in Cameron County, Texas.

ASSUMED NAMES AND AFFILIATIONS

8.      Pursuant to Texas Rule of Civil Procedure 28, Mr. Mitchell hereby brings suit against all partnerships, unincorporated associations, individuals, entities and private

corporations doing business under the assumed or common names of Valley Baptist Medical Center, VHS/VB Harlingen Hospital, VB Harlingen Holdings, and/or Central Financial Control.

FACTS

9.     Mr. Mitchell received certain medical services from VHS/VB on September 10, 2013 (Claim #1), September 13, 2013 (Claim #2), and February 24, 2014 (Claim #3).

10.     Upon Mr. Mitchell's arrival at the hospital and before receiving treatment, Mr. Mitchell was required to complete certain paperwork containing a purported agreement for services that was required to be completed by Mr. Mitchell prior to admission to VHS/VB.

11.     As a result of Mr. Mitchell being a patient and VHS/VB providing medical services to Mr. Mitchell, VHS/VB had a special relationship with Mr. Mitchell.

12.     Mr. Mitchell relied on the implied representations made by VHS/VB at the time of admittance and prior to receiving any medical treatment that he would be charged only a reasonable fee for the medical services and supplies to be provided.   Yet, each time that Mr. Mitchell received medical treatment, he was charged excessive fees and costs, harassed with repeated billing, and placed with a collections company that impaired his credit.

**A.     Claim #1**

**I.     Balance Billing Campaign Against Mr. Mitchell**

13.     On or about September 10, 2013, Mr. Mitchell received certain medical services from VHS/VB.

14.     On this occasion, Mr. Mitchell was treated, and the total amount charged by VHS/VB for the medical services and supplies was $1,586.55. (*See* Pl. Ex. 1).

15.     VHS/VB submitted a claim in the amount of $1,586.55 to a third party administrator of Mr. Mitchell's health insurance plan (the "Plan").   (*Id.*).   Mr. Mitchell's Plan

covered $132.56, representing a fair and reasonable cost for the medical services and supplies received by Mr. Mitchell. (*Id.*).

16.     Thereafter, on or about October 17, 2013, VHS/VB received a Notice of Adverse Benefits Determination, explaining the charges submitted, the amount that was ineligible, and the benefit payable. (*Id.*). The Notice of Adverse Benefits Determination also explained the reasons justifying the denial of VHS/VB's claim in the amount of $1,453.99 of the total $1,586.55. (*Id.*).

17.     On or about October 11, 2013 (date from Account Summary), the Plan remitted payment to VHS/VB in the amount of $132.56, which payment was accepted by VHS/VB. (*Id.*).

18.     Since that time, VHS/VB and CFC have embarked on an unwavering campaign to collect the purported outstanding balance from Mr. Mitchell (known as the practice of "balance billing"), which represents fees exceeding what are fair and reasonable, despite Mr. Mitchell's repeated efforts to stop the unjustified collection.

19.     On October 29, 2013, VHS/VB – having already received the above notice – balance billed Mr. Mitchell, demanding payment of $819.37. (*See* Pl. Ex. 2). In this "Statement," VHS/VB shows an unexplained $634.62 "NC AR Adjustment" and a "NON CONTRACTED INSURANCE PYMT" credit of $132.56. (*Id.*).

20.     On December 19, 2013, VHS/VB balance billed Mr. Mitchell for a second time, again demanding payment of $819.37. (*See* Pl. Ex. 3).

21.     On January 28, 2014, VHS/VB balance billed Mr. Mitchell for a third time. (*See* Pl. Ex. 4). In this "Final Notice," VHS/VB threatened Mr. Mitchell with credit impairment.

22.     On February 16, 2015, more than a year later, VHS/VB reasserted its claim against Mr. Mitchell for $819.37. (*See* Pl. Ex. 5). In this clearly erroneous "Statement," instead

of indicating that Mr. Mitchell's insurance provider had paid $132.56, VHS/VB fraudulently stated that Mr. Mitchell's insurance had not contributed anything at all. (*Id.*). In fact, to make the numbers match, VHS/VB chose to "take credit" for the $132.56 insurance payment, fraudulently incorporating the payment into their "Adjustments" line item. (*Id.*).

23.     In response to the balance bill attempts, in a March 16, 2015, letter drafted by Mr. Mitchell's legal counsel, Mr. Mitchell placed VHS/VB on notice that he was represented by counsel, stated that he continued to dispute the amount of $819.37, and made an offer of settlement. (*See* Pl. Ex. 6)

24.     Disregarding Mr. Mitchell's letter entirely, on April 20, 2015, VHS/VB balance billed Mr. Mitchell for the fifth time. (*See* Pl. Ex. 7). Again, VHS/VB failed to acknowledge the insurance payment, and "took credit" for the discount.

25.     Mr. Mitchell's legal counsel followed with a letter dated June 2, 2015. For the second time, Mr. Mitchell's letter placed VHS/VB on notice that Mr. Mitchell was represented by counsel, stated that the claim is still in dispute, and made an offer of settlement. (*See* Pl. Ex. 8).

**II.     CFC's Balance Billing and Illegal Debt Collection Activities**

26.     Shortly thereafter, VHS/VB, directly or indirectly, referred the purported debt to Syndicated Office Systems, LLC, d/b/a Central Financial Control ("CFC") for additional collection activity, fully cognizant that Mr. Mitchell was represented by counsel.

27.     CFC never properly investigated the accuracy of Mr. Mitchell's alleged debt. Nevertheless, on June 14, 2015, CFC reported the disputed debt to at least one credit reporting agency. (*See* Pl. Ex. 9). As of the date of filing, that report continues to negatively impair Mr. Mitchell's credit, showing an alleged debt in the amount of $819.37. (*Id.*).

28.     By letter dated August 14, 2015, CFC sent a collection demand directly to Mr. Mitchell demanding the $819.37 purported balance. (*See* Pl. Ex. 10). The document titled "Credit Reporting Notice" stated, "To avoid having this debt reported and appearing on your credit report, you need to contact us as soon as possible." (*Id.*). However, this was a complete fabrication, since CFC had already reported the debt to a credit agency a month earlier. (*See* Pls. Ex. 9)

29.     In direct response to CFC's August 14, 2015 letter, Mr. Mitchell's legal counsel sent a letter to CFC dated September 14, 2015. (*See* Pl. Ex. 11).  Mr. Mitchell's letter expressly stated: "From this point forward, please direct all communication regarding this matter to [legal counsel]," and "We dispute the validity of this debt and/or a portion thereof. Please verify this debt and provide a copy of all verification documents so that we may further assess this claimed amount due." (*Id.*).

30.     Thirty six (36) days later, on October 20, 2015, CFC responded to Mr. Mitchell's letter stating that the account had been "validated," but refused to supply any verification documents. (*See* Pl. Ex. 12). This does not constitute an effective verification. Regardless, CFC failed to respond within the statutory thirty (30) day window.

**B.     Claim #2**

**I.     Another Balance Billing Campaign Against Mr. Mitchell**

31.     On or about September 13, 2013, Mr. Mitchell received additional medical services from VHS/VB.

32.     Mr. Mitchell was treated, and the total amount charged by VHS/VB for the medical services and supplies received was $66,853.95. (*See* Pl. Ex. 13).

33.    VHS/VB submitted a claim in the amount of $66,853.95 to a third party administrator of Mr. Mitchell's health insurance plan. (*Id.*). Mr. Mitchell's Plan covered $16,979.78, representing a fair and reasonable cost for the medical services and supplies received by Mr. Mitchell. (*Id.*).

34.    Thereafter, on or about November 1, 2013, VHS/VB received a Notice of Adverse Benefits Determination, explaining the charges submitted, the amount that was ineligible, and the benefit payable. (*Id.*). The Notice of Adverse Benefits Determination also explained the reasons justifying the denial of VHS/VB's claim in the amount of $49,874.16 of the total $66,853.95. (*Id.*).

35.    On or about November 1, 2013 (date from Account Summary), the Plan remitted payment to VHS/VB in the amount of $16,979.78, which payment was accepted by VHS/VB. (*Id.*).

36.    Since that time, VHS/VB and CFC have attempted to balance bill Mr. Mitchell for fees beyond what is fair and reasonable, despite Mr. Mitchell's repeated efforts to stop the unjustified collection.

37.    On September 1, 2014, nearly ten (10) months after VHS/VB received the above notice, VHS/VB began their attempts to balance bill Mr. Mitchell, demanding payment of $23,132.59. (*See* Pl. Ex. 14). In a clearly erroneous document, instead of indicating that Mr. Mitchell's insurance provider had paid $16,979.78 - representing a fair and reasonable cost for the medical services and supplies provided - VHS/VB stated that Mr. Mitchell's insurance had not contributed anything at all. (*Id.*). In fact, VHS/VB chose to "take credit" for the $16,979.78 insurance payment, fraudulently incorporating the payment into their $43,721.36 "Adjustments" line item. (*Id.*).

38.     In a response letter dated September 22, 2014, Mr. Mitchell's legal counsel requested that all communication be directed to counsel, that direct communication to Mr. Mitchell be stopped immediately, and disputed the amount claimed. (*See* Pl. Ex. 15)

### II.     CFC's Balance Billing and Illegal Debt Collection Activities

39.     Sometime thereafter, VHS/VB, directly or indirectly, referred the purported debt to CFC for additional collection activity, fully cognizant that Mr. Mitchell was represented by counsel and that he disputed the debt.

40.     CFC never properly investigated the accuracy of Mr. Mitchell's alleged debt to VHS/VB. Nevertheless, on May 12, 2015, CFC reported the disputed debt to at least one credit reporting agency. (*See* Pls. Ex. 9). As of the date of filing, that report continues to negatively impair Mr. Mitchell's credit, showing an alleged debt in the amount of $23,132.00. (*Id.*).

41.     By letter dated September 29, 2015, CFC sent a "settlement offer" directly to Mr. Mitchell, offering to settle with Mr. Mitchell for a portion of the total $23,132.00. (*See* Pl. Ex. 16)

42.     In a response dated November 2, 2015, Mr. Mitchell's legal counsel again requested that all communication be directed to counsel, that direct communication to Mr. Mitchell be stopped immediately, disputed the amount claimed, and requested verification of the debt. (*See* Pl. Ex. 17)

43.     As of the date of filing, CFC has not verified the debt.

### C.     Claim #3

### I.     Balance Billing Campaign Against Mr. Mitchell

44.     On or about February 24, 2014, Mr. Mitchell received certain medical services from VHS/VB.

45.     Mr. Mitchell was treated, and the total amount charged by VHS/VB for the medical services and supplies received was $2,484.30. (*See* Pl. Ex. 18).

46.     VHS/VB submitted a claim in the amount of $2,484.30 to a third party administrator of Mr. Mitchell's health insurance plan. (*Id.*).   Mr. Mitchell's Plan covered $301.60, representing a fair and reasonable cost for the medical services and supplies received by Mr. Mitchell. (*Id.*).

47.     Thereafter, on or about March 31, 2014, VHS/VB received a Notice of Adverse Benefits Determination, explaining the charges submitted, the amount that was ineligible, and the benefit payable.   (*Id.*). The Notice of Adverse Benefits Determination also explained the reasons justifying the denial of VHS/VB's claim in the amount of $2,182.70 of the total $2,484.30.   (*Id.*).

48.     On or about March 28, 2014 (date from Account Summary), the Plan remitted payment to VHS/VB in the amount of $301.60, which payment was accepted by VHS/VB.   (*Id.*).

49.     Since that time, VHS/VB and CFC have attempted to balance bill Mr. Mitchell, which represents fees beyond what is fair and reasonable, despite Mr. Mitchell's repeated efforts to stop the unjustified collection.

50.     On May 20, 2014, VHS/VB – having already received the above notice – balance billed Mr. Mitchell, demanding payment of $1,810.06.  (*See* Pl. Ex. 19).  The "Statement" shows an unexplained $372.64 "Adjustment" alongside a "Paid by Insurance" credit of $301.60.  (*Id.*).

51.     On June 23, 2014, VHS/VB balance billed Mr. Mitchell for a second time, again demanding payment of $1,810.06.  (*See* Pl. Ex. 20).

52.     In response to the balance bill attempts, in a letter dated June 24, 2015, drafted by Mr. Mitchell's counsel, Mr. Mitchell placed VHS/VB on notice that he was represented by

counsel, stated that he continues to dispute the amount of $1,810.06, and made an offer of settlement directly to VHS/VB. (*See* Pl. Ex. 21)

53.    On July 14, 2014, VHS/VB balance billed Mr. Mitchell for a third time, demanding payment of $1,810.06. (*See* Pl. Ex. 22).

54.    On August 22, 2014, VHS/VB balance billed Mr. Mitchell for a fourth time, demanding payment of $1,810.06. (*See* Pl. Ex. 23).

55.    In a response letter dated September 15, 2014, Mr. Mitchell's legal counsel "reminded" VHS/VB that all communication is to be directed to counsel, that direct communication to Mr. Mitchell be stopped immediately, and that the debt was disputed. (*See* Pl. Ex. 24)

## II.    CFC's Balance Billing and Illegal Debt Collection Activities

56.    Sometime thereafter, VHS/VB, directly or indirectly, referred the purported debt to CFC for additional collection activity, fully cognizant that Mr. Mitchell was represented by counsel and that he disputed the debt.

57.    CFC never properly investigated the accuracy of Mr. Mitchell's alleged debt to VHS/VB. Nevertheless, on March 3, 2015, CFC reported the disputed debt to at least one credit reporting agency. (*See* Pl. Ex. 9). As of the date of filing, that report continues to negatively impair Mr. Mitchell's credit, showing an alleged debt to VHS/VB and CFC in the amount of $1,810.00. (*Id.*).

58.    By letter dated April 17, 2015, CFC sent a "Credit Reporting Notice" directly to Mr. Mitchell, demanding payment of the $1810.06, and stating: "You are hereby notified that thirty days after the date of this letter a credit report reflecting you record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations." (*See* Pl. Ex. 25).

However, this was a complete fabrication since CFC had already reported the debt to a credit agency a month earlier. (*See* Pl. Ex. 9).

59.     In direct response to CFC's letter, Mr. Mitchell's legal counsel sent a letter to CFC dated June 12, 2015. (*See* Pl. Ex. 26). Mr. Mitchell's letter expressly stated: "From this point forward, and pursuant to 15 U.S.C. § 1692c(a)(2), please direct all communication regarding this matter to [legal counsel]" and "We dispute the validity of this debt and/or a portion thereof. Please verify this debt and provide a copy of all verification documents so that we may further assess this claimed amount due." (*Id.*).

60.     Thirty nine (39) days later, in a letter dated July 17, 2015 (received July 21, 2015), CFC responded to Mr. Mitchell's letter. (*See* Pl. Ex. 27). However, CFC's letter did not verify the debt, it simply restated the outstanding balance, and requested that a HIPPA Authorization form be executed. (*Id.*).   This does not constitute an effective verification. Regardless, CFC failed to respond within the statutory 30 day window.

61.     In response to CFC's letter, Mr. Mitchell's legal counsel sent another letter to CFC dated September 16, 2015. (*See* Pl. Ex. 28).   For the second time, Mr. Mitchell's letter expressly requested that CFC "[p]lease verify this debt and provide a copy of all verification documents so that we may further assess this claimed amount due." (*Id.*).

62.     CFC responded in a September 30, 2015 letter (received October 6, 2015), that was nearly identical to their July 17, 2015 letter, and still did not verify the debt. (*See* Pl. Ex. 29).

63.     As of the date of filing, CFC has not verified the debt.

**D.     CFC's repeated violations of collection laws.**

64.     CFC's failure to adhere to Texas and Federal statute is not limited to its dealings with Mr. Mitchell. On June 18, 2015, the U.S. Consumer Financial Protection Bureau issued a Consent Order against CFC. (*See* Pl. Ex. 30).   In that order, the Bureau ordered CFC to pay $5,130,213.94 dollars for the following law violations:

(1) CFC failed to respond within 30 days to consumer disputes about the information Respondent furnished to consumer reporting agencies, in violation of Section 623(a)(8) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(a)(8), and Subpart E of Regulation V, 12 C.F.R. § 1022-43, the implementing regulation of the FCRA; and

(2) in certain instances, Respondent failed to provide consumers with a 'debt validation notice' within five days of its initial communication with the consumer in connection with the collection of a debt, in violation of Section 8og(a) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g(a). Under Sections 1053 and 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order ("Consent Order"). (*Id.*).

### CONDITIONS PRECEDENT

65.     All conditions precedent to Mr. Mitchell's right to recover the relief sought herein have occurred or have been performed.

### COUNT ONE: REQUEST FOR DECLARATORY JUDGMENT
### (AGAINST VHS/VB)

66.     Mr. Mitchell incorporates by reference the allegations set forth in the preceding paragraphs of the Petition as though set forth at length herein.

67.     Mr. Mitchell entered into a purported contract with VHS/VB prior to VHS/VB rendering medical services to Mr. Mitchell.

68.     The contract was a contract of adhesion presented to Mr. Mitchell at the time of his admission to VHS/VB.

69.     The contract did not reasonably describe the services that would be performed by VHS/VB, its employees, or its agents.

70.     The contract did not establish a price for the services and supplies that would be provided by VHS/VB, its employees, or its agents.

71.     Because no price was specified in the contract, VHS/VB was required to act in good faith and charge a reasonable price for the medical services and supplies it provided to Mr. Mitchell.

A.     **Performance**

72.     Mr. Mitchell fully performed his obligations under the contract when his Plan determined the usual, reasonable and customary amount charged for services like those provided by VHS/VB to Mr. Mitchell.  VHS/VB did not dispute that the amount paid was not the usual, reasonable and customary amount paid because it accepted payment and did not exercise the administrative remedies offered to VHS/VB by Mr. Mitchell's Plan to appeal the amount. Instead, VHS/VB chose to pursue a campaign of bullying Mr. Mitchell for additional money through the use of a third party debt collector who exercised illegal efforts in an effort to collect an unjustified debt from Mr. Mitchell.

73.     Therefore, Mr. Mitchell respectfully petitions this Court for a declaration that he fully performed his obligations under his contract with VHS/VB when VHS/VB accepted payment and did not appeal the amount paid with Mr. Mitchell's insurance plan administrator.

B.     **Alternatively, Enforcement of the Purported Amount Due would be Unconscionable**

74.    In the alternative, Mr. Mitchell seeks a declaration that enforcement of the purported total amount of $25,762.02 (comprised of Claim #1: $819.37; Claim #2 $23,132.59; and Claim #3 $1,810.06) would be unconscionable.

75.    In the event the contract is interpreted to include a promise by Mr. Mitchell to pay the purported amount due of $25,762.02, the contract is unconscionable.  The contract is procedurally unconscionable due to the presence of deception and overreaching by VHS/VB representing to Mr. Mitchell that this amount is the usual, reasonable and customary amount charged for the treatment provided by VHS/VB. Further, the contract is a contract of adhesion in that Mr. Mitchell had absolutely no bargaining power or ability to change the contract's terms. The contract is substantively unconscionable on its face because the value assigned to the services and products charged for are utterly lopsided in that there is no reasonable or subjective parity between the values exchanged.  Indeed, based upon information and belief, the purported $25,762.02 "balance" remaining after Mr. Mitchell's Plan made three payments is in and of itself higher than the amount charged to uninsured patients by VHS/VB for similar treatments.

76.    Therefore, Mr. Mitchell alternatively petitions this Court for a declaration that the unconscionable portion of the contract (i.e. any amount or pricing outside of what Mr. Mitchell's insurance plan has already paid) be severed from the contract.

### COUNT TWO: TEXAS DEBT COLLECTION ACT VIOLATIONS
### (AGAINST ALL DEFENDANTS)

77.    Mr. Mitchell incorporates by reference the allegations set forth in the preceding paragraphs of the Petition as though set forth at length herein.

78.    CFC is a debt collector pursuant to the Texas Debt Collection Act, Texas Finance Code § 392.001(5), (6).

A.    **Violations of the Texas Debt Collection Act**

79.    CFC used unfair or unconscionable means to collect a debt against Mr. Mitchell in violation of the Texas Debt Collection Act, Texas Finance Code § 392.303. Specifically, CFC attempted to collect fees, charges and expenses from Mr. Mitchell that were not expressly authorized by an agreement creating an obligation of Mr. Mitchell to VHS/VB and were not legally chargeable to Mr. Mitchell, in violation of Texas Finance Code § 392.303(a)(2).

80.    CFC also violated the Texas Debt Collection Act, Texas Finance Code § 292.304(a)(8), by misrepresenting the character, extent, or amount of a consumer debt.

81.    CFC also violated the Texas Debt Collection Act, Texas Finance Code § 392.202, by failing to timely investigate a clear dispute over the amount owed. Mr. Mitchell and his counsel notified VHS/VB and CFC that Mr. Mitchell disputed the validity of the debt and requested verification of same.

82.    CFC never properly investigated the accuracy of Mr. Mitchell's alleged debt to VHS/VB, but nevertheless reported the disputed debts to at least one credit reporting agency. CFC's report continues to negatively impair Mr. Mitchell's credit, showing an alleged debt to VHS/VB and/or CFC in the amounts of $819.37; $23,132.59; and $1,810.06, in violation of the Texas Debt Collection Practices Act, Texas Finance Code § 392.202.

83.    As a result of the violations of the Texas Debt Collection Act by VHS/VB and CFC, Mr. Mitchell has been, and continues to be, damaged.

B.    **Conspiracy–Texas Debt Collection Act**

84.    Defendants combined or collaborated their efforts to engage in the unlawful debt collection practices set forth above. The object of Defendants' combination or collaboration was to accomplish an unlawful purpose or a lawful purpose by unlawful means. Defendants had a

meeting of the minds on the object or course of action. All of the defendants, or, alternatively, at least one of the defendants, committed an unlawful, overt act or acts to further the object or course of action. As a result of Defendants' wrongful act or acts, Mr. Mitchell suffered injuries and damages. Therefore, Defendants should be jointly and severally liable for all causes of action asserted and damages claimed and sought in this lawsuit.

**COUNT THREE: DECEPTIVE TRADE PRACTICES ACT VIOLATIONS**
**(AGAINST ALL DEFENDANTS)**

85.     Mr. Mitchell incorporates by reference the allegations set forth in the preceding paragraphs of the Petition as though set forth at length herein.

**A.      Deceptive Trade Practices**

86.     Mr. Mitchell also asserts a cause of action pursuant to the Texas Deceptive Trade Practices Act because violations of the Texas Debt Collection Practices are also deceptive trade practices under Subchapter E, Chapter 17, of the Texas Business & Commerce Code, and are also actionable under that subchapter.   Mr. Mitchell relied upon the deceptive acts made actionable under the Deceptive Trade Practices Act through the Debt Collection Act to his detriment.

87.     Defendants knowingly violated the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act because they acted with actual awareness of the falsity, deception or unfairness of the acts or practices. *See* TEX. BUS. & COM. CODE § 17.45(9).

88.     Defendants intentionally violated the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act because they acted with actual awareness of the falsity, deception, or unfairness of an act or practice, and with the specific intent of having Mr. Mitchell act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness. *See*

TEX. BUS. & COM. CODE § 17.45(13). The objective manifestations of Defendants' statutory violations show the intent behind their violations, or the facts show that Defendants acted with flagrant disregard of prudent and fair business practices to the extent that Defendants should be treated as having acted intentionally. *Id.*

**B.      Conspiracy–Texas Deceptive Trade Practices Act**

89.      Defendants combined or collaborated their efforts to engage in the unlawful debt collection practices and deceptive trade practices set forth above. The object of Defendants' combination or collaboration was to accomplish an unlawful purpose or a lawful purpose by unlawful means. Defendants had a meeting of the minds on the object or course of action. All of the defendants, or, alternatively, at least one of the defendants, committed an unlawful, overt act or acts to further the object or course of action. As a result of Defendants' wrongful act or acts, Mr. Mitchell suffered injuries and damages. Therefore, Defendants should be jointly and severally liable for all causes of action asserted and damages claimed and sought in this lawsuit.

**COUNT FOUR – VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
(Against CFC)**

90.      Mr. Mitchell incorporates by reference the allegations set forth in the preceding paragraphs of the Petition as though set forth at length herein.

91.      Mr. Mitchell is a consumer within the meaning of 15 U.S.C. § 1692c(d).

92.      The alleged debt for medical services and supplies provided to Mr. Mitchell by VHS/VB arises primarily out of a personal, family, or household purpose within the meaning of 15 U.S.C. § 1692a(5).

93.      CFC is a debt collector within the meaning of 15 U.S.C. § 1692a(6), even identifying itself as a "debt collector."

94.     On each claim, CFC sent at least one collection demand to Mr. Mitchell directly after being placed on notice that Mr. Mitchell was represented by counsel. CFC violated the Fair Debt Collection Practices Act by communicating with Mr. Mitchell when Mr. Mitchell was represented by an attorney with respect to the alleged debt and had knowledge of, or could have readily ascertained, such attorney's name and address. 15 U.S.C. § 1692c(a)(2), (c).

95.     The CFC collection demand failed to provide a notice that, if Mr. Mitchell notified CFC in writing disputing his debt within thirty days after receipt of the notice, than all collection activity would cease until the verification of the debt was provided to Mr. Mitchell.

96.     Mr. Mitchell's counsel had previously notified VHS/VB and CFC that Mr. Mitchell disputed the validity of the debt and requested verification of same.

97.     CFC never properly validated the alleged debts, but reported the disputed debt to at least one credit reporting agency that continues to negatively impair Mr. Mitchell's credit, showing alleged debts to VHS/VB and CVC in the total amount of $25,762.02 (comprises of Claim #1: $819.37; Claim #2 $23,132.59; and Claim #3 $1,810.06) in further violation of 15 U.S.C. § 1692g(b).

98.     CFC violated the Fair Debt Collection Practices Act by, *inter alia*, failing to timely validate the debt and negatively impairing Mr. Mitchell's credit provided by 15 U.S.C. § 1692g(b).

99.     As a result of the violations of the Fair Debt Collection Practices Act by CFC, Mr. Mitchell has been and continues to be damaged.

### INJUNCTIVE RELIEF

100.     Pursuant to Texas Finance Code § 392.403(a)(1), Mr. Mitchell requests injunctive relief to prevent or restrain additional violations of the Texas Debt Collection Act.

## DAMAGES

101. As a result of the violations of the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act, by Defendants and Defendants' conspiracy, Mr. Mitchell has been and continues to be damaged, as follows:

    a. **Actual Damages.** Mr. Mitchell has suffered actual damages including mental anguish.

    b. **Statutory Damages.** Mr. Mitchell also requests relief in the form of statutory damages, pursuant to Texas Finance Code § 392.403(e), in the form of at least $100 for each violation of Texas Finance Code § 392.202.

    c. **Attorneys' Fees.** To bring this lawsuit, Mr. Mitchell was required to retain the services of his attorneys, incurred reasonable and necessary attorney fees, and is entitled to attorneys' fees pursuant to Texas Finance Code § 392.403(b).

    d. **Treble Damages.** Mr. Mitchell also requests treble damages of up to three times the amount of his economic damages for Defendants' knowing and intentional violations of the Texas Deceptive Trade Practices Act. Mr. Mitchell also requests treble damages of up to three times the amount of his mental anguish damages for Defendants' intentional violations of the Texas Deceptive Trade Practices Act.

### DEMAND FOR A JURY TRIAL

102. Under the authority of the Seventh Amendment of the United States Constitution and Texas Rule of Civil Procedure 216, Mr. Mitchell requests a jury trial.

### REQUEST FOR DISCLOSURE

103. Pursuant to Texas Rule of Civil Procedure 194, Mr. Mitchell requests that Defendants disclose, within 30 days of the service of this request, the information or material described in Rule 194.2.

### CONCURRENTLY SERVED DISCOVERY REQUESTS

104. Mr. Mitchell serves his first sets of Interrogatories upon VHS (*See* Pl. Ex. 31); VB (*See* Pl. Ex. 32); and CFC (*See* Pl. Ex. 33). concurrently with this Petition.

105.    Mr. Mitchell also serves his first Requests for Production upon VHS (*See* Pl. Ex. 34); VB (*See* Pl. Ex. 35); and CFC (*See* Pl. Ex. 36) concurrently with this Petition.

106.    Mr. Mitchell also serves Deposition notices of Defendant VHS (*See* Pl. Ex. 37); VB (*See* Pl. Ex. 38) and CFC (*See* Pl. Ex. 39) concurrently with this Petition.

### REQUEST FOR RELIEF

107.    For these reasons, Mr. Mitchell respectfully requests that Defendants be cited to appear and answer, and that Mr. Mitchell have judgment for damages within the jurisdictional limits of the Court and against Defendants, jointly and severally, as legally applicable and appropriate, for:

    a.  a declaratory judgment, declaring:

        i.  that Mr. Mitchell fully performed his obligations under his contract with VHS/VB when VHS/VB accepted payment and did not appeal the amount paid with Mr. Mitchell's insurance plan administrator; or

        ii.  alternatively, that the unconscionable portion of the contract, i.e. any amount or pricing outside of what Mr. Mitchell's insurance plan has already paid, be severed from the contract.

    b.  injunctive relief as specified herein;

    c.  actual damages, including but not necessarily limited to mental anguish;

    d.  exemplary damages;

    e.  attorneys' fees;

    f.  treble damages;

    g.  pre-judgment and post-judgment interest at the highest legal rate;

    h.  costs; and

    i.  all other relief, general and special, legal and equitable, to which Mr. Mitchell is entitled.

Respectfully submitted,

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

# Pl. Ex. 1

# GROUP & PENSION ADMINISTRATORS, INC.

PARK CENTRAL 8 · 12770 MERIT DRIVE 2ⁿᵈ FLOOR, SUITE 200 · DALLAS, TX 75251 · (972) 238-7900

Valley Telephone Cooperative, Inc. Medical Benefit Plan
**Notice of Adverse Benefits Determination**

10/17/2013

To:  Manager, Patient Accounts
     VHS Harlingen Hospital
     PO Box 911573
     Dallas, TX 75391

Re:  Valley Telephone Cooperative, Inc. Medical Benefit Plan (the "Plan")
     Patient: Bobby Mitchell          Patient Account No. - GI325200887
     Date(s) of Service Beginning: 09/10/2013

Dear Manager, Patient Accounts:

This notice is being provided to you as an explanation of the benefit determination for the above-referenced claim, and your rights under the Plan.

The Plan covering the patient is a self-funded welfare benefit plan as defined under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and complies with all federal laws that govern such plans. You submitted a claim for payment in the amount of $1,586.55. For the reasons set forth below, the Plan Administrator has determined that certain charges in the amount of $1,453.99 must be denied in accordance with the terms of the Claim Review and Audit Program provisions of the Plan.

## Specific Plan Provisions
The Plan provision that is the basis for this claim determination may be found in the Summary Plan Description under the heading, "Claim Review and Audit Program". This provision limits covered expenses under the Plan to those within the "Allowable Claim Limits". "Allowable Claim Limits" means the charges for services and supplies included as covered medical expenses under the Plan which are medically necessary for the care and treatment of illness or injury, but only to the extent that such fees are within the limits and allowances which are listed for certain treatment types, services and supplies.

## Specific Reasons for Denial
A comprehensive bill review has been performed on this claim. The enclosed audit report lists, in detail, the charges that are being denied due to apparent billing errors or charges which exceed this Plan's Allowable Claim Limits. The Allowable Claim Limits represent the Plan's internal rules, guidelines and protocols relied upon in the determination.

## Your Appeal Rights
ERISA provides for a Plan participant to appeal a denial of benefits under the Plan, and the participant has been so informed. **In an effort to protect the Plan participant and fairly resolve any dispute of a benefit denial, this Plan also allows for a provider of service to have full appeal rights in addition to those rights afforded by law to a participant.** When you, as the provider of service, exercise your right of appeal under the terms of this Plan, you are agreeing to the terms and conditions through which this right is granted, including your agreement to pursue recovery of certain denied expenses directly from the Plan and waiving any right to recover those certain expenses from the Plan participant.

Notice of Adverse Benefit Determination ERISA
Page 1 of 4

In return for this agreement, you will be accorded the same rights that are accorded by law to a Plan participant. The Plan provision allowing for your appeal, in pertinent part, is explained below.

### Provider of Service Appeal Rights

A covered person may appoint the provider of service as the Authorized Representative with full authority to act on his or her behalf in the appeal of a denied claim. An assignment of benefits by a covered person to a provider of service will not constitute appointment of that provider as an Authorized Representative. However, in an effort to ensure a full and fair review of the denied claim, and as a courtesy to a provider of service that is not an Authorized Representative, the Plan will consider an appeal received from the provider in the same manner as a claimant's appeal, and will respond to the provider and the claimant with the results of the review accordingly. Any such appeal from a provider of service must be made within the time limits and under the conditions for filing an appeal specified under the section, "Appeal Process". **Providers requesting such appeal rights under the Plan must agree to pursue reimbursement for covered medical expenses directly from the Plan, waiving any right to recover such expenses from the claimant, and comply with the conditions of the section, "Requirements for Appeal".**

For purposes of this section, the provider's waiver to pursue covered medical expenses **does not include** the following amounts, which will remain the responsibility of the claimant:

- Deductibles;
- Copayments;
- Coinsurance;
- Penalties for failure to comply with the terms of the Plan;
- Charges for services and supplies which are not included for coverage under the Plan, and
- Amounts which are in excess of any stated Plan maximums or limits.*

**\*Note: This does not apply to amounts found to be in excess of Allowable Claim Limits, as defined in the section, "Claim Review and Audit Program".** The claimant will not be held responsible for any otherwise covered amounts found to be in excess of Allowable Claim Limits.

## Requirements for First Appeal

1. You may appeal this benefit denial to the named fiduciary under the Plan by filing a request for review under the Plan's procedures and as described below.

2. You must file your request for review within 180 days of the date you receive this Notice of Adverse Benefit Determination by submitting a written request for review by hand, or by first-class mail, to:

| | | |
|---|---|---|
| Appeals, Claims Department | Or | Appeals Department |
| Group & Pension Administrators, Inc. | | ELAP Services, LLC |
| 12270 Merit Drive, Suite 200 | | 961 Pottstown Pike |
| Dallas, TX 75251 | | Chester Springs, PA 19425 |

**Please note:** Letters received by the Plan **must** explicitly state that an appeal is being requested, and must be accompanied by the information and documentation necessary for a full and fair review.

3. You must include a statement in clear and concise terms of the reason or reasons for disagreement with the handling of the claim.

4. You must include any material or information that you have which indicates that the expenses are covered under the Plan.

5. In connection with your appeal, you **must** submit written comments, documents, records and other information relating to any denied or partially denied charge included in this benefit denial. Failure to include any theories or facts in the appeal will result in their being deemed waived. In other words, you will lose the right to later raise factual arguments and theories which support this claim if you fail to include them in the appeal.

## Additional Information Necessary to Perfect Your Claim

For any charges excluded in the calculation of Allowable Claim Limits, you will find an Adjustment Code explanation in the audit review report. Following is an explanation of what is required in order for you to perfect the claim for benefits for each Adjustment Code:

1. Adjustment Code 'H': Hospital. Allowable Claim Limits have been determined using the most recent departmental cost/charge ratios as reported to CMS by the provider. Please submit documentation for any adjustment to the cost/charge ratio.

2. Adjustment Code 'R': Reduced to 112% of Redbook's Average Wholesale Price (AWP). Please submit documentation in support of a higher AWP.

3. Adjustment Code 'I': Medical and Surgical Supplies, Implants, Devices. Please submit invoices, receipts, cost lists or other appropriate documentation to evidence the cost to the provider.

4. Adjustment Code 'P': 90th Percentile of Fee Reference (PFR) Please submit documentation establishing that the fee for the services does not exceed the 90th percentile for the same services performed by other providers in the geographic area.

5. Adjustment Code 'M': Medicare allowed amount. Please submit documentation that the charges do not exceed the Medicare-allowed amount plus 20%. clearly identify the service or supply.

6. Adjustment Code 'A': Ancillary. Please submit documentation showing any variance which the Plan should consider as "industry standard".

7. Adjustment Code 'U': Unbundled. Please submit documentation showing that the charges should not be included in a global procedure code and/or are not included in departmental charges.

8. Adjustment Code 'E': Error in billing. Please submit documentation showing that these charges were not billed in error.

9. Adjustment Code 'Q': Quantity change. Please submit documentation to support the quantity of items or services billed which are not supported in the medical records.

10. Adjustment Code 'N': Not able to identify or understand. Please submit information which will clearly identify the service or supply.

## Manner and Content of Notification of Benefit Determination on Review

When you file an appeal, as described above, the Plan Administrator will provide a full and fair review of this benefit denial according to the Plan's procedures.

Notice of Adverse Benefit Determination ERISA
Page 3 of 4

The review will take into account all comments, documents, records and other information submitted that directly and specifically relates to the denied or partially denied charges set forth in the spreadsheet review. This would include any applicable physician and nurse notes, logs, chart details, invoices, receipts, cost lists, statements, explanations and any similar information related specifically and directly to each charge denied or partially denied and not submitted previously. The review on appeal will be a "fresh" look at your claim without deference to this initial benefit denial. It will be conducted by a person who was not involved in this initial benefit denial, and who is not a subordinate of the individual involved in this initial benefit denial.

### Time Period for Decision on a Request for Review
The Plan will notify you of the decision on your request for review within a reasonable time but not later than 30 days after the Plan receives your request for review.

In the event of an adverse decision regarding the first appeal, you have 60 days to file a second appeal of the denial of benefits. You will again be entitled to a "full and fair review" of any denial made at the first appeal, which means you have the same rights during the second appeal as you had during the first appeal. As with the first appeal, the second appeal must be in writing and must include all of the items set forth above in the section entitled "Requirements for First Appeal."

### Furnishing Documents in the Event of an Adverse Determination
In the case of an adverse benefit determination on review, the Plan Administrator shall provide, on request and free of charge, access to, and copies of, documents, records, and other relevant information described above in the section, "Manner and Content of Notification of Benefit Determination on Review".

### Decision on Appeal to be Final
If, for any reason, you do not receive a written response to the appeal within the appropriate time period set forth above, you may assume that the appeal has been denied.  The Plan Administrator's decision on review will be final, binding and conclusive and will be afforded the maximum deference permitted by law. **All claim review procedures provided for in the Plan must be exhausted before any legal action is brought. Any legal action for the recovery of any benefits must be commenced within three years after the Plan's claim review procedures have been exhausted.**

When the Plan's appeal procedures have been exhausted, you will have the right to bring a civil action under ERISA §502(a) if your request for coverage or benefits is denied following review.

Please contact the undersigned if you have any questions or require any additional information regarding the Plan provisions applicable to this claim and/or the conditions under which these appeal rights are being granted.

Sincerely,


Claims Department

Enclosures:




Notice of Adverse Benefit Determination ERISA
Page 4 of 4

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

2016-DCL-00459

# Pl. Ex. 2

Dec. 4. 2013 11:04AM   VALLEY FAMILY CLINIC



VALLEY BAPTIST HEALTH SYSTEM
PO BOX 830913
BIRMINGHAM, AL 35283-0913

6685

003640 0101

PAY ONLINE at www.valleybaptist.net
Use this Reference Number:   3WY0GFH1i

☐ Please check box if address is incorrect or insurance
information has changed, and indicate change(s) on reverse side.

BOBBY L MITCHELL
394 W HARRIS
RAYMONDVILLE, TEXAS 78580-2435

CHECK CARD No. 3596

☐ MASTERCARD   ☐ DISCOVER   ☐ VISA   ☐ AMERICAN EXPRESS

CARD NUMBER

SIGNATURE                                    SIGNATURE CODE

EXP. DATE

| STATEMENT DATE | PAY THIS AMOUNT | ACCT. # |
|---|---|---|
| 10/29/13 | 819.37 | G1325200887 |

PAGE: 1        SHOW AMOUNT PAID HERE  $

MAKE CHECKS PAYABLE TO:

VHS HARLINGEN HOSPITAL
P.O. BOX 910082
DALLAS, TX 76391-0082

---

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT · **STATEMENT**

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/01/13 | Billed Balance | 1,586.55 |
| 10/02/13 | NC AR Adjustment | 634.62CR |
| 10/29/13 | NON CONTRACTED INSURANCE PYMT | 132.56CR |
| | Account Balance | 819.37 |
| | Estimated Insurance Liability | 0.00 |
| | Patient Responsibility | 819.37 |

Thank you for choosing Valley Baptist Medical Center, the healthcare system
of choice in Harlingen/Brownsville. Our records indicate that you did not
provide insurance information at the time of service. Prompt payment of
your account balance within 10 days will be appreciated.

If you wish to provide insurance information or if you believe you do not
owe this balance, please contact our Customer Service Department.

Please call us at (855) 246-4335 to make payment or discuss your balance.

Sincerely,

Patient Account Services Department
VHS Harlingen Hospital
Toll Free: (855) 246-4335

| PATIENT | ACCOUNT NUMBER | ADMIT DATE | DISCHARGE DATE | HOSPITAL |
|---|---|---|---|---|
| BOBBY L MITCHELL | G1325200887 | 09/10/13 | 09/10/13 | VHS HARLINGEN HOSPITAL |

**YOU WILL RECEIVE SEPARATE BILLS FOR SERVICES OF YOUR PHYSICIANS, WHICH MAY INCLUDE PATHOLOGISTS
RADIOLOGISTS, AND/OR ANESTHESIOLOGISTS.**

Account Representatives Available Toll Free: (855) 246-4335
Monday through Friday: 8:30am - 4:30pm CST

| ACCOUNT BALANCE |
|---|
| 819.37 |

NC   6685*SWY0GE6BH000098

GROUP & PENSION ADMINISTRATORS, INC
P.O. BOX 749075
DALLAS, TX  75374-9075
PLAN PART (972) 238-7900 (800) 827-7223
PROVIDERS (972) 744-2486 (866) 206-3224
8:00AM - 7:00 PM CST MON-THURS
8:00AM - 5:00 PM CST FRIDAY



Temp-Return Service Requested

000302-008802-000010-008802 2001977 3472CK02_2
BOBBY MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX  78580-2435

**Valley Telephone Co-Op, Inc.**

**EXPLANATION OF BENEFITS**

THIS IS NOT A BILL

| | |
|---|---|
| Group #: | S860063008510003 |
| Date: | 10/18/2013 |
| Employee: | BOBBY MITCHELL |
| Patient: | BOBBY MITCHELL |
| Document #: | 1327604258 |
| Patient Id: | G1325200887 |
| EOB #: | 20131017-3422 |

| Provider/ Nature Of Service | Dates of Service From | To | Charges Submitted | Ineligible | Code | Discount | Copay | Deductible | % Plan Pays | Benefit Payable |
|---|---|---|---|---|---|---|---|---|---|---|
| VHS HARLINGEN HOSPITAL COMPANY | | | | | | | | | | |
| OP HOSP DXL | 09/10/13 | 09/10/13 | 1044.75 | 971.70 | 1 | | | | 100% | 73.05 |
| OUTPT FACILITY | 09/10/13 | 09/10/13 | 541.80 | 482.29 | 1 | | | | 100% | 59.51 |
| | TOTAL AMOUNTS | | 1586.55 | 1453.99 | | | | | | 132.56 |

The percentage(s) payable or any patient deductible(s) or co-pay(s) has been applied in accordance with the schedule of benefits in the Summary Plan Description.
** EXPLANATION OF CODE **

1 -  882 - 882-THESE CHARGES EXCEED THE PLAN'S ALLOWABLE CLAIM LIMITS; THEREFORE, THE CHARGES HAVE BEEN DENIED AS STATED IN THE EXCLUSIONS
AND LIMITATIONS IN YOUR SUMMARY PLAN DESCRIPTION. APPEAL RIGHTS UNDER THIS PLAN ALSO APPLY TO PROVIDERS OF SERVICE.

SEE BACK FOR APPEAL PROCESS

| SUMMARY OF SUBMITTED CHARGES | | | |
|---|---|---|---|
| TOTAL SUBMITTED CHARGES | 1586.55 | INELIGIBLE CHARGES | 1453.99 |
| TOTAL BENEFITS PAID | 132.56 | DEDUCTIBLE | |
| TOTAL DISCOUNT | | CO-PAY | |
| OTHER INSURANCE CARRIER PAYMENT | | PATIENT'S COINSURANCE | |
| | | TOTAL DUE TO PROVIDER | 0.00 |

| YEAR TO DATE ACCUMULATORS |
|---|
| THE PATIENT'S 2013 MEDICAL DEDUCTIBLE SATISFIED IS $750.00     THE 2013 FAMILY MEDICAL DEDUCTIBLE SATISFIED IS $975.00 |

| PAYEE NAME: | AMOUNT: |
|---|---|
| CVHS HARLINGEN HOSPITA | $132.56 |

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

2016-DCL-00459

# Pl. Ex. 3

02/06/2014   09:04 Valley Family Clinic                      (FAX)1 956 690 4026                    P.007/010

 **Valley Baptist**
*Believe in a better life.*™
PO BOX 830913
BIRMINGHAM, AL 35283-0913

CHECK CARD USING FOR PAYMENT

| ☐ MASTERCARD | ☐ DISCOVER | ☐ VISA | ☐ AMERICAN EXPRESS |

CARD NUMBER                                        SIGNATURE CODE

SIGNATURE                                          EXP. DATE



002866 0101

| STATEMENT DATE | PAY THIS AMOUNT | ACCT. # |
|---|---|---|
| 12/19/2013 | $819.37 | G1325200887 |

PAY ONLINE at: www.valleybaptist.net
Use this Reference number: 3YCUJY3

| PAGE: 1 | SHOW AMOUNT PAID HERE $ |
|---|---|

L0429T (PC1)

BOBBY L MITCHELL
394 W HARRIS
RAYMONDVILLE, TX 78580-2435

**MAKE CHECKS PAYABLE TO:**

VALLEY BAPTIST MEDICAL CENTER - HARLINGEN
PO BOX 910082
DALLAS, TX 75391-0082

35764-3Y0D

☐ Please check box if address is incorrect or insurance
information has changed and indicate change(s) on reverse side.

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

---

Dear Bobby L Mitchell,

We have previously notified you that your insurance carrier has made their final payment on your claim. The balance due listed above is the portion your insurance company has determined is your responsibility. Please make payment within the next 7 business days.

We have enclosed a pre-addressed envelope for your convenience. If you prefer to make your payment in person, you may do so at Valley Baptist Medical Center-Harlingen cashier's office.

Call us today. Even if you are unable to pay in full, we can agree upon a payment plan. We accept Checks, Credit or Debit Cards, Visa, MasterCard, American Express and Discover over the phone at no additional charge.

Please disregard this statement if the balance has been paid.

Sincerely,

Patient Account Services Department
Valley Baptist Medical Center-Harlingen
Toll Free Number: (855) 246-4335

Please see reverse side for notice of availability of financial assistance.

| PATIENT | ACCOUNT NUMBER | ADMIT DATE | DISCHARGE DATE | HOSPITAL |
|---|---|---|---|---|
| BOBBY L MITCHELL | G1325200887 | 09/10/13 | 09/10/13 | VALLEY BAPTIST MEDICAL CENTER-HARLINGEN |

**YOU WILL RECEIVE SEPARATE BILLS FOR SERVICES OF YOUR PHYSICIANS, WHICH MAY INCLUDE PATHOLOGISTS, RADIOLOGISTS, AND/OR ANESTHESIOLOGISTS.**

Account Representatives Available Toll Free: (855) 246-4335
Monday through Thursday: 8:00am - 9:00pm CST
Friday: 8:00am - 7:00pm CST
Saturday: 8:00am - 6:00pm CST

| ACCOUNT BALANCE |
|---|
| $819.37 |

812                                35764-3Y0D*8YC0UN03SG000080

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 4

02/19/2014   13:10 Valley Family Clinic                               (FAX)1 956 690 4026                    P.004/005

**Valley Baptist**          PO BOX 830913
*Believe in a better life.™*   BIRMINGHAM, AL 35283-0913



000838 0101

PAY ONLINE at: www.valleybaptist.net
Use this Reference number: 3ZIMAZY3

BOBBY L MITCHELL
384 W HARRIS
RAYMONDVILLE, TX 78880-2435

| CHECK CARD USING FOR PAYMENT | | | |
|---|---|---|---|
| ☐ MASTERCARD | ☐ DISCOVER | ☐ VISA | ☐ AMERICAN EXPRESS |
| CARD NUMBER | | | SIGNATURE CODE |
| SIGNATURE | | | EXP. DATE |

| STATEMENT DATE | PAY THIS AMOUNT | ACCT. # |
|---|---|---|
| 01/28/2014 | $819.37 | G1325200887 |

| PAGE: 1 | SHOW AMOUNT PAID HERE  $ |
|---|---|

MAKE CHECKS PAYABLE TO:

VALLEY BAPTIST MEDICAL CENTER - HARLINGEN
PO BOX 910082
DALLAS, TX 75391-0082

36764-3Y0D

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

☐ Please check box if address is incorrect or insurance
information has changed, and indicate change(s) on reverse side.

---

## FINAL NOTICE

Dear Bobby L Mitchell,

This is our final notice regarding the delinquent account referenced above. If we do not receive payment in full within 15 days of the date of this letter, the above account will be placed with a third party collection agency for further collection efforts and reporting to the national credit bureaus.

To avoid further action, your balance must be paid immediately. We have enclosed a pre-addressed envelope for your convenience. If you prefer to make your payment in person, you may do so at Valley Baptist Medical Center-Harlingen cashier's office. We accept Checks, Credit or Debit Cards, Visa, MasterCard, American Express and Discover over the phone at no additional charge. If you can not pay this bill in full, please contact our office immediately.

Sincerely,

Patient Account Services Department
Valley Baptist Medical Center-Harlingen
Toll Free Number: (866) 246-4338

Please see reverse side for notice of availability of financial assistance.

| PATIENT | ACCOUNT NUMBER | ADMIT DATE | DISCHARGE DATE | HOSPITAL |
|---|---|---|---|---|
| BOBBY L MITCHELL | G1325200887 | 09/10/13 | 09/10/13 | VALLEY BAPTIST MEDICAL CENTER-HARLINGEN |

*YOU WILL RECEIVE SEPARATE BILLS FOR SERVICES OF YOUR PHYSICIANS, WHICH MAY INCLUDE PATHOLOGISTS, RADIOLOGISTS, AND/OR ANESTHESIOLOGISTS.*

Account Representatives Available Toll Free: (866) 246-4338
Monday through Thursday: 8:00am - 8:00pm CST
Friday: 8:00am - 7:00pm CST
Saturday: 8:00am - 5:00pm CST

| ACCOUNT BALANCE |
|---|
| $819.37 |

3/3

36764-3Y0D*6ZI0M0L3N0 00075

02/19/2014   13:09 Valley Family Clinic                    (FAX)1 956 690 4026            P.001/005



# Valley Family Clinic

994 East Hidalgo Ave. Raymondville Tx 78580 P 956-690-4012 F 956/690-4026

For: _ELAP Services_

Fax Number : _1888-510-2447_  Date: _2/19/14_

From: Rachel/Shreena/Angela/Janie/Jennifer

Regarding: _____

Number of pages: __ including cover sheet _5_

Comments: _____
_____
_____

The document accompanying this facsimile transmission contains confidential
information belonging to the sender that is legally privileged, and not intended for public
use. If you are not the intended recipient, you are hereby notified that any disclosure,
copying, distribution, or the taking of any action in reliance on the contents of this
telecopied information is strictly prohibited. If you have received this document in error,
please notify us by telephone immediately.

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 5

FEB-25-2015 01:57 From:diseatch-samsung                     To:18885832447        Page:2/8

**Valley Baptist**
**Medical Center** — HARLINGEN —
*Believe in a better life.™*

**VHS Harlingen Hospital**
BOX 830913 (Use mail address below)
Birmingham, AL 35283-0913


003679
0202

CHANGE SERVICE REQUESTED

#BWNHDKX
#7104260026530014#
BOBBY L. MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2435

**STATEMENT**                         Page: 1 of 4

February 16, 2015

**BOBBY L. MITCHELL**

Patient Reference Number:        046472635
Hospital Code:                        838
Payment Due Date:            Due Upon Receipt

Date(s) of Service:     09/10/2013 - 09/10/2013
Message ID:                        PFSS7M1

Primary Insurance:
COMMERCIAL

---

*Thank you for choosing VHS Harlingen Hospital*

### Account Summary

| | |
|---|---|
| Total Charges . . . . . . . . . . . . . . . . . . . . . | $1,586.55 |
| Adjustments . . . . . . . . . . . . . . . . . . . . . | $767.18 |
| Paid by Insurance . . . . . . . . . . . . . . . . . . | $0.00 |
| Already Paid by Patient . . . . . . . . . . . . . . | $0.00 |
| **Amount you owe now** . . . . . . . . . . . . . . . | **$819.37** |

**Page 1**
• Account Summary
• Payment Stub
• Phone Number

**Page 2**
• Important Information
• Payment Options
• How to Reach Us
• Changes to Personal Information

**Page 3**
• Understanding Your Statement
• Statement Details

Detach and return bottom portion with payment. Please make checks or money orders payable in U.S. funds to VHS Harlingen Hospital and include your patient reference number.

---

February 16, 2015                                        33366

**BOBBY L. MITCHELL**

Patient Reference Number:        046472635
Payment Due Date:            Due Upon Receipt
Location Code:                        883
Date(s) of Service:     09/10/2013 - 09/10/2013

Phone: VHS Harlingen Hospital (se habla Español)
        CUSTOMER SERVICE 1(855)589-9912
        MON-FRI 7:30A-7:00P CST

IF PAYING BY MASTERCARD, DISCOVER, VISA OR AMERICAN EXPRESS, FILL OUT BELOW.

MASTERCARD   DISCOVER   VISA   AMERICAN EXPRESS

CARD NUMBER                              EXPIRES (eg. 11/07)

CARDHOLDER SIGNATURE                     SECURITY CODE

CARDHOLDER NAME (please print)           CARDHOLDER PHONE #

**AMOUNT AUTHORIZED / ENCLOSED $** _____

**REMIT PAYMENT TO:**

| DUE DATE | AMOUNT YOU OWE |
|---|---|
| Due Upon Receipt | $819.37 |

Q0518787 7104260026530001        33366*TA8DGK3SG000675
Please check box if address above is incorrect or insurance information
has changed, and indicate change(s) on reverse side.

VHS HARLINGEN HOSPITAL
P.O BOX 847888
DALLAS, TX 75284-7888

000464726350000819378837

FEB-25-2015 01:57 From:dispatch-samsung                      To:18885682447          Page:3-8

**STATEMENT:** Page: 3 of 4     BOBBY L. MITCHELL                Patient Reference Number: 046472635

Insurance(s)
COMMERCIAL



## Understanding Your Statement...

| | |
|---|---|
| A | The services you received during your stay at the Hospital |
| B | Total dollar amount charged by the Hospital for services delivered |
| C | Total statement charges on your account |
| D | The dollar amount reduced due to an insurance contractual adjustment or other discount |
| E | The amount paid by one or more insurance companies to the Hospital on behalf of the patient |
| F | The amount already paid to the Hospital by the patient or their guarantor |
| G | The amount due from the patient as indicated on the provider bill or statement |

| Dates of Activity | Item Description / Activity | Charges |
|---|---|---|
| | | |

| | | |
|---|---|---|
| C | Total Charges | $1,586.55 |
| D | Account Adjustments | $767.18 |
| E | Paid by Insurance | $0.00 |
| F | Paid by Patient | $0.00 |
| G | Remaining Balance | $819.37 |

*Thank you for choosing*
*VHS Harlingen Hospital!*          Amount you owe now . . . . . . . . $819.37

33350*TA8GGKJBG000875

FEB-25-2015 01:57 From:bobbymitchell    To:18885502447    Page:1/8

To   E - LAP

FAX #  188-560-2447

From Bobby Mitchell

Contact Information

   Cell 956-369-0065

   EMail bobby.mitchell@vtx1.net

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

2016-DCL-00459

# Pl. Ex. 6

# LEWIS
# BRISBOIS
# BISGAARD
# & SMITH LLP
### ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

**DANIELLE BERRY**
DIRECT DIAL: 404.567-6575
EMAIL: DANIELLE.BERRY@LEWISBRISBOIS.COM

March 16, 2015

Bobby Mitchell
394 W Harris
Raymondville, TX 78580

        RE:    Settlement Offer

Dear Bobby Mitchell:

        This firm represents you and Valley Telephone Cooperative, Inc. Medical Benefit Plan for claims associated with the reimbursement of medical care provided at VHS Harlingen. Enclosed please find a settlement offer recently made in an attempt to resolve the dispute over the outstanding balance which VHS Harlingen claims is owed.   If the offer is accepted, the plan will pay the offer amount and the matter will be closed.

        Please note this correspondence is simply for your information.  **There is no need for any action on your part at this time.**  Please feel free to contact us if you have any questions.


                        Very Truly Yours,



                        Danielle Berry of
                        LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:     Valley Telephone Cooperative, Inc. Medical Benefit Plan

4840-1694-5164.1

# LEWIS BRISBOIS BISGAARD & SMITH LLP
## ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

DANIELLE BERRY
DIRECT DIAL: 404.567-6575
E-MAIL: DANIELLE.BERRY@LEWISBRISBOIS.COM

March 16, 2015

**VIA U.S. MAIL**

Manager, Patient Accounts
VHS Harlingen
2101 Pease Street
Harlingen, TX 78550

|  | RE: | Patient: | **Bobby Mitchell** |
|--|-----|----------|------------------|
|  |  | Patient Account No.: | **G1325200887** |
|  |  | Date of Service: | **September 10, 2013** |
|  |  | Plan Name: | **Valley Telephone Cooperative, Inc.** |
|  |  |  | **Medical Benefit Plan** |
|  |  | Alleged Amount: | **$819.37** |

Dear Sir or Madam:

This firm represents Bobby Mitchell in a dispute arising out of medical bills for services rendered to Bobby Mitchell on September 10, 2013. In lieu of continuing this dispute over the amount listed above, my client has authorized me to make an offer of settlement and compromise to resolve the above-referenced claim(s) under the following terms:

- VHS Harlingen will be paid a lump sum payment of **$327.75** within thirty (30) days of receipt of the written acceptance of this offer;

- VHS Harlingen will accept the above amount as full and final settlement, satisfaction, and compromise of the above-referenced amount, and will write off any and all remaining balances for the above-named patient for the date of service indicated above;

- VHS Harlingen will make no further attempts to collect any portion of the remaining balance against Bobby Mitchell, Valley Telephone Cooperative, Inc. Medical Benefit Plan, any of the Plan's participants or fiduciaries, and/or any other third-party guarantor of the above-referenced medical bill(s);

4840-1694-5164.1

- VHS Harlingen will agree not to report this matter to any credit reporting agency, or if already reported, will agree to immediately completely and totally remove any and all adverse credit reports from the patient's credit report. Reporting the debt as "Amount Paid in Full for Less Than Full Amount," or "Settled in Full" expressly does not satisfy the terms of this settlement agreement, as only total removal will comply with the terms of this agreement;

- VHS Harlingen will acknowledge receipt of this offer in writing by signature below, and shall return this signed acknowledgment via certified U.S. Mail, return receipt requested and/or fax to the address and/or fax number listed in the letterhead above; and

- By signing on behalf of VHS Harlingen, the person signing represents and warrants that he/she has the full authority necessary to bind VHS Harlingen to the terms of this offer as set forth herein.

Based on the terms of the offer extended herein, and if you choose to accept the offer, this will be resolved within thirty (30) days of this firm's receipt of this signed agreement. If you choose not to accept the offer, we will vigorously defend any future attempts by VHS Harlingen and/or its agents to collect any amounts on the above-referenced bill.

The entire contents of this letter represent an offer of compromise and settlement and shall not be used against any of the above-named parties in any legal action.

Thank you for your prompt attention to this matter. My client looks forward to your response.

Sincerely,

Danielle Berry of
LEWIS BRISBOIS BISGAARD & SMITH LLP

DB:md
cc:    Bobby Mitchell

By my signature below, I hereby accept the above offer related to Bobby Mitchell on behalf of VHS Harlingen on the terms listed above.  I hereby represent and warrant that I have the full authority necessary to bind VHS Harlingen to the terms of this offer as set forth herein.

This _____ day of _____, 2015.


_____
(Signature of VHS Harlingen representative)


_____
(Print name of person signing above)


**Payment Information**
(To be completed by person signing above)

| Payee on check | |
|---|---|
| Remittance Address | |

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 7

**Valley Baptist Medical Center**
— HARLINGEN —
*Believe in a better life.™*

VHS Harlingen Hospital
BOX 830913 (Use mail address below)
Birmingham, AL 35283-0913

Page: 1 of 2

April 20, 2015

**BOBBY L. MITCHELL**

| Facility | VHS Harlingen Hospital |
|---|---|

CUSTOMER SERVICE 1(855)589-9912
MON-FRI 7:30A-7:00P CST

CHANGE SERVICE REQUESTED

ABWNHDKX
#60105900098200328#

BOBBY L. MITCHELL
394 W HARRIS AVE
RAYMONDVILLE TX 78580-2435

| Patient Reference Number | 016672635 |
|---|---|
| Date(s) of Service | 09/10/2013 - 09/10/2013 |
| Hospital Code | 838 |
| Message ID: | 7158-2 |
| Payment Due Date | Due Upon Receipt |

*Account Summary*

| Total Charges | $1,586.55 |
|---|---|
| Adjustments | $767.18 |
| Paid by Insurance | $0.00 |
| Already Paid by Patient | $0.00 |
| Amount Owed | $819.37 |

## IMPORTANT INFORMATION

We have not received a response to our previous statement asking for payment. At the time services were rendered, you became responsible for all costs associated with your treatment. Please return payment in full along with the perforated payment slip below in the provided return envelope. Payment may be in the form of a personal check, money order or any of the credit/debit cards listed on the payment slip. To have your account credited more quickly, call the number listed above and give a representative in our business office your account number and credit/debit card information.

If you are unable to pay the balance in full, please call our office at the number listed above to discuss alternate arrangements for payment. Any of our representatives will be able to assist you with payment or other account questions.

If payment has already been made, please disregard this notice.

We look forward to hearing from you or receiving your payment. Thank you for your prompt attention to this matter.

Continued on reverse... ▶ ▶ ▶

---

Detach and return bottom portion with payment. Please make checks or money orders payable in U.S. funds to VHS Harlingen Hospital, and include your patient reference number.

April 20, 2015

**BOBBY L. MITCHELL**

33760

| Patient Reference Number | 016672635 |
|---|---|
| Payment Due Date | Due Upon Receipt |
| Location Code | 885-0 |
| Date(s) of Service | 09/10/2013 - 09/10/2013 |

*Phone: VHS Harlingen Hospital (se habla español)*
CUSTOMER SERVICE 1(855)589-9912
MON-FRI 7:30A-7:00P CST

| Due Date | Amount You Owe |
|---|---|
| Due Upon Receipt | **$819.37** |

AMOUNT ADDITION(S) ENCLOSED $

**REMIT PAYMENT TO:**

VHS HARLINGEN HOSPITAL
P.O. BOX 847688
DALLAS TX 75284-7888

0004442263500008193785 37

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 8



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

DANIELLE BERRY                                          June 2, 2015
DIRECT DIAL: 404.567-6575
EMAIL: DANIELLE.BERRY@LEWISBRISBOIS.COM

Bobby Mitchell
394 W Harris Ave
Raymondville, TX 78580

      RE:    Settlement Offer

Dear Bobby Mitchell:

     This firm represents you and Valley Telephone Cooperative, Inc. Medical Benefit Plan for claims associated with the reimbursement of medical care provided at VHS Harlingen Hospital.  Enclosed please find a settlement offer recently made in an attempt to resolve the dispute over the outstanding balance which VHS Harlingen Hospital claims is owed.   If the offer is accepted, the plan will pay the offer amount and the matter will be closed.

     Please note this correspondence is simply for your information.  **There is no need for any action on your part at this time.**  Please feel free to contact us if you have any questions.

                       Very Truly Yours,

                       Danielle Berry of
                       LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:    Valley Telephone Cooperative, Inc. Medical Benefit Plan

4840-1694-5164.1

# LEWIS BRISBOIS BISGAARD & SMITH LLP

ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

DANIELLE BERRY                                    June 2, 2015
DIRECT DIAL: 404.567-6575
E-MAIL: DANIELLE.BERRY@LEWISBRISBOIS.COM

**VIA U.S. MAIL**

Manager, Patient Accounts
VHS Harlingen Hospital
2101 Pease Street
Harlingen, TX 78550

|      |                      |                                      |
|------|----------------------|--------------------------------------|
| RE:  | **Patient:**         | **Bobby Mitchell**                   |
|      | **Patient Account No.:** | G1325200887                      |
|      | **Date of Service:** | **September 10, 2013**               |
|      | **Plan Name:**       | **Valley Telephone Cooperative, Inc. Medical Benefit Plan** |
|      | **Alleged Amount:**  | $819.37                              |

Dear Sir or Madam:

This firm represents Bobby Mitchell in a dispute arising out of medical bills for services rendered to Bobby Mitchell on September 10, 2013. In lieu of continuing this dispute over the amount listed above, my client has authorized me to make an offer of settlement and compromise to resolve the above-referenced claim(s) under the following terms:

- VHS Harlingen Hospital will be paid a lump sum payment of **$409.69** within thirty (30) days of receipt of the written acceptance of this offer;

- VHS Harlingen Hospital will accept the above amount as full and final settlement, satisfaction, and compromise of the above-referenced amount, and will write off any and all remaining balances for the above-named patient for the date of service indicated above;

- VHS Harlingen Hospital will make no further attempts to collect any portion of the remaining balance against Bobby Mitchell, Valley Telephone Cooperative, Inc. Medical Benefit Plan, any of the Plan's participants or fiduciaries, and/or any other third-party guarantor of the above-referenced medical bill(s);

4840-1694-5164.1

- VHS Harlingen Hospital will agree not to report this matter to any credit reporting agency, or if already reported, will agree to immediately completely and totally remove any and all adverse credit reports from the patient's credit report. Reporting the debt as "Amount Paid in Full for Less Than Full Amount," or "Settled in Full" expressly does not satisfy the terms of this settlement agreement, as only total removal will comply with the terms of this agreement;

- VHS Harlingen Hospital will acknowledge receipt of this offer in writing by signature below, and shall return this signed acknowledgment via certified U.S. Mail, return receipt requested and/or fax to the address and/or fax number listed in the letterhead above; or, will acknowledge receipt and acceptance of this offer in any writing which sets forth the essential terms herein; and

- By signing on behalf of VHS Harlingen Hospital, the person signing represents and warrants that he/she has the full authority necessary to bind VHS Harlingen Hospital to the terms of this offer as set forth herein.

Based on the terms of the offer extended herein, and if you choose to accept the offer, this will be resolved within thirty (30) days of this firm's receipt of this signed agreement. If you choose not to accept the offer, we will vigorously defend any future attempts by VHS Harlingen Hospital and/or its agents to collect any amounts on the above-referenced bill.

The entire contents of this letter represent an offer of compromise and settlement and shall not be used against any of the above-named parties in any legal action.

Thank you for your prompt attention to this matter. My client looks forward to your response.

Sincerely,

Danielle Berry of
LEWIS BRISBOIS BISGAARD & SMITH LLP

DB:md
cc:    Bobby Mitchell

4840-1694-5164.1

By my signature below, I hereby accept the above offer related to Bobby Mitchell on behalf of VHS Harlingen Hospital on the terms listed above. I hereby represent and warrant that I have the full authority necessary to bind VHS Harlingen Hospital to the terms of this offer as set forth herein.

This _____ day of _____, 2015.


_____
(Signature of VHS Harlingen Hospital representative)


_____
(Print name of person signing above)


**Payment Information**
(To be completed by person signing above)

| Payee on check | |
|---|---|
| Remittance Address | |

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 9

Full Credit Report | Credit Karma

Print This Page

Reported as of Oct 06, 2015

# Bobby Mitchell's Credit Report

Provided by

# Overview

Reported as of Oct 06, 2015

# Accounts

Here you can find details regarding each account on your credit report, including both open and closed accounts. Find information on account types, details regarding your balance and a summary of your payment history.

Filters

Account Type    Show All    Credit Cards    Real Estate    Auto

Student    Other Loans

Status    Show All    Open    Closed

Account Name
Account Type
Open Date
Status
Balance
Sort By:  Select an Option        ▼

GMAC
Auto
Dec 23, 2006
Closed
$0

## Account Details

Last Reported
Oct 27, 2009

Creditor Name
GMAC
Account Type
Automobile
Account Status
Closed - Derogatory
Opened Date
Dec 23, 2006
Closed Date
Oct 27, 2009
Limit
--
Term
36 Months
Monthly Payment
$0
Responsibility
Joint
Balance
$0
Highest Balance
$7,709
Payment Status
Collection/Charge-Off
Worst Payment Status
Unknown
Date of Last Payment
Mar 15, 2010
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Payment after charge off/collection
Settled - less than full balance

## Payment History

No payment history has been reported by this creditor.

## Creditor Contact Details

GMAC
PO BOX 380901
BLOOMINGTON, MN
55438
(800) 200-4622

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

### AMER HONDA

Auto
Sep 12, 2015
Open - Current
No Missed Payments
$24,397

## Account Details

Last Reported
Sep 28, 2015
Creditor Name
AMER HONDA
Account Type
Automobile
Account Status
Open
Opened Date
Sep 12, 2015
Closed Date
--
Limit
--
Term
60 Months
Monthly Payment
$415
Responsibility
Individual
Balance
$24,397
Highest Balance
$24,386
Payment Status
Current
Worst Payment Status
Unknown
Date of Last Payment
--
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
--

## Payment History

No payment history has been reported by this creditor.

**Creditor Contact Details**

AMERICAN HONDA FINANCE
3625 W ROYAL LA 100
IRVING, TX
75063
(800) 533-0580

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Find opportunities to refinance your auto loan.

Look for ways to save on your auto insurance premiums.

Compare this account on your Equifax® credit report
    WELLS FARGO
Credit Card
Aug 04, 2006
Open - Current
No Missed Payments
$3,128
52% of Credit Limit*

**Account Details**

Last Reported
Sep 27, 2015
Creditor Name
WELLS FARGO
Account Type
Credit Card
Account Status
Open
Opened Date
Aug 04, 2006
Closed Date
--
Limit
$6,000
Term
--
Monthly Payment

$77
Responsibility
Individual
Balance
$3,128
Highest Balance
$7,087
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Sep 18, 2015
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
--

**Payment History**

**2015** OK OK OK OK OK OK OK OK OK
**2014** OK OK OK OK OK OK OK OK OK OK OK OK
**2013** OK OK OK OK OK OK OK OK OK OK OK OK
**2012** OK OK OK OK OK OK OK OK OK OK OK OK
**2011**                          OK OK OK OK
     J   F   M   A   M   J   J   A   S   O   N   D

**Credit Utilization***

52.13%

**Creditor Contact Details**

WELLS FARGO CARD SERVICE
PO BOX 14517
DES MOINES, IA
50306
(800) 642-4720

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Find a personal loan to consolidate high interest balances.

Use less of your credit limit by transferring balances to a new card.

Compare this account on your Equifax® credit report
    DISCOVERBANK
Credit Card
Jul 11, 2008
Open - Current
No Missed Payments
$0
0% of Credit Limit*

**Account Details**

Last Reported
Sep 25, 2015
Creditor Name
DISCOVERBANK
Account Type
Credit Card
Account Status
Open
Opened Date
Jul 11, 2008
Closed Date
--
Limit
$6,600
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$7,414
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Sep 20, 2013
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks

--

## Payment History

**2015**OK OK OK OK OK OK OK OK OK
**2014**OK OK OK OK OK OK OK OK OK OK OK OK OK
**2013**OK OK OK OK OK OK OK OK OK OK OK OK OK
**2012**OK OK OK OK OK OK OK OK OK OK OK OK OK
**2011**                          OK OK OK OK
      J  F  M  A  M  J  J  A  S  O  N  D

## Credit Utilization*

0.00%

## Creditor Contact Details

DISCOVER FINANCIAL SERVI
PO BOX 15316
WILMINGTON, DE
19850
(800) 347-2683

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

## Credit Karma Recommendations

Not using this card much? Find a better card.

Compare this account on your Equifax® credit report
    SYNCB/CARECR
Credit Card
Sep 08, 2009
Closed
No Missed Payments
$0

## Account Details

Last Reported
Sep 24, 2015
Creditor Name
SYNCB/CARECR
Account Type
Charge Account

Account Status
Closed - Paid
Opened Date
Sep 08, 2009
Closed Date
Jan 21, 2010
Limit
$4,000
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$4,166
Payment Status
Current
Worst Payment Status
90-119 Days Late
Date of Last Payment
Mar 12, 2010
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Canceled by credit grantor

**Payment History**

**2015**OKOKOKOKOKOKOKOKOK
**2014**OKOKOKOKOKOKOKOKOKOKOKOK
**2013**OKOKOKOKOKOKOKOKOKOKOKOK
**2012**OKOKOKOKOKOKOKOKOKOKOKOK
**2011**                    OKOKOKOK
    **J  F  M  A  M  J  J  A  S  O  N  D**

**Credit Utilization\***

0.00%

**Creditor Contact Details**

SYNCB/CARE CREDIT
PO BOX 965036
ORLANDO, FL

32896
(866) 396-8254

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Find a new card to replace your old card.

Compare this account on your Equifax® credit report
   SYNCB/SHOPDC
Credit Card
Sep 09, 2007
Closed
No Missed Payments
$0

**Account Details**

Last Reported
Sep 22, 2015
Creditor Name
SYNCB/SHOPDC
Account Type
Credit Card
Account Status
Closed
Opened Date
Sep 09, 2007
Closed Date
Mar 31, 2009
Limit
$124
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$0
Payment Status
Current
Worst Payment Status

10/6/2015                                    Full Credit Report | Credit Karma

Current
Date of Last Payment
--
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

## Payment History

**2015** OK OK OK OK OK OK OK OK OK OK
**2014** OK OK OK OK OK OK OK OK OK OK OK OK
**2013** OK OK OK OK OK OK OK OK OK OK OK OK
**2012** OK OK OK OK OK OK OK OK OK OK OK OK
**2011**                         OK OK OK OK
         J  F  M  A  M  J  J  A  S  O  N  D

## Credit Utilization*

0.00%

## Creditor Contact Details

SYNCB/SHOPNBC PLATINUM R
PO BOX 965005
ORLANDO, FL
32896
(866) 597-1514

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

## Credit Karma Recommendations

Find a new card to replace your old card.

Compare this account on your Equifax® credit report
    CHASE
Credit Card
Mar 21, 2013
Open - Current
No Missed Payments
$1,983
117% of Credit Limit*

## Account Details

Last Reported
Sep 17, 2015
Creditor Name
CHASE
Account Type
Credit Card
Account Status
Open
Opened Date
Mar 21, 2013
Closed Date
--
Limit
$1,700
Term
--
Monthly Payment
$50
Responsibility
Individual
Balance
$1,983
Highest Balance
$1,983
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Aug 20, 2015
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
--

## Payment History

2015 OK OK OK OK OK OK OK OK OK
2014 OK OK OK OK OK OK OK OK OK OK OK OK
2013      OK OK OK OK OK OK OK OK OK OK
    J   F   M   A   M   J   J   A   S   O   N   D

## Credit Utilization*

116.65%

## Creditor Contact Details

CHASE BANK USA NA
PO BOX 15298
WILMINGTON, DE
19850
(800) 432-3117

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

## Credit Karma Recommendations

Find a personal loan to consolidate high interest balances.

Use less of your credit limit by transferring balances to a new card.

Compare this account on your Equifax® credit report
    SYNCB/AMAZON
Credit Card
Oct 15, 2008
Closed
No Missed Payments
$0

## Account Details

Last Reported
Sep 17, 2015
Creditor Name
SYNCB/AMAZON
Account Type
Charge Account
Account Status
Closed
Opened Date
Oct 15, 2008
Closed Date
Dec 29, 2010
Limit
$124
Term
--
Monthly Payment
$0
Responsibility
Individual

Balance
$0
Highest Balance
$0
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
--
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

**Payment History**

**2015** OK OK OK OK OK OK OK OK OK
**2014** OK OK OK OK OK OK OK OK OK OK OK OK OK
**2013** OK OK OK OK OK OK OK OK OK OK OK OK OK
**2012** OK OK OK OK OK OK OK OK OK OK OK OK OK
**2011**                          OK OK OK OK OK
     J  F  M  A  M  J  J  A  S  O  N  D

**Credit Utilization\***

0.00%

**Creditor Contact Details**

SYNCB/AMAZON PLCC
PO BOX 965015
ORLANDO, FL
32896
(866) 634-8379

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Find a new card to replace your old card.

Compare this account on your Equifax® credit report

SYNCB/LOW
Credit Card
Jul 08, 2005
Closed
No Missed Payments
$0

## Account Details

Last Reported
Sep 14, 2015
Creditor Name
SYNCB/LOW
Account Type
Charge Account
Account Status
Closed - Paid
Opened Date
Jul 08, 2005
Closed Date
Oct 16, 2009
Limit
$1,350
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$1,000
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Mar 12, 2010
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

## Payment History

**2015** OK OK OK OK OK OK OK OK OK

**2014**OK OK OK OK OK OK OK OK OK OK OK OK
**2013**OK OK OK OK OK OK OK OK OK OK OK OK
**2012**OK OK OK OK OK OK OK OK OK OK OK OK
**2011**                    OK OK OK OK
    **J  F  M  A  M  J  J  A  S  O  N  D**

### Credit Utilization*

0.00%

### Creditor Contact Details

SYNCB/LOWES
PO BOX 956005
ORLANDO, FL
32896
(800) 444-1408

### Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

### Credit Karma Recommendations

Find a new card to replace your old card.

Compare this account on your Equifax® credit report
    KOHLS/CAPONE
Credit Card
Dec 31, 2014
Open - Current
No Missed Payments
$0
0% of Credit Limit*

### Account Details

Last Reported
Sep 14, 2015
Creditor Name
KOHLS/CAPONE
Account Type
Charge Account
Account Status
Open
Opened Date
Dec 31, 2014

Closed Date
--
Limit
$1,000
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$0
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
--
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
--

**Payment History**

**2015**OK OK OK OK OK OK OK OK OK
    J  F  M  A  M  J  J  A SOND

**Credit Utilization\***

0.00%

**Creditor Contact Details**

KOHLS DEPARTMENT STORE
PO BOX 3115
MILWAUKEE, WI
53201
(800) 564-5740

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

10/6/2015                                      Full Credit Report | Credit Karma

## Credit Karma Recommendations

Not using this card much? Find a better card.

Compare this account on your Equifax® credit report
    SYNCB/CONNS
Credit Card
Feb 24, 2013
Closed
No Missed Payments
$0

## Account Details

Last Reported
Sep 11, 2015
Creditor Name
SYNCB/CONNS
Account Type
Charge Account
Account Status
Closed
Opened Date
Feb 24, 2013
Closed Date
Mar 13, 2014
Limit
$1,500
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$0
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
--
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks

Canceled by credit grantor

**Payment History**

2015 OK OK OK OK OK OK OK OK OK OK
2014 OK OK OK OK OK OK OK OK OK OK OK OK
2013      OK OK OK OK OK OK OK OK OK OK
   J  F  M  A  M  J  J  A  S  O  N  D

**Credit Utilization\***

0.00%

**Creditor Contact Details**

SYNCB/CONNS
PO BOX 965036
ORLANDO, FL
32896
(866) 396-8254

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Find a new card to replace your old card.

Compare this account on your Equifax® credit report
    WFHM
Mortgage
Nov 15, 2006
Open - Current
No Missed Payments
$73,442

**Account Details**

Last Reported
Sep 08, 2015
Creditor Name
WFHM
Account Type
FHA Real Estate Mortgage
Account Status
Open

Opened Date
Nov 15, 2006
Closed Date
--
Limit
--
Term
360 Months
Monthly Payment
$877
Responsibility
Individual
Balance
$73,442
Highest Balance
$83,489
Payment Status
Current
Worst Payment Status
120-149 Days Late
Date of Last Payment
Sep 04, 2015
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
--

**Payment History**

**2015** OK OK OK OK OK OK OK OK OK
**2014** OK OK OK OK OK OK OK OK OK OK OK OK
**2013** OK OK OK OK OK OK OK OK OK OK OK OK
**2012** U    OK OK OK OK OK OK OK OK OK OK OK
**2011**                              OK OK OK OK
    J   F   M   A   M   J   J   A   S   O   N   D

- U

  **Unknown**

**Creditor Contact Details**

WELLS FARGO HOME MORTGAG
7255 BAYMEADOWS WA PO BOX 10335
DES MOINES, IA
50306
(800) 288-3212

10/6/2015                                    Full Credit Report | Credit Karma

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

Compare this account on your Equifax® credit report
    WF HEALTH AD
Credit Card
Dec 17, 2013
Open - Current
No Missed Payments
$0
0% of Credit Limit*

**Account Details**

Last Reported
Sep 03, 2015
Creditor Name
WF HEALTH AD
Account Type
Charge Account
Account Status
Open
Opened Date
Dec 17, 2013
Closed Date
--
Limit
$5,000
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$2,400
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Jun 13, 2014
Amount Past Due
$0
Times 30/60/90 Days Late

10/6/2015                              Full Credit Report | Credit Karma

0/0/0
Remarks
--

## Payment History

**2015** OK OK OK OK OK OK OK OK OK
**2014** OK OK OK OK OK OK OK OK OK OK OK OK
    J   F   M   A   M   J   J   A   S   O   N   D

## Credit Utilization*

0.00%

## Creditor Contact Details

WFFNB/HEALTH ADVANTAGE
PO BOX 14517
DES MOINES, IA
50306
(800) 231-5089

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

## Credit Karma Recommendations

Not using this card much? Find a better card.

    CRDT FIRST
Credit Card
Mar 31, 2010
Closed
No Missed Payments
$0

## Account Details

Last Reported
Jan 11, 2015
Creditor Name
CRDT FIRST
Account Type
Charge Account
Account Status
Closed - Paid

Opened Date
Mar 31, 2010
Closed Date
Jan 11, 2015
Limit
$1,600
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$1,000
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Dec 13, 2010
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Inactive account

## Payment History

**2014**U   UU UU UUUUUUU
**2013**U   UU UU UUUUUUU
**2012**U   UU UU UUUUUUU
**2011**OKUU UU UUUUUUU
        **J FMAMJJASOND**

- U

    **Unknown**

## Credit Utilization*

0.00%

## Creditor Contact Details

CREDIT FIRST
PO BOX 81315

10/6/2015                                    Full Credit Report | Credit Karma

CLEVELAND, OH
44181
(216) 362-5000

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Find a new card to replace your old card.

Compare this account on your Equifax® credit report
    CB/SPMNSGV
Credit Card
Mar 10, 2014
Open - Current
No Missed Payments
$0
0% of Credit Limit*

**Account Details**

Last Reported
Jun 20, 2014
Creditor Name
CB/SPMNSGV
Account Type
Credit Card
Account Status
Open
Opened Date
Mar 10, 2014
Closed Date
--
Limit
$7,000
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$213
Payment Status

10/6/2015                                          Full Credit Report | Credit Karma

Current
Worst Payment Status
Current
Date of Last Payment
May 20, 2014
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
--

## Payment History

**2014   OKOKOK**
   **JF M  A  M JJASOND**

## Credit Utilization*

0.00%

## Creditor Contact Details

COMENITY BANK/SPMNGVSA
PO BOX 182789
COLUMBUS, OH
43218

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

## Credit Karma Recommendations

Not using this card much? Find a better card.

Compare this account on your Equifax® credit report
   CCB/HSN
Credit Card
Nov 23, 2011
Open - Current
3 Missed Payments
$0
0% of Credit Limit*

## Account Details

Last Reported
Nov 22, 2013
Creditor Name
CCB/HSN
Account Type
Charge Account
Account Status
Open
Opened Date
Nov 23, 2011
Closed Date
--
Limit
$430
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$330
Payment Status
Current
Worst Payment Status
30-59 Days Late
Date of Last Payment
Sep 24, 2013
Amount Past Due
$0
Times 30/60/90 Days Late
3/0/0
Remarks
--

## Payment History

**2013** OK OK OK 30  OK OK 30  OK OK OK
**2012** OK OK OK OK OK OK OK OK OK OK OK 30
**2011**                                    OK OK
   **J  F  M  A  M  J  J  A  S  O  N  D**

- 30

   **30-59 Days Late**

## Credit Utilization*

0.00%

**Creditor Contact Details**

COMENITY CAPITAL/HSN
PO BOX 182120
COLUMBUS, OH
43218

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Not using this card much? Find a better card.

Compare this account on your Equifax® credit report
    CONNS
Other
Mar 12, 2013
Closed
No Missed Payments
$0

**Account Details**

Last Reported
Sep 20, 2013
Creditor Name
CONNS
Account Type
Secured Loan
Account Status
Closed
Opened Date
Mar 12, 2013
Closed Date
Sep 20, 2013
Limit
--
Term
32 Months
Monthly Payment
$157
Responsibility
Individual

Balance
$0
Highest Balance
$5,053
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Sep 20, 2013
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

## Payment History

**2013**   OKOKOKOKOKOK
     **JF M A M J J A SOND**

## Creditor Contact Details

CONNS CREDIT CO
PO BOX 2358
BEAUMONT, TX
77704
(409) 832-4528

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

Compare this account on your Equifax® credit report
    CONNS
Other
Feb 22, 2013
Closed
No Missed Payments
$0

## Account Details

Last Reported
Mar 20, 2013
Creditor Name

CONNS
Account Type
Secured Loan
Account Status
Closed
Opened Date
Feb 22, 2013
Closed Date
Mar 20, 2013
Limit
--
Term
32 Months
Monthly Payment
$159
Responsibility
Individual
Balance
$0
Highest Balance
$5,109
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Mar 20, 2013
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

**Payment History**

**2013** OK
    **J F MAMJJASOND**

**Creditor Contact Details**

CONNS CREDIT CO
PO BOX 2358
BEAUMONT, TX
77704
(409) 832-4528

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

Compare this account on your Equifax® credit report
   CITI
Credit Card
Dec 17, 2001
Closed
No Missed Payments
$0

## Account Details

Last Reported
May 26, 2010
Creditor Name
CITI
Account Type
Credit Card
Account Status
Closed - Paid
Opened Date
Dec 17, 2001
Closed Date
Oct 21, 2009
Limit
$11,450
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$0
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Mar 12, 2010
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Canceled by credit grantor

10/6/2015     Full Credit Report | Credit Karma

## Payment History

**2010** OK OK OK OK
**2009** OK OK OK OK OK OK OK OK OK OK OK OK
**2008** OK OK OK OK OK OK OK OK OK OK OK OK
**2007** OK OK OK OK OK OK OK OK OK OK OK OK
**2006**    OK OK OK OK OK OK OK OK
  **J F M A M J J A S O N D**

## Credit Utilization*

0.00%

## Creditor Contact Details

CITICARDS CBNA
PO BOX 6241
SIOUX FALLS, SD
57117

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

## Credit Karma Recommendations

Find a new card to replace your old card.

Compare this account on your Equifax® credit report
 CHASE
Credit Card
May 23, 2007
Closed
No Missed Payments
$0

## Account Details

Last Reported
Apr 23, 2010
Creditor Name
CHASE
Account Type
Credit Card
Account Status
Closed - Paid
Opened Date

May 23, 2007
Closed Date
Jan 05, 2010
Limit
--
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$7,166
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Aug 04, 2008
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Canceled by credit grantor

**Payment History**

**2010**OKOKOK
**2009**OKOKOKOKOKOKOKOKOKOKOKOK
**2008**OKOKOKOKOKOKOKOKOKOKOKOK
**2007**            OKOKOKOKOKOKOK
   J  F  M  A  M  J  J  A  S  O  N  D

**Credit Utilization\***

N/A

No credit limit reported

**Creditor Contact Details**

CHASE BANK USA NA
PO BOX 15298
WILMINGTON, DE
19850
(800) 432-3117

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Find a new card to replace your old card.

Compare this account on your Equifax® credit report
    LACKS VALLEY
Other
Mar 07, 2009
Closed
No Missed Payments
$0

**Account Details**

Last Reported
Mar 12, 2010
Creditor Name
LACKS VALLEY
Account Type
Installment Sales Contract
Account Status
Closed
Opened Date
Mar 07, 2009
Closed Date
Mar 12, 2010
Limit
--
Term
24 Months
Monthly Payment
$160
Responsibility
Individual
Balance
$0
Highest Balance
$3,840
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Mar 12, 2010

Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

## Payment History

**2010** OK OK
**2009**      OK OK OK OK OK OK OK OK OK OK OK OK
     J   F   M   A   M   J   J   A   S   O   N   D

## Creditor Contact Details

LACKS VALLEY STORES
1300 SAN PATRICIA
PHARR, TX
78577
(956) 702-6726

## Direct Dispute

See something wrong?
<u>We can help you dispute an error with TransUnion.</u>

Compare this account on your Equifax® credit report
    CHASE - CC
Credit Card
Nov 01, 2008
Closed
No Missed Payments
$0

## Account Details

Last Reported
Sep 28, 2009
Creditor Name
CHASE - CC
Account Type
Credit Card
Account Status
Closed - Paid
Opened Date
Nov 01, 2008
Closed Date
Jun 25, 2009

Limit
$3,000
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$1,791
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Feb 23, 2009
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

## Payment History

**2009**OK OK OK OK OK OK OK OK OK
**2008**                              OK OK
    J  F  M  A  M  J  J  A SO N  D

## Credit Utilization*

0.00%

## Creditor Contact Details

CHASE - CIRCUIT CITY
PO BOX 15298
WILMINGTON, DE
19850
(800) 432-3117

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Find a new card to <u>replace your old card</u>.

Compare this account on your Equifax® credit report
    CAP1/BSTBY
Credit Card
Jun 06, 2006
Closed
No Missed Payments
$0

**Account Details**

Last Reported
May 17, 2009
Creditor Name
CAP1/BSTBY
Account Type
Charge Account
Account Status
Closed - Paid
Opened Date
Jun 06, 2006
Closed Date
May 16, 2009
Limit
$300
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$739
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Mar 02, 2007
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks

Closed

**Payment History**

**2009** OK OK OK OK OK
**2008** OK OK OK OK OK OK OK OK OK OK OK OK OK
**2007** OK OK OK OK OK OK OK OK OK OK OK OK OK
**2006**                OK OK OK OK OK OK OK OK
    J  F  M  A  M  J  J  A  S  O  N  D

**Credit Utilization***

0.00%

**Creditor Contact Details**

CAPITAL ONE / BEST BUY
PO BOX 30253
SALT LAKE CITY, UT
84130
(800) 695-6950

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

**Credit Karma Recommendations**

Find a new card to replace your old card.

Compare this account on your Equifax® credit report
    CHASE
Credit Card
Jan 10, 2001
Closed
No Missed Payments
$0

**Account Details**

Last Reported
Dec 18, 2008
Creditor Name
CHASE
Account Type
Credit Card
Account Status

Closed
Opened Date
Jan 10, 2001
Closed Date
Nov 11, 2008
Limit
$4,000
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$0
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
--
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

**Payment History**

**2008**OK OK OK OK OK OK OK OK OK OK OK OK
**2007**OK OK OK OK OK OK OK OK OK OK OK OK
**2006**OK OK OK OK OK OK OK OK OK OK OK OK
**2005**OK OK OK OK OK OK OK OK OK OK OK OK
**2004**                              OK
        **J  F  M  A  M  J  J  A  S  O  N  D**

**Credit Utilization\***

0.00%

**Creditor Contact Details**

CHASE BANK USA NA
PO BOX 15298
WILMINGTON, DE
19850

(800) 432-3117

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

## Credit Karma Recommendations

Find a new card to replace your old card.

 WSLFRG NV NA
Other
Aug 24, 2006
Closed
No Missed Payments
$0

## Account Details

Last Reported
Oct 13, 2008
Creditor Name
WSLFRG NV NA
Account Type
Line of Credit
Account Status
Closed - Paid
Opened Date
Aug 24, 2006
Closed Date
Sep 26, 2008
Limit
$10,000
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$600
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment

Sep 23, 2008
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks                    .
Closed

## Payment History

**2008**        OKOK
    **JFMAMJJ A  S OND**

## Creditor Contact Details

WELLS FARGO BANK NEVEDA
PO BOX 94435
ALBUQUERQUE, NM
87199
(866) 762-4359

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

Compare this account on your Equifax® credit report
    CONNS
Other
May 31, 2008
Closed
No Missed Payments
$0

## Account Details

Last Reported
Aug 05, 2008
Creditor Name
CONNS
Account Type
Secured Loan
Account Status
Closed
Opened Date
May 31, 2008
Closed Date
Aug 05, 2008

10/6/2015                                    Full Credit Report | Credit Karma

Limit
--
Term
36 Months
Monthly Payment
$114
Responsibility
Individual
Balance
$0
Highest Balance
$4,136
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Aug 05, 2008
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

**Payment History**

**2008**        OKOK
   JFMAM J  J ASOND

**Creditor Contact Details**

CONNS CREDIT CO
PO BOX 2358
BEAUMONT, TX
77704
(409) 832-4528

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

Compare this account on your Equifax® credit report
     CAPITAL ONE
Credit Card
Jun 09, 2006
Closed
No Missed Payments

$0

## Account Details

Last Reported
May 31, 2007
Creditor Name
CAPITAL ONE
Account Type
Credit Card
Account Status
Closed
Opened Date
Jun 09, 2006
Closed Date
May 31, 2007
Limit
$800
Term
--
Monthly Payment
$0
Responsibility
Individual
Balance
$0
Highest Balance
$0
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
--
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

## Payment History

**2007** OK OK OK OK OK
**2006**                 OK OK OK OK OK OK OK OK
    J   F   M   A   M   J   J   A   S   O   N   D

## Credit Utilization*

0.00%

## Creditor Contact Details

CAPITAL ONE
PO BOX 30253
SALT LAKE CITY, UT
84130
(800) 477-6000

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

## Credit Karma Recommendations

Find a new card to replace your old card.

Compare this account on your Equifax® credit report
    TD AUTO FIN
Auto
Dec 20, 2001
Closed
No Missed Payments
$0

## Account Details

Last Reported
Jan 31, 2006
Creditor Name
TD AUTO FIN
Account Type
Automobile
Account Status
Closed
Opened Date
Dec 20, 2001
Closed Date
Jan 31, 2006
Limit
--
Term
48 Months
Monthly Payment
$0
Responsibility

Individual
Balance
$0
Highest Balance
$23,746
Payment Status
Current
Worst Payment Status
Current
Date of Last Payment
Jan 23, 2006
Amount Past Due
$0
Times 30/60/90 Days Late
0/0/0
Remarks
Closed

## Payment History

- **2005** OK OK OK OK OK OK OK OK OK OK OK OK U
  **2004** OK OK OK OK OK OK OK OK OK OK OK OK OK
  **2003** OK OK OK OK OK OK OK OK OK OK OK OK OK
  **2002** OK OK OK OK OK OK OK OK OK OK OK OK OK
  **J  F  M  A  M  J  J  A  S  O  N  D**

  - U

    **Unknown**

## Creditor Contact Details

TD AUTO FINANCE
27777 INKSTER RD
FARMINGTON HIL, MI
48334
(800) 222-1701

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

Compare this account on your Equifax® credit report

*Calculated using reported balance and credit limit on account.

**Next Steps**

Here are some steps you can take that can help out with your missed payments situation.

Subscribe

<u>View Accounts on your credit report</u>

ı· _                                          Reported as of Oct 06, 2015

# Credit Inquiries

The details displayed here include the origins of each hard inquiry and our calculation of when they should be removed from your credit report. If you're confused about any of the terms used on this page, read more about the specific data displayed here.

  Creditor Name
  Inquiry Date
  Removed By*
  Type
Sort By: : Select an Option           ▼
  CLC/QUICKEN
Sep 25, 2015
Oct 2017
Finance

## Creditor Contact Details

QUICKENLOANS/CLC/QUICKEN
SAN DIEGO , CA 92150
(800) 523-0233

## See something wrong?

Find out how to <u>dispute a hard inquiry</u>.
  CLARK KNAPP
Sep 12, 2015
Oct 2017
Automotive

## Creditor Contact Details

CLARKKNAPPMOT/CLARKKNAPP
PHARR , TX 78577
(956) 686-0555

## See something wrong?

Find out how to <u>dispute a hard inquiry</u>.
  CREDCO

Dec 20, 2013
Jan 2016
Finance

**Creditor Contact Details**

LOANDEPOT.COM/CREDCO
SAN DIEGO , CA 92150
(800) 523-0233

**See something wrong?**

Find out how to dispute a hard inquiry.
    CREDCO
Dec 20, 2013
Jan 2016
Finance

**Creditor Contact Details**

LOANDEPOT.COM/CREDCO
SAN DIEGO , CA 92150
(800) 523-0233

**See something wrong?**

Find out how to dispute a hard inquiry.
    EMS QUICKEN
Dec 6, 2013
Jan 2016
Misc.

**Creditor Contact Details**

QUICKENLOANS/EMSQUICKEN
MOUNT LAUREL , NJ 08054
(800) 863-4332

**See something wrong?**

Find out how to dispute a hard inquiry.
*Estimated based on the date of your inquiry and an assumed 2 year expiration period.

**Next Steps**

Here are some steps you can take that can help out with your missed payments situation.

Subscribe

10/6/2015                                    Full Credit Report | Credit Karma

View Inquiries on your credit report

# Looking for New Financial Products?

Credit Karma can help you avoid unnecessary inquiries by matching you with offers based on your credit profile.

Best Credit Cards

All Credit Cards

Auto Loans

Personal Loans

Business Loans

                              Reported as of Oct 06, 2015

# Collections

- If you've fallen well behind on payments, a lender could send your account to collections. Find information here on your collections accounts, including the original creditors, the current collectors and the amount of debt being collected.

Agency
Original Creditor
Open Date
Status
Balance
Sort By:  Select an Option          ▼
   CENTRL FINCL
MED1 02 VHS HARLINGEN HOSPITAL
Mar 03, 2015
Open
$1,810

**Account Details**

Last Reported
Sep 30, 2015
Collection Agency
CENTRL FINCL
Original Creditor
MED1 02 VHS HARLINGEN HOSPITAL
Status
Open
Opened Date

Mar 03, 2015
Closed Date
--
Responsibility
Individual
Balance
$1,810
High Balance
$1,810
Remarks
Account information disputed by consumer, meets FCRA requirements

**Creditor Contact Details**

CENTRAL FINCL CONTROL
PO BOX 660873
DALLAS, TX
75266
(888) 233-7880

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

Compare this account on your Equifax® credit report
    CENTRL FINCL
MED1 02 VHS HARLINGEN HOSPITAL
May 12, 2015
Open
$23,132

**Account Details**

Last Reported
Sep 30, 2015
Collection Agency
CENTRL FINCL
Original Creditor
MED1 02 VHS HARLINGEN HOSPITAL
Status
Open
Opened Date
May 12, 2015
Closed Date
--
Responsibility
Individual
Balance

10/6/2015                                    Full Credit Report | Credit Karma

$23,132
High Balance
$23,132
Remarks
Placed for collection

## Creditor Contact Details

CENTRAL FINCL CONTROL
PO BOX 660873
DALLAS, TX
75266
(888) 233-7880

## Direct Dispute

See something wrong?
We can help you dispute an error with TransUnion.

Compare this account on your Equifax® credit report
    CENTRL FINCL
MED1 02 VHS HARLINGEN HOSPITAL
Jun 15, 2015
Open
$819

## Account Details

Last Reported
Sep 30, 2015
Collection Agency
CENTRL FINCL
Original Creditor
MED1 02 VHS HARLINGEN HOSPITAL
Status
Open
Opened Date
Jun 15, 2015
Closed Date
--
Responsibility
Individual
Balance
$819
High Balance
$819
Remarks
Account information disputed by consumer, meets FCRA requirements

**Creditor Contact Details**

CENTRAL FINCL CONTROL
PO BOX 660873
DALLAS, TX
75266
(888) 233-7880

**Direct Dispute**

See something wrong?
We can help you dispute an error with TransUnion.

Compare this account on your Equifax® credit report
    CMRE FINANCE
MED1 02 MEDICAL PAYMENT DATA
Jan 13, 2014
Open
$923

**Account Details**

Last Reported
Mar 23, 2014
Collection Agency
CMRE FINANCE
Original Creditor
MED1 02 MEDICAL PAYMENT DATA
Status
Open
Opened Date
Jan 13, 2014
Closed Date
--
Responsibility
Individual
Balance
$923
High Balance
$923
Remarks
Placed for collection

**Creditor Contact Details**

CMRE FINANCIAL SERVICES
3075 E IMPERIAL HW 200
BREA, CA
92821

(877) 572-7555

**Direct Dispute**

See something wrong?
<u>We can help you dispute an error with TransUnion.</u>

    SARMA COLL
MED1 02 MACPHERSONS MEDICAL SUPPLY
Dec 22, 2009
Closed
$0

**Account Details**

Last Reported
Mar 16, 2013
Collection Agency
SARMA COLL
Original Creditor
MED1 02 MACPHERSONS MEDICAL SUPPLY
Status
Closed
Opened Date
Dec 22, 2009
Closed Date
--
Responsibility
Individual
Balance
$0
High Balance
$210
Remarks
Paid collection

**Direct Dispute**

See something wrong?
<u>We can help you dispute an error with TransUnion.</u>

## Manage Your Collections Accounts

Credit Karma can help you keep track of your collections accounts to help you try to improve your credit health.

- Get more information on collections accounts, including strategies for dealing with them

- Track your balance history to stay on top of where you stand
- Monitor the removal of your accounts as they fall off your credit report

<u>Manage Your Collections</u>

**Next Steps**

Here are some steps you can take that can help out with your missed payments situation.

Subscribe

<u>View Collections on your credit report</u>

Reported as of Oct 06, 2015

# Public Records

Here you can find details about each public record on your credit report. This may include bankruptcies, civil judgments and tax liens. Find the filing date and its current status.

As of **Oct 06, 2015**, you have no public records on your credit report.

**Next Steps**

Here are some steps you can take that can help out with your missed payments situation.

Subscribe

<u>View Public Records on your credit report</u>

Reported as of Oct 06, 2015

# Reading Your Report

# How to Read Your Credit Report

Your full credit report is divided into five important sections:

## Personal and Employment Information

This section contains names, addresses and employers included on your credit report. This sort of information is added to your report after it's been used on credit applications. Review this section for any information you don't recognize.

## Accounts

This section contains details on each credit account on your credit report, including both open and closed accounts. Details include payment history, current status and reported balances. Review this section to

ensure that your lenders have been properly reporting your activity, and to look for any accounts that you didn't open.

## Credit Inquiries

This section contains details on each hard credit inquiry on your credit report. Hard inquiries are typically added to your report when you apply for new lines of credit. Review this section to verify that each inquiry is correct and authorized by you, and to find our approximation of when each inquiry will be removed from your report.

## Collections

This section contains information about any accounts reported as in collections. If you've fallen behind on payments and have outstanding debts, a lender could send your account to collections. Review this section to check the accuracy of information about each collections account and to find contact information for your collections agencies.

## Public Records

This section contains details on any public record information included in your credit report. Public records include bankruptcies, civil judgments and tax liens. Review this section to ensure that each item is reported accurately. If there is incorrect information, you could file a dispute directly with the credit bureaus.

If you anticipate changes to your report over time, you can get an update to your credit report once a week through Credit Karma to check if new information has been added and old information has been updated. Because lenders typically only report information to the bureau once a month, it may take time for these updates to appear. View your report online to find highlights of information that could be important to your credit health.

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 10

**Central Financial Control**
BOX 830913 (Use mail address below)
Birmingham, AL 35283-0913

Customer Service 1(800)300-7192
M/T/F 8:00-6:30 W-TH 8:00-8:00 CST

CHANGE SERVICE REQUESTED

#BWNHDKX
#64190219E8890029#
BOBBY L. MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2435

Page 1 of 2

August 14, 2015

### BOBBY L. MITCHELL

Facility                           VHS Harlingen Hospital
Account Number                     02054889653
Patient Reference Number           046472635
Date(s) of Service:        09/10/2013 - 09/10/2013
Hospital Code                      838
Message ID                         12

| *Account Summary* | |
|---|---|
| Amount Owed . . . . . . . . . . . . . . . . . | $819.37 |

## IMPORTANT INFORMATION

### CREDIT REPORTING NOTICE

The above amount owed has been placed with us for collection and must be paid. Your payment may be mailed in the enclosed envelope.
To avoid having this debt reported and appearing on your credit report, you need to contact us as soon as possible to make arrangement for payment of this debt.

Please note that the amount owed may increase or decrease depending on any amount that is or is not covered by health insurance or other third party coverage for medical services received from VHS Harlingen Hospital; the same medical services that form the basis of this debt.

This has been sent by a debt collector, Central Financial Control. This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.

Any calls may be monitored or recorded for quality assurance.

---

Detach and return bottom portion with payment. Please make checks or money orders payable in U.S. funds to VHS Harlingen Hospital and include your patient reference number.

03366·TF06GJI0F000460

August 14, 2015

### BOBBY L. MITCHELL

Account Number:              02054889653
Patient Reference Number:    046472635

Date(s) of Service          09/10/2013 - 09/10/2013

Phone: Central Financial Control (se habla Español)
    Customer Service 1(800)300-7192
    M/T/F 8:00-6:30 W-TH 8:00-8:00 CST
    Account Specialist is Connie Parr

AMOUNT AUTHORIZED / ENCLOSED $

| DUE DATE | | CURRENT BALANCE |
|---|---|---|
| | | $819.37 |

**REMIT PAYMENT TO:**

CENTRAL FINANCIAL CONTROL
PO BOX 66044
ANAHEIM CA 92816-6044

0004647263500008l5378837

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 11

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

DANIELLE BERRY                                    September 14, 2015
DIRECT DIAL:404.567.6575
E-MAIL: DANIELLE.BERRY@LEWISBRISBOIS.COM

**Bobby Mitchell**
**394 W Harris Ave**
**Raymondville, TX 78580**

        RE:     Settlement Offer

Dear Bobby Mitchell:

        This firm represents you and Valley Telephone Cooperative, Inc. Medical Benefit Plan for claims associated with the reimbursement of medical care provided at VHS Harlingen Hospital. Enclosed please find a settlement offer recently made in an attempt to resolve the dispute over the outstanding balance which VHS Harlingen Hospital claims is owed.   If the offer is accepted, the Plan will pay the offer amount and the matter will be closed.

        Please note this correspondence is simply for your information.  **There is no need for any action on your part at this time.**  Please feel free to contact us if you have any questions.

                        Very Truly Yours,


                        Danielle Berry of
                        LEWIS BRISBOIS BISGAARD & SMITH LLP

DKB:md
cc:     Valley Telephone Cooperative, Inc. Medical Benefit Plan

4840-1694-5164.1

# LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

**Danielle Berry**
DIRECT DIAL: 404.567.6575
EMAIL: DANIELLE.BERRY@LEWISBRISBOIS.COM

September 14, 2015

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Central Financial Control
PO Box 66044
Anaheim, CA 92816

| | | |
|---|---|---|
| RE: | My Client: | **Bobby Mitchell** |
| | Your Client: | **VHS Harlingen Hospital** |
| | Patient Account No.: | **02054889653 (Ref. # 046472635)** |
| | Date of Service: | **September 10, 2013** |
| | Alleged Amount: | **$819.37** |
| | Plan Name: | **Valley Telephone Cooperative, Inc. Medical Benefit Plan** |

Dear Sir or Madam:

I write this letter to inform you that this firm represents the above-mentioned patient, Bobby Mitchell, in connection with the above matter. From this point forward, please direct all communication regarding this matter to Danielle Berry and _not_ to Bobby Mitchell. Please cease direct communications with Bobby Mitchell immediately.

We are in receipt of a statement that Central Financial Control sent to Bobby Mitchell. The amount claimed to be due is $819.37. We dispute the validity of this debt and/or a portion thereof. Please verify this debt and provide a copy of all verification documents so that we may further assess this claimed amount due.

While we continue to dispute the validity of this debt and/or a portion thereof, in lieu of prolonging this dispute, my client has authorized me to make an offer of settlement and compromise to resolve the above-referenced claim(s) under the following terms:

- VHS Harlingen Hospital will be paid a lump sum payment of **THREE HUNDRED TWENTY-SEVEN DOLLARS AND 75/100 ($327.75)** within thirty (30) days of receipt of the written acceptance of this offer;

- VHS Harlingen Hospital will accept the above amount as full and final settlement, satisfaction, and compromise of the above-referenced amount, and will write off any and

4840-1694-5164.1

all remaining balances for the above-named patient for the date of service indicated above;

- VHS Harlingen Hospital will make no further attempts to collect any portion of the remaining balance against Bobby Mitchell, Valley Telephone Cooperative, Inc. Medical Benefit Plan, any of the Plan's participants or fiduciaries, and/or any other third-party guarantor of the above-referenced medical bill(s);

- VHS Harlingen Hospital will agree not to report this matter to any credit reporting agency, or if already reported, will agree to immediately <u>completely and totally</u> remove any and all adverse credit reports from the patient's credit report. Reporting the debt as "Amount Paid in Full for Less Than Full Amount," "Settled in Full," or similar language, expressly does not satisfy the terms of this settlement agreement, as only total removal will comply with the terms of this agreement;

- VHS Harlingen Hospital will acknowledge receipt of this offer in writing by signature below, and shall return this signed acknowledgment via certified U.S. Mail, return receipt requested and/or fax to the address and/or fax number listed in the letterhead above; and

- By signing on behalf of VHS Harlingen Hospital, the person signing represents and warrants that he/she has the full authority necessary to bind VHS Harlingen Hospital to the terms of this offer as set forth herein.

Based on the terms of the offer extended herein, and if you choose to accept the offer, this will be resolved within thirty (30) days of the written acceptance of this offer. If you choose not to accept the offer prior to its expiration, we will vigorously defend any future attempts by VHS Harlingen Hospital and/or its agents to collect any amounts on the above-referenced bill. Further, if you choose not to accept this offer, please be advised that the alleged debt is disputed.

The entire contents of this letter represent an offer of compromise and settlement and shall not be used against any of the above-named parties in any legal action. If you have any questions, please contact Danielle Berry. Thank you for your prompt attention to this matter. My client looks forward to your response.

Sincerely,

Danielle Berry of
LEWIS BRISBOIS BISGAARD & SMITH LLP

DKB:md
cc:    Bobby Mitchell

4830-1694-5164.1

By my signature below, I hereby accept the above offer related to Bobby Mitchell on behalf of VHS Harlingen Hospital on the terms listed above.  I hereby represent and warrant that I have the full authority necessary to bind VHS Harlingen Hospital to the terms of this offer as set forth herein.

This _____ day of _____, 2015.


_____
(Signature of VHS Harlingen Hospital representative)


_____
(Print name of person signing above)


**Payment Information**
(To be completed by person signing above)

| Payee on check | |
|---|---|
| Remittance Address | |

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 12

## Central Financial Control

P.O. Box 660873
Dallas, TX 75266-0873

(888)233-7880 Phone
(714)937-3427 Fax

October 20, 2015

Lewis Brisbois Bisgaard & Smith, Attorneys at Law
Attn: Danielle Berry
1180 Peachtree St NE, Suite 2900
Atlanta, GA 30309

**CFC Number:**      **2054889653**

Dear Ms. Berry:

Our office is in receipt of your letter advising of your representation of Bobby Mitchell with regard to the above referenced account number.

The aforementioned account results from services rendered by our client. The Conditions of Services available to your client at the time of service outlines his financial responsibility. Our records indicate $819.37 was determined to be your client's responsibility. The account in question has been validated.

Our records indicate you were properly notified of the outstanding balance prior to the reporting of this account on your credit profile. Therefore, a deletion is not warranted. The outstanding balance on this account is $819.37 and remains due and owing.

Due to the mandates of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), we are requesting a signed HIPAA form from your client authorizing our office to release or communicate any further information with your office. Enclosed for your convenience, is a blank authorization, which satisfies the mandates of HIPAA. Please forward the requested documents within 15 days of this letter so that this office may bring resolution to this matter on your behalf.

Per your request we will cease and desist collection activity with Bobby Mitchell.

Sincerely,

Rod Waters
Inquiry Resolution Specialist

Enclosure:  HIPAA Authorization Form

This is an attempt to collect a debt by a debt collector, any information obtained will be used for that purpose.

Any call may be monitored or recorded for quality assurance.

## HIPAA AUTHORIZATION FORM

*Disclaimer: This document is provided solely for reference purposes. Covered Entities under HIPAA are advised to refer to their Institution's Privacy Policy for specific requirements for the HIPAA Authorization.*

I, _____ , give permission to <u>Central Financial Control</u> to:

▢ use the following protected health information. and/or
▢ disclose the following protected health information to:

_____
_____

_____
[Name's) of entity to receive information]

Information to be disclosed (check all that apply):
▢ Medical Records
▢ Treatment Records
▢ Diagnostic Records
▢ Other: _____
       _____

This protected health information is being used or disclosed for the following purposes:

_____
_____

This authorization expires:_____(specify (1) date or {2} event that relates to the purpose of this use or disclosure).

If the person or entity receiving this information is not a health care provider or health plan covered by federal privacy regulations, the information described above may be disclosed to other individuals or institutions and no longer protected by these regulations.

You may refuse to sign this authorization. Your refusal to sign will not affect your ability to obtain treatment or payment or your eligibility for benefits.

You may inspect or copy the protected health information to be used or disclosed under this authorization. For protected health information created as part of a clinical trial, your right to access is suspended until the clinical trial is completed.

Finally, you may revoke this authorization in writing at any time by sending written notification to this office at P.O. Box 660873, Dallas, TX 75266-0873. Your notice will not apply to actions taken by the requesting person/entity prior to the date they receive your written request to revoke authorization.

_____
Signature of Participant or Personal Representative

_____
Date

_____
Printed Name of Participant or Personal Representative

_____
Description of Personal Representative's Authority

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 13

# GPA GROUP & PENSION ADMINISTRATORS, INC.

PARK CENTRAL 8 · 12770 MERIT DRIVE 2ª FLOOR, SUITE 200 · DALLAS, TX 75251 · (972) 238-7900

Valley Telephone Cooperative, Inc. Medical Benefit Plan
**Notice of Adverse Benefits Determination**

11/1/2013

To:     Manager, Patient Accounts
        VHS Harlingen Hospital
        P.O. Box 911573
        Dallas, TX 75391

Re:     Valley Telephone Cooperative, Inc. Medical Benefit Plan (the "Plan")
        Patient: Bobby Mitchell          Patient Account No. - G1325601551
        Date(s) of Service Beginning: 09/13/2013

Dear Manager, Patient Accounts:

This notice is being provided to you as an explanation of the benefit determination for the above-referenced claim, and your rights under the Plan.

The Plan covering the patient is a self-funded welfare benefit plan as defined under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and complies with all federal laws that govern such plans. You submitted a claim for payment in the amount of $66,853.95. For the reasons set forth below, the Plan Administrator has determined that certain charges in the amount of $49,874.16 must be denied in accordance with the terms of the Claim Review and Audit Program provisions of the Plan.

## Specific Plan Provisions
The Plan provision that is the basis for this claim determination may be found in the Summary Plan Description under the heading, "Claim Review and Audit Program". This provision limits covered expenses under the Plan to those within the "Allowable Claim Limits". "Allowable Claim Limits" means the charges for services and supplies included as covered medical expenses under the Plan which are medically necessary for the care and treatment of illness or injury, but only to the extent that such fees are within the limits and allowances which are listed for certain treatment types, services and supplies.

## Specific Reasons for Denial
A comprehensive bill review has been performed on this claim. The enclosed audit report lists, in detail, the charges that are being denied due to apparent billing errors or charges which exceed this Plan's Allowable Claim Limits. The Allowable Claim Limits represent the Plan's internal rules, guidelines and protocols relied upon in the determination.

## Your Appeal Rights
ERISA provides for a Plan participant to appeal a denial of benefits under the Plan, and the participant has been so informed. **In an effort to protect the Plan participant and fairly resolve any dispute of a benefit denial, this Plan also allows for a provider of service to have full appeal rights in addition to those rights afforded by law to a participant.** When you, as the provider of service, exercise your right of appeal under the terms of this Plan, you are agreeing to the terms and conditions through which this right is granted, including your agreement to pursue recovery of certain denied expenses directly from the Plan and waiving any right to recover those certain expenses from the Plan participant.

Notice of Adverse Benefit Determination ERISA
Page 1 of 4

In return for this agreement, you will be accorded the same rights that are accorded by law to a Plan participant. The Plan provision allowing for your appeal, in pertinent part, is explained below.

### Provider of Service Appeal Rights

A covered person may appoint the provider of service as the Authorized Representative with full authority to act on his or her behalf in the appeal of a denied claim. An assignment of benefits by a covered person to a provider of service will not constitute appointment of that provider as an Authorized Representative. However, in an effort to ensure a full and fair review of the denied claim, and as a courtesy to a provider of service that is not an Authorized Representative, the Plan will consider an appeal received from the provider in the same manner as a claimant's appeal, and will respond to the provider and the claimant with the results of the review accordingly. Any such appeal from a provider of service must be made within the time limits and under the conditions for filing an appeal specified under the section, "Appeal Process". **Providers requesting such appeal rights under the Plan must agree to pursue reimbursement for covered medical expenses directly from the Plan, waiving any right to recover such expenses from the claimant, and comply with the conditions of the section, "Requirements for Appeal".**

For purposes of this section, the provider's waiver to pursue covered medical expenses **does not include** the following amounts, which will remain the responsibility of the claimant:

- Deductibles;
- Copayments;
- Coinsurance;
- Penalties for failure to comply with the terms of the Plan;
- Charges for services and supplies which are not included for coverage under the Plan, and
- Amounts which are in excess of any stated Plan maximums or limits.*

**\*Note: This does not apply to amounts found to be in excess of Allowable Claim Limits, as defined in the section, "Claim Review and Audit Program".** The claimant will not be held responsible for any otherwise covered amounts found to be in excess of Allowable Claim Limits.

## Requirements for First Appeal

1. You may appeal this benefit denial to the named fiduciary under the Plan by filing a request for review under the Plan's procedures and as described below.

2. You must file your request for review within 180 days of the date you receive this Notice of Adverse Benefit Determination by submitting a written request for review by hand, or by first-class mail, to:

| Appeals, Claims Department | Or | Appeals Department |
|---|---|---|
| Group & Pension Administrators, Inc. | | ELAP Services, LLC |
| 12270 Merit Drive, Suite 200 | | 961 Pottstown Pike |
| Dallas, TX 75251 | | Chester Springs, PA 19425 |

**Please note**: Letters received by the Plan **must** explicitly state that an appeal is being requested, and must be accompanied by the information and documentation necessary for a full and fair review.

Notice of Adverse Benefit Determination ERISA
Page 2 of 4

3.   You must include a statement in clear and concise terms of the reason or reasons for disagreement with the handling of the claim.

4.   You must include any material or information that you have which indicates that the expenses are covered under the Plan.

5.   In connection with your appeal, you **must** submit written comments, documents, records and other information relating to any denied or partially denied charge included in this benefit denial. Failure to include any theories or facts in the appeal will result in their being deemed waived. In other words, you will lose the right to later raise factual arguments and theories which support this claim if you fail to include them in the appeal.

## Additional Information Necessary to Perfect Your Claim

For any charges excluded in the calculation of Allowable Claim Limits, you will find an Adjustment Code explanation in the audit review report.  Following is an explanation of what is required in order for you to perfect the claim for benefits for each Adjustment Code:

1.   Adjustment Code 'H':  Hospital.  Allowable Claim Limits have been determined using the most recent departmental cost/charge ratios as reported to CMS by the provider.  Please submit documentation for any adjustment to the cost/charge ratio.

2.   Adjustment Code 'R':  Reduced to 112% of Redbook's Average Wholesale Price (AWP). Please submit documentation in support of a higher AWP.

3.   Adjustment Code 'I':  Medical and Surgical Supplies, Implants, Devices.  Please submit invoices, receipts, cost lists or other appropriate documentation to evidence the cost to the provider.

4.   Adjustment Code 'P':  90th Percentile of Fee Reference (PFR)  Please submit documentation establishing that the fee for the services does not exceed the 90th percentile for the same services performed by other providers in the geographic area.

5.   Adjustment Code 'M':  Medicare allowed amount.  Please submit documentation that the charges do not exceed the Medicare-allowed amount plus 20%.  clearly identify the service or supply.

6.   Adjustment Code 'A':  Ancillary.  Please submit documentation showing any variance which the Plan should consider as "industry standard".

7.   Adjustment Code 'U':  Unbundled.  Please submit documentation showing that the charges should not be included in a global procedure code and/or are not included in departmental charges.

8.   Adjustment Code 'E':  Error in billing.  Please submit documentation showing that these charges were not billed in error.

9.   Adjustment Code 'Q':  Quantity change.  Please submit documentation to support the quantity of items or services billed which are not supported in the medical records.

10.  Adjustment Code 'N':  Not able to identify or understand.  Please submit information which will clearly identify the service or supply.

## Manner and Content of Notification of Benefit Determination on Review

When you file an appeal, as described above, the Plan Administrator will provide a full and fair review of this benefit denial according to the Plan's procedures.

Notice of Adverse Benefit Determination ERISA
Page 3 of 4

The review will take into account all comments, documents, records and other information submitted that directly and specifically relates to the denied or partially denied charges set forth in the spreadsheet review. This would include any applicable physician and nurse notes, logs, chart details, invoices, receipts, cost lists, statements, explanations and any similar information related specifically and directly to each charge denied or partially denied and not submitted previously. The review on appeal will be a "fresh" look at your claim without deference to this initial benefit denial. It will be conducted by a person who was not involved in this initial benefit denial, and who is not a subordinate of the individual involved in this initial benefit denial.

### Time Period for Decision on a Request for Review
The Plan will notify you of the decision on your request for review within a reasonable time but not later than 30 days after the Plan receives your request for review.

In the event of an adverse decision regarding the first appeal, you have 60 days to file a second appeal of the denial of benefits. You will again be entitled to a "full and fair review" of any denial made at the first appeal, which means you have the same rights during the second appeal as you had during the first appeal. As with the first appeal, the second appeal <u>must</u> be in writing and <u>must</u> include <u>all</u> of the items set forth above in the section entitled "Requirements for First Appeal."

### Furnishing Documents in the Event of an Adverse Determination
In the case of an adverse benefit determination on review, the Plan Administrator shall provide, on request and free of charge, access to, and copies of, documents, records, and other relevant information described above in the section, "Manner and Content of Notification of Benefit Determination on Review".

### Decision on Appeal to be Final
If, for any reason, you do not receive a written response to the appeal within the appropriate time period set forth above, you may assume that the appeal has been denied. The Plan Administrator's decision on review will be final, binding and conclusive and will be afforded the maximum deference permitted by law. **All claim review procedures provided for in the Plan must be exhausted before any legal action is brought. Any legal action for the recovery of any benefits must be commenced within three years after the Plan's claim review procedures have been exhausted.**

When the Plan's appeal procedures have been exhausted, you will have the right to bring a civil action under ERISA §502(a) if your request for coverage or benefits is denied following review.

Please contact the undersigned if you have any questions or require any additional information regarding the Plan provisions applicable to this claim and/or the conditions under which these appeal rights are being granted.

Sincerely,


Claims Department

Enclosures:



Notice of Adverse Benefit Determination ERISA
Page 4 of 4

| TPA | GPA | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Group | Valley Telephone Cooperative, Inc. | | | Audit Completion Date: | | 11/1/2013 | | | |
| Claim # | 1327403164 | | | Total Amount Billed: | $ | 66,853.95 | | | |
| Provider | VHS Harlingen Hospital - 450033 | | | | | | | | |
| Patient | Bobby L. Mitchell | | | Reduction: | $ | 49,874.17 | | | |
| Pt Act # | G1325601551 | | | | | | | | |
| DOS | 9/13/2013 - 9/25/2013 | | | Allowable Claim Limit Total | $ | 16,979.78 | | | |
| NPI #: | 1154618742 | | | | | | | | |

| DRG: | 945 | DRG Desc: | REHABILITATION W CC/MCC | | |
|---|---|---|---|---|---|
| | | Hospital Specific DRG allowable | | $ | 9,696.14 |
| | Adjustment Code M Calculation | Medicare +20% | | $ | 11,635.37 |

| Rev Code | Item Description | CPT/ NDC | QTY | Total Charge | | Cost Each | | C-C/R Adjusted Allowance | | Adj. Code | Cost Ratio |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 118 | 7035 - Room 359 Q | | 12 | $ | 40,219.20 | $ | 3,351.60 | $ | 13,707.35 | H | 0.3043 |
| | | Total | | $ | 40,219.20 | | | $ | 13,707.35 | | |
| 250 | 1921 - Metoprolol tart tab 100mg | | 23 | $ | 144.90 | $ | 6.30 | $ | 26.45 | H | 0.1630 |
| 250 | 2210 - Paroxetine tab 30mg | | 12 | $ | 274.20 | $ | 22.85 | $ | 50.06 | H | 0.1630 |
| 250 | 2356 - Potassium chlor pwd 20meq | | 1 | $ | 6.30 | $ | 6.30 | $ | 1.15 | H | 0.1630 |
| 250 | 249 - Amiodarone tab 200mg | | 12 | $ | 249.00 | $ | 20.75 | $ | 45.46 | H | 0.1630 |
| 250 | 2740 - Temazepam cap 15mg | | 10 | $ | 63.00 | $ | 6.30 | $ | 11.50 | H | 0.1630 |
| 250 | 2868 - Tramadol tab 50mg | | 5 | $ | 43.50 | $ | 8.70 | $ | 7.94 | H | 0.1630 |
| 250 | 387 - Baclofen tab 10mg | | 11 | $ | 69.30 | $ | 6.30 | $ | 12.65 | H | 0.1630 |
| 250 | 4099 - Pantoprazole 40mg tablet | | 12 | $ | 360.60 | $ | 30.05 | $ | 65.83 | H | 0.1630 |
| 250 | 4533 - Rosuvastatin calcium 10mg tablet | | 22 | $ | 693.00 | $ | 31.50 | $ | 126.51 | H | 0.1630 |
| 250 | 4808 - Hydrocodone-apap 5-325mg tablet | | 78 | $ | 491.40 | $ | 6.30 | $ | 89.71 | H | 0.1630 |
| 250 | 6072 - Apixaban tab 5mg | | 24 | $ | 151.20 | $ | 6.30 | $ | 27.60 | H | 0.1630 |
| 250 | 799 - Codeine/acetamin 30/325mg tab | | 4 | $ | 25.20 | $ | 6.30 | $ | 4.60 | H | 0.1630 |
| | | Total | | $ | 2,571.60 | | | $ | 469.46 | | |
| 301 | 3233 - Basic metabolic panel total ca | | 6 | $ | 1,543.50 | $ | 257.25 | $ | 99.40 | H | 0.0575 |
| 301 | 3237 - Hepatic function panel | | 1 | $ | 247.80 | $ | 247.80 | $ | 15.96 | H | 0.0575 |
| 301 | 3258 - B natriuretic peptide | | 1 | $ | 1,025.85 | $ | 1,025.85 | $ | 66.06 | H | 0.0575 |
| | | Total | | $ | 2,817.15 | | | $ | 181.42 | | |
| 305 | 1014 - CBC with auto diff | | 3 | $ | 705.60 | $ | 235.20 | $ | 45.44 | H | 0.0575 |
| 305 | 1051 - Prothrombin time (inr) | | 1 | $ | 118.65 | $ | 118.65 | $ | 7.64 | H | 0.0575 |
| 305 | 1113 - CBC | | 3 | $ | 592.20 | $ | 197.40 | $ | 38.14 | H | 0.0575 |
| | | Total | | $ | 1,416.45 | | | $ | 91.22 | | |
| 306 | 2013 - Blood culture | | 2 | $ | 449.40 | $ | 224.70 | $ | 28.94 | H | 0.0575 |
| | | Total | | $ | 449.40 | | | $ | 28.94 | | |
| 307 | 1069 - Urinalysis dipstick/reflex mic | | 1 | $ | 68.25 | $ | 68.25 | $ | 4.40 | H | 0.0575 |
| 307 | 1071 - Urinalysis microscopic | | 1 | $ | 92.40 | $ | 92.40 | $ | 5.95 | H | 0.0575 |
| | | Total | | $ | 160.65 | | | $ | 10.35 | | |
| 324 | 1019 - XR chest 1 view | | 1 | $ | 453.60 | $ | 453.60 | $ | 47.70 | H | 0.0939 |
| | | Total | | $ | 453.60 | | | $ | 47.70 | | |
| 420 | 1065 - Aru - therapeutic activ ea 15m | | 47 | $ | 6,204.00 | $ | 132.00 | $ | 1,014.48 | H | 0.1460 |
| | | Total | | $ | 6,204.00 | | | $ | 1,014.48 | | |
| 424 | 1041 - Aru - physical therapy eval/2 | | 5 | $ | 2,880.00 | $ | 576.00 | $ | 470.94 | H | 0.1460 |
| | | Total | | $ | 2,880.00 | | | $ | 470.94 | | |
| 430 | 1064 - Aru - therapeutic activ ea 15m | | 40 | $ | 5,280.00 | $ | 132.00 | $ | 513.30 | H | 0.0868 |
| | | Total | | $ | 5,280.00 | | | $ | 513.30 | | |
| 434 | 1033 - Aru - occupational therapy eval/2 | | 4 | $ | 2,304.00 | $ | 576.00 | $ | 223.99 | H | 0.0868 |
| | | Total | | $ | 2,304.00 | | | $ | 223.99 | | |
| 921 | 3108 - US dup lower extrem vein bilat | | 1 | $ | 2,097.90 | $ | 2,097.90 | $ | 220.63 | H | 0.0939 |

| TPA | GPA | | | | Audit Completion Date: | | 11/1/2013 |
|---|---|---|---|---|---|---|---|
| Group | Valley Telephone Cooperative, Inc. | | | | | | |
| Claim # | 1327403164 | | | | Total Amount Billed: | $ | 66,853.95 |
| Provider | VHS Harlingen Hospital - 450033 | | | | | | |
| Patient | Bobby L. Mitchell | | | | Reduction: | $ | 49,874.17 |
| Pt Act # | G1325601551 | | | | | | |
| DOS | 9/13/2013 - 9/25/2013 | | | | Allowable Claim Limit Total | $ | 16,979.78 |
| NPI #: | 1154618742 | | | | | | |

| | | Total | | $ | 2,097.90 | | $ | 220.63 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Grand Total | | $ | 66,853.95 | | $ | 16,979.78 | | | |
| | | | | $ | 66,853.95 | | $ | 16,979.78 | | | |
| | | | | | | | | | | | |

| | "KEY" for Adjustment Codes | | | | | | | | Reduction |
|---|---|---|---|---|---|---|---|---|---|
| H | Reduced to HOSPITAL allowable claim limit of 112% of department-specific cost-ratio, as reported to CMS | | | | | | | $ | 49,874.17 |
| R | Reduced to allowable claim limit of 112% of Redbook's Average Wholesale Price (AWP) | | | | | | | $ | - |
| I | Allowable claim limit is invoice (cost) + 12%. Please forward actual invoice for this item. | | | | | | | $ | - |
| P | Allowable claim limit is 90th percentile per Physicians' Fee Reference (PFR) for geographic region | | | | | | | $ | - |
| M | Allowable claim limit is Medicare allowed amount, in geographic region, plus 20%. | | | | | | | $ | - |
| \ | Reduced to allowable claim limit of 112% of published industry standard, for ancillary (other) treatment | | | | | | | $ | - |
| U | Item was "Unbundled" but should be included in global charge | | | | | | | $ | - |
| E | Error in billing. | | | | | | | $ | - |
| Q | Quantity- or other-change based on review of actual medical record | | | | | | | $ | - |
| N | NOT able to identify or understand item/service. Please supply additional information to explain. | | | | | | | $ | - |
| Z | | | | | | | | $ | - |
| | | | | | | TOTAL All Adjustment Codes | | $ | 49,874.17 |

| **MAIN Diagnosis Codes** | | $ | 16,979.78 |
|---|---|---|---|
| V57.89 | Care involving use of other specified rehabilitation procedure | $ | 66,853.95 |
| 584.9 | Acute kidney failure, unspecified | $ | (66,853.95) |
| 427.31 | Atrial fibrillation | $ | - |
| 272.4 | Other and unspecified hyperlipidemia | | |
| 333.94 | Restless legs syndrome (RLS) | | |
| 285.1 | Acute posthemorrhagic anemia | | |
| 278.00 | Obesity, unspecified | | |
| V54.81 | Aftercare following joint replacement | | |
| V43.64 | Hip joint replaced by other means, influencing health status, recorded as "diagnosis" or "problem" | | |

**Admitting Diagnosis Code**
V57.89     Care involving use of other specified rehabilitation procedure

**MAIN Procedure Codes**
N/A

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 14

SEP-15-2014 03:10 From:reference bureau                    T::18885685447        Page:2 2



**VHS Harlingen Hospital**
BOX 830913 (Use mail address below)
Birmingham, AL 35283-0913

Page: 1 of 2

September 01, 2014

CUSTOMER SERVICE 1(855)589-9912
MON-FRI 7:30A-7:00P, SAT 8:00A-5:00P CST

CHANGE SERVICE REQUESTED

#BWNHDKX
#727909000559001?#

BOBBY L MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2436

**BOBBY L MITCHELL**
Facility:                          VHS Harlingen Hospital

Patient Reference Number:          61325601551
Date(s) of Service:                09/13/2013 - 09/25/2013
Hospital Code:
Message ID:                        EX2
Payment Due Date:                  Due Upon Receipt

| Account Summary | |
|---|---|
| Total Charges | $66,853.95 |
| Adjustments | $43,721.36 |
| Paid by Insurance | $0.00 |
| Already Paid by Patient | $0.00 |
| **Amount Owed** | **$23,132.59** |

## IMPORTANT INFORMATION

Thank you for choosing our facility for your health care needs. Your insurance company has paid its portion and the remaining amount owed above is your responsibility. Your insurance company should have sent you an Explanation of Benefits verifying the portion you owe. If you have additional insurance which has not been billed, as a courtesy, we will file a claim for you. Please be aware that insurance companies have filing deadlines which must be met in order for them to pay. If the filing deadline is missed, the balance is solely your responsibility. Please call the number above to provide insurance information, or return a copy of the front and back of your insurance card with the payment slip below. If you do not have additional insurance, please return payment in full by check, money order or any of the credit/debit cards listed on the payment slip below. Please return the perforated payment slip with your payment. You may also call our business office to make payment.

If you are unable to pay in full, please call our office to discuss alternate arrangements. Any of our representatives will be able to assist you with payment or other questions. If payment has already been made, please disregard this notice.

Thank you for your prompt attention to this matter.

**Continued on reverse...  ▶ ▶ ▶**

---

Detach and return bottom portion with payment. Please make checks or money orders payable in U.S. funds to VHS Harlingen Hospital and include your patient reference number.

September 01, 2014                                            33380

**BOBBY L MITCHELL**

Patient Reference Number:          61325601551
Payment Due Date:                  Due Upon Receipt
Location Code:                     883
Date(s) of Service:                09/13/2013 - 09/25/2013

Phone: VHS Harlingen Hospital (se habla Español)
CUSTOMER SERVICE 1(855)589-9912
MON-FRI 7:30A-7:00P, SAT 8:00A-5:00P CST

| DUE DATE | AMOUNT YOU OWE |
|---|---|
| Due Upon Receipt | $23,132.59 |

Please check box if address above is incorrect or insurance information has changed, and indicate change(s) on reverse side.

IF PAYING BY MASTERCARD, DISCOVER, VISA OR AMERICAN EXPRESS, FILL OUT BELOW:

☐ MASTERCARD   ☐ DISCOVER   ☐ VISA   ☐ AMERICAN EXPRESS

CARD NUMBER                              EXP DATE (M/D M/Y)

CARDHOLDER SIGNATURE                     SECURITY CODE (LAST 3 DIGITS ON BACK OF CARD)

CARDHOLDER NAME, please print            CARDHOLDER PHONE #

**AMOUNT AUTHORIZED / ENCLOSED $ _____**

**REMIT PAYMENT TO:**

VHS HARLINGEN HOSPITAL
P.O. BOX 910082
DALLAS, TX 75391-0082

61325601551002313259883?

GROUP & PENSION ADMINISTRATORS, INC
P.O.BOX 749075
DALLAS, TX 75374-9075

Temp-Return Service Requested

002074-003080-C0C004-003080 2002059 3472CK02_1
BOBBY MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2435

Valley Telephone Co-Op, Inc.

**EXPLANATION OF BENEFITS**

THIS IS NOT A BILL

| | |
|---|---|
| Group #: | S860063008510029 |
| Date: | 11/08/2013 |
| Employee: | BOBBY MITCHELL |
| Patient: | BOBBY MITCHELL |
| Document #: | 1327403164 |
| Patient Id: | G1325601551 |
| EOB #: | 20131107-2918 |

| Provider/ Nature Of Service | Dates of Service From | To | Charges Submitted | Ineligible | Code | Discount | Copay | Deductible | % Plan Pays | Benefit Payable |
|---|---|---|---|---|---|---|---|---|---|---|
| VHS HARLINGEN HOSPITAL COMPANY | | | | | | | | | | |
| REHAB R&B | 09/13/13 | 09/25/13 | 40219.20 | 40219.20 | 1 | | | | | |
| REHAB MISC | 09/13/13 | 09/25/13 | 26634.75 | 9654.97 | 1 | | | | 100% | 16979.78 |
| | TOTAL AMOUNTS | | 66853.95 | 49874.17 | | | | | | 16979.78 |

The percentage(s)payable or any patient deductible(s) or co-pay(s) has been applied in accordance with the schedule of benefits in the Summary Plan Description.
**EXPLANATION OF CODE**

1 - 382 - 882-THESE CHARGES EXCEED THE PLAN'S ALLOWABLE CLAIM LIMITS, THEREFORE, THE CHARGES HAVE BEEN DENIED AS STATED IN THE EXCLUSIONS AND LIMITATIONS IN YOUR SUMMARY PLAN DESCRIPTION. APPEAL RIGHTS UNDER THIS PLAN ALSO APPLY TO PROVIDERS OF SERVICE.

**SEE BACK FOR APPEAL PROCESS**

**SUMMARY OF SUBMITTED CHARGES**

| | | | |
|---|---|---|---|
| | | INELIGIBLE CHARGES | 49874.17 |
| | | DEDUCTIBLE | |
| TOTAL SUBMITTED CHARGES | 66853.95 | CO-PAY | |
| TOTAL BENEFITS PAID | 16979.78 | PATIENT'S,COINSURANCE | |
| TOTAL DISCOUNT | | | |
| OTHER INSURANCE CARRIER PAYMENT | | TOTAL DUE TO PROVIDER | 0.00 |

**YEAR TO DATE ACCUMULATORS**

THE PATIENT'S 2013 MEDICAL DEDUCTIBLE SATISFIED IS $750.00     THE 2013 FAMILY MEDICAL DEDUCTIBLE SATISFIED IS $975.00

| PAYEE NAME: | AMOUNT: |
|---|---|
| CVHS HARLINGEN HOSPITA | $16979.78 |

To: ELAP

FAX # 1-888-560-2447

From: Bobby Mitchell

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 15

# LEWIS
## BRISBOIS
## BISGAARD
## & SMITH LLP
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

CARRIE STEPHENS                                    September 22, 2014
DIRECT DIAL: 404.991.3787
E-MAIL: CARRIE.STEPHENS@LEWISBRISBOIS.COM

**VIA U.S. MAIL**

Manager, Patient Accounts
VHS Harlingen Hospital
PO Box 2588
Harlingen, TX 78550

|     |     |     |
| --- | --- | --- |
| **RE:** | **Patient:** | **Bobby Mitchell** |
|     | **Account No.:** | **G1325601551** |
|     | **Claim No.:** | **1327403164** |
|     | **Date of Service:** | **September 13, 2013** |
|     | **Plan Name:** | **Valley Telephone Cooperative, Inc.** |
|     |     | **Medical Benefit Plan** |

Dear Sir or Madam:

I write this letter to inform you that this firm represents the above-mentioned patient, Bobby Mitchell, in connection with the above matter. From this point forward, please direct all communication regarding this matter to Carrie Stephens and <u>not</u> to Bobby Mitchell. Please cease direct communications with Bobby Mitchell immediately.

This letter follows a letter of November 1, 2013 you received from Group & Pension Administrators, Inc. regarding the Valley Telephone Cooperative, Inc. Medical Benefit Plan (the "Plan"), of which Bobby Mitchell is a participant. The focus of that letter to you, and this letter as well, is the difference between the original amount of $66,853.95 billed by VHS Harlingen Hospital and the eligible amount covered by the Plan, less any applicable deductible, which amounted to $16,979.78 and which was paid to VHS Harlingen Hospital on or about November 1, 2013.

In the letter from Group & Pension Administrators, Inc., you were made aware of the ERISA appeal process in the event of an Adverse Benefit Determination. This letter will again remind you of the appeal process, as well as the 180 day deadline within which VHS Harlingen Hospital may file such an appeal. I am not in a position to give you legal advice, as I represent the

September 22, 2014
Page 2

aforementioned client in this matter, but VHS Harlingen Hospital is again encouraged to avail itself of the appeals process if it does not believe it was properly reimbursed by receipt of $16,979.78.

My client stands by the audit of the medical bills in connection with the above-referenced date(s) of service. VHS Harlingen Hospital billed Bobby Mitchell in the amount of $66,853.95 for the treatment received on September 13, 2013. The independent audit performed during this claim determined the amount that should be paid, and VHS Harlingen Hospital has been timely paid the appropriate amount of $16,979.78 on or about November 1, 2013. This amount paid was the Allowable Claim Limit of 112% of the department-specific cost-ratio, as reported to CMS. This payment constitutes fair reimbursement for the medical care provided. We are prepared to defend the audit and payment made in this case against any further collection attempts by VHS Harlingen Hospital or its agents.

Additionally, on behalf of Bobby Mitchell, this letter hereby revokes any waiver of Bobby Mitchell's HIPAA privacy rights as obtained by VHS Harlingen Hospital and also revokes any previous HIPAA authorizations that would enable VHS Harlingen Hospital to disseminate any of Bobby Mitchell's confidential medical records or information. This revocation of authorization does not revoke any authorization that Bobby Mitchell has provided which authorizes the provision of Protected Health Information to Bobby Mitchell's undersigned attorneys and their staff.

Again, if you have any further questions, please contact me and not my client. Further attempts by VHS Harlingen Hospital to balance bill Bobby Mitchell will be evaluated with respect to the Texas Deceptive Trade Practices Act. The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation.

Sincerely,


Carrie Stephens for
LEWIS BRISBOIS BISGAARD & SMITH LLP

CS: md
cc:     Bobby Mitchell

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 16

Central Financial Control
BOX 830913 (Use mail address below)
Birmingham, AL 35283-0913

Page: 1 of 2

September 29, 2015

Customer Service 1(800)300-7192
M/T/F 8:00-6:30 W-TH 8:00-8:00 CST

CHANGE SERVICE REQUESTED

**BOBBY L. MITCHELL**

Facility:                    VHS Harlingen Hospital
Account Number:              01991110603
Patient Reference Number:    049154651
Date(s) of Service:          09/13/2013 - 09/25/2013
Hospital Code:               638
Message ID:                  270

#BWNHDKX
#0327870908990048#

BOBBY L. MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2435

Current Balance . . . . . . . . . . . . . . $23,132.59

## SETTLEMENT OFFER

We have been asked by VHS Harlingen Hospital to contact you with regard to the above listed balance still owing on your account. In an effort to close out this account, VHS Harlingen Hospital is willing to accept 50% of the above listed balance, in the amount of $11,566.30 as settlement in full. To accept this offer, your payment must be received in this office within 14 days of the date of this letter. We are not obligated to renew this offer. Upon receipt of the settlement amount and bank clearance, your account will be updated to settled in full. If your account has been credit bureau reported, your credit report will be updated to settled in full. Please note that the amount owed may increase or decrease depending on any amount that is or is not covered by health insurance or other third party coverage for medical services received from VHS Harlingen Hospital; the same medical services that form the basis of this debt.

This has been sent by a debt collector, Central Financial Control. This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.

Any calls may be monitored or recorded for quality assurance.

---

Detach and return bottom portion with payment. Please make checks or money orders payable in U.S. funds to Central Financial Control and include your patient reference number.

September 29, 2015

**BOBBY L. MITCHELL**

Account Number:              01991110603
Patient Reference Number:    049154651

Date(s) of Service           09/13/2013 - 09/25/2013

Phone: Central Financial Control (se habla Español)
    Customer Service 1(800)300-7192
    M/T/F 8:00-6:30 W-TH 8:00-8:00 CST
    Account Specialist is Connie Furr

| CURRENT BALANCE |
| --- |
| $23,132.59 |

REMIT PAYMENT TO:

CENTRAL FINANCIAL CONTROL
PO BOX 66044
ANAHEIM CA 92816-6044

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 17

# LEWIS BRISBOIS BISGAARD & SMITH LLP

ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

ALISON LEE CURRIE
DIRECT DIAL: 404.567.6587
E-MAIL: ALISON.CURRIE@LEWISBRISBOIS.COM

November 2, 2015

## VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Central Financial Control
P.O. Box 66044
Anaheim, CA 92816-6044

|  | RE: | My Client: | **Bobby Mitchell** |
|---|---|---|---|
|  |  | Your Client | **VHS Harlingen Hospital** |
|  |  | Patient Account No.: | **G1325601551** |
|  |  | Date of Service: | **September 13 - 25, 2013** |
|  |  | Alleged Amount: | **$23,132.59** |
|  |  | Plan Name: | **Valley Telephone Cooperative, Inc. Medical Benefit Plan** |

Dear Sir or Madam:

I write this letter to inform you that this firm represents the above-mentioned patient, Bobby Mitchell, in connection with the above matter. From this point forward, and pursuant to 15 U.S.C. § 1692c(a)(2), please direct all communication regarding this matter to Alison Currie and _not_ to Bobby Mitchell. Please cease direct communications with Bobby Mitchell immediately.

We are in receipt of a statement that Central Financial Control sent to Bobby Mitchell. The amount claimed to be due is $23,132.59. We dispute the validity of this debt and/or a portion thereof. Please verify this debt and provide a copy of all verification documents so that we may further assess this claimed amount due. If you have any questions, please contact Alison Currie. Thank you for your assistance in this matter.

Sincerely,

Alison Lee Currie for
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:    Bobby Mitchell

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

Pl. Ex. 18

**GPA**  **GROUP & PENSION ADMINISTRATORS, INC.**

PARK CENTRAL 8 · 12770 MERIT DRIVE 2™ FLOOR, SUITE 200 · DALLAS, TX 75251 · (972) 238-7900

Valley Telephone Cooperative, Inc. Medical Benefit Plan
**Notice of Adverse Benefits Determination**

3/31/2014

To:     Manager, Patient Accounts
        VHS Harlingen Hospital
        PO Box 911573
        Dallas, TX 75391

Re:     Valley Telephone Cooperative, Inc. Medical Benefit Plan (the "Plan")
        Patient: Bobby Mitchell           Patient Account No. - G1405101286
        Date(s) of Service Beginning: 02/24/2014

Dear Manager, Patient Accounts:

This notice is being provided to you as an explanation of the benefit determination for the above-referenced claim, and your rights under the Plan.

The Plan covering the patient is a self-funded welfare benefit plan as defined under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and complies with all federal laws that govern such plans. You submitted a claim for payment in the amount of $2,484.30. For the reasons set forth below, the Plan Administrator has determined that certain charges in the amount of $2,182.70 must be denied in accordance with the terms of the Claim Review and Audit Program provisions of the Plan.

**Specific Plan Provisions**
The Plan provision that is the basis for this claim determination may be found in the Summary Plan Description under the heading, "Claim Review and Audit Program". This provision limits covered expenses under the Plan to those within the "Allowable Claim Limits". "Allowable Claim Limits" means the charges for services and supplies included as covered medical expenses under the Plan which are medically necessary for the care and treatment of illness or injury, but only to the extent that such fees are within the limits and allowances which are listed for certain treatment types, services and supplies.

**Specific Reasons for Denial**
A comprehensive bill review has been performed on this claim. The enclosed audit report lists, in detail, the charges that are being denied due to apparent billing errors or charges which exceed this Plan's Allowable Claim Limits. The Allowable Claim Limits represent the Plan's internal rules, guidelines and protocols relied upon in the determination.

**Your Appeal Rights**
ERISA provides for a Plan participant to appeal a denial of benefits under the Plan, and the participant has been so informed. **In an effort to protect the Plan participant and fairly resolve any dispute of a benefit denial, this Plan also allows for a provider of service to have full appeal rights in addition to those rights afforded by law to a participant.** When you, as the provider of service, exercise your right of appeal under the terms of this Plan, you are agreeing to the terms and conditions through which this right is granted, including your agreement to pursue recovery of certain denied expenses directly from the Plan and waiving any right to recover those certain expenses from the Plan participant.

Notice of Adverse Benefit Determination ERISA
Page 1 of 4

In return for this agreement, you will be accorded the same rights that are accorded by law to a Plan participant. The Plan provision allowing for your appeal, in pertinent part, is explained below.

### Provider of Service Appeal Rights

A covered person may appoint the provider of service as the Authorized Representative with full authority to act on his or her behalf in the appeal of a denied claim. An assignment of benefits by a covered person to a provider of service will not constitute appointment of that provider as an Authorized Representative. However, in an effort to ensure a full and fair review of the denied claim, and as a courtesy to a provider of service that is not an Authorized Representative, the Plan will consider an appeal received from the provider in the same manner as a claimant's appeal, and will respond to the provider and the claimant with the results of the review accordingly. Any such appeal from a provider of service must be made within the time limits and under the conditions for filing an appeal specified under the section, "Appeal Process". **Providers requesting such appeal rights under the Plan must agree to pursue reimbursement for covered medical expenses directly from the Plan, waiving any right to recover such expenses from the claimant, and comply with the conditions of the section, "Requirements for Appeal".**

For purposes of this section, the provider's waiver to pursue covered medical expenses **does not include** the following amounts, which will remain the responsibility of the claimant:

- Deductibles;
- Copayments;
- Coinsurance;
- Penalties for failure to comply with the terms of the Plan;
- Charges for services and supplies which are not included for coverage under the Plan, and
- Amounts which are in excess of any stated Plan maximums or limits.*

**\*Note: This does not apply to amounts found to be in excess of Allowable Claim Limits, as defined in the section, "Claim Review and Audit Program".** The claimant will not be held responsible for any otherwise covered amounts found to be in excess of Allowable Claim Limits.

## Requirements for First Appeal

1. You may appeal this benefit denial to the named fiduciary under the Plan by filing a request for review under the Plan's procedures and as described below.

2. You must file your request for review within 180 days of the date you receive this Notice of Adverse Benefit Determination by submitting a written request for review by hand, or by first-class mail, to:

| Appeals, Claims Department | Or | Appeals Department |
|---|---|---|
| Group & Pension Administrators, Inc. | | ELAP Services, LLC |
| 12270 Merit Drive, Suite 200 | | 961 Pottstown Pike |
| Dallas, TX 75251 | | Chester Springs, PA 19425 |

**Please note:** Letters received by the Plan **must** explicitly state that an appeal is being requested, and must be accompanied by the information and documentation necessary for a full and fair review.

Notice of Adverse Benefit Determination ERISA
Page 2 of 4

3.  You must include a statement in clear and concise terms of the reason or reasons for disagreement with the handling of the claim.

4.  You must include any material or information that you have which indicates that the expenses are covered under the Plan.

5.  In connection with your appeal, you **must** submit written comments, documents, records and other information relating to any denied or partially denied charge included in this benefit denial. Failure to include any theories or facts in the appeal will result in their being deemed waived. In other words, you will lose the right to later raise factual arguments and theories which support this claim if you fail to include them in the appeal.

## Additional Information Necessary to Perfect Your Claim

For any charges excluded in the calculation of Allowable Claim Limits, you will find an Adjustment Code explanation in the audit review report. Following is an explanation of what is required in order for you to perfect the claim for benefits for each Adjustment Code:

1.  Adjustment Code 'H':  Hospital.  Allowable Claim Limits have been determined using the most recent departmental cost/charge ratios as reported to CMS by the provider.  Please submit documentation for any adjustment to the cost/charge ratio.

2.  Adjustment Code 'R':  Reduced to 112% of Redbook's Average Wholesale Price (AWP). Please submit documentation in support of a higher AWP.

3.  Adjustment Code 'I':  Medical and Surgical Supplies, Implants, Devices.  Please submit invoices, receipts, cost lists or other appropriate documentation to evidence the cost to the provider.

4.  Adjustment Code 'P':  90th Percentile of Fee Reference (PFR)  Please submit documentation establishing that the fee for the services does not exceed the 90th percentile for the same services performed by other providers in the geographic area.

5.  Adjustment Code 'M':  Medicare allowed amount.  Please submit documentation that the charges do not exceed the Medicare-allowed amount plus 20%.  clearly identify the service or supply.

6.  Adjustment Code 'A':  Ancillary.  Please submit documentation showing any variance which the Plan should consider as "industry standard".

7.  Adjustment Code 'U':  Unbundled.  Please submit documentation showing that the charges should not be included in a global procedure code and/or are not included in departmental charges.

8.  Adjustment Code 'E':  Error in billing.  Please submit documentation showing that these charges were not billed in error.

9.  Adjustment Code 'Q':  Quantity change.  Please submit documentation to support the quantity of items or services billed which are not supported in the medical records.

10. Adjustment Code 'N':  Not able to identify or understand.  Please submit information which will clearly identify the service or supply.

## Manner and Content of Notification of Benefit Determination on Review

When you file an appeal, as described above, the Plan Administrator will provide a full and fair review of this benefit denial according to the Plan's procedures.

Notice of Adverse Benefit Determination ERISA
Page 3 of 4

The review will take into account all comments, documents, records and other information submitted that directly and specifically relates to the denied or partially denied charges set forth in the spreadsheet review. This would include any applicable physician and nurse notes, logs, chart details, invoices, receipts, cost lists, statements, explanations and any similar information related specifically and directly to each charge denied or partially denied and not submitted previously. The review on appeal will be a "fresh" look at your claim without deference to this initial benefit denial. It will be conducted by a person who was not involved in this initial benefit denial, and who is not a subordinate of the individual involved in this initial benefit denial.

**Time Period for Decision on a Request for Review**
The Plan will notify you of the decision on your request for review within a reasonable time but not later than 30 days after the Plan receives your request for review.

In the event of an adverse decision regarding the first appeal, you have 60 days to file a second appeal of the denial of benefits. You will again be entitled to a "full and fair review" of any denial made at the first appeal, which means you have the same rights during the second appeal as you had during the first appeal. As with the first appeal, the second appeal <u>must</u> be in writing and <u>must</u> include <u>all</u> of the items set forth above in the section entitled "Requirements for First Appeal."

**Furnishing Documents in the Event of an Adverse Determination**
In the case of an adverse benefit determination on review, the Plan Administrator shall provide, on request and free of charge, access to, and copies of, documents, records, and other relevant information described above in the section, "Manner and Content of Notification of Benefit Determination on Review".

**Decision on Appeal to be Final**
If, for any reason, you do not receive a written response to the appeal within the appropriate time period set forth above, you may assume that the appeal has been denied.  The Plan Administrator's decision on review will be final, binding and conclusive and will be afforded the maximum deference permitted by law. **All claim review procedures provided for in the Plan must be exhausted before any legal action is brought. Any legal action for the recovery of any benefits must be commenced within three years after the Plan's claim review procedures have been exhausted.**

When the Plan's appeal procedures have been exhausted, you will have the right to bring a civil action under ERISA §502(a) if your request for coverage or benefits is denied following review.

Please contact the undersigned if you have any questions or require any additional information regarding the Plan provisions applicable to this claim and/or the conditions under which these appeal rights are being granted.

Sincerely,


Claims Department

Enclosures:


Notice of Adverse Benefit Determination ERISA
Page 4 of 4

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 19

06/11/2014   12:08 Valley Family Clinic                    (FAX)1 956 690 4026          P.002/003



**VHS Harlingen Hospital**
BOX 830913 (Use mail address below)
Birmingham, AL 36283-0913

**STATEMENT**                          Page: 1 of 4

May 20, 2014

**BOBBY L MITCHELL**

Patient Reference Number:      61405101286
Hospital Code:
Payment Due Date:              Due Upon Receipt

Date(s) of Service:    02/24/2014 - 02/24/2014
Message ID:                        PFSSTM

Primary Insurance:
MULTIPLAN

CHANGE SERVICE REQUESTED

#BWNHDKX
#3635800001400019#
BOBBY L MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2435

*Thank you for choosing VHS Harlingen Hospital*

### Account Summary

Total Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . .$2,484.30

Adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$372.64

Paid by Insurance . . . . . . . . . . . . . . . . . . . . . . . . .$301.60

Already Paid by Patient . . . . . . . . . . . . . . . . . . . . .$0.00

**Amount you owe now** . . . . . . . . . . . . . . . . . . . . . . . **$1,810.06**

**Page 1**
• Account Summary
• Payment Stub
• Phone Number

**Page 2**
• Important Information
• Payment Options
• How to Reach Us
• Changes to Personal Information

**Page 3**
• Understanding Your Statement
• Statement Details

Detach and return bottom portion with payment. Please make checks or money orders
payable in U.S. funds to VHS Harlingen Hospital and include your patient reference number.

May 20, 2014                                      23350

**BOBBY L MITCHELL**

Patient Reference Number:      61405101286
Payment Due Date:              Due Upon Receipt
Location Code:                 883
Date(s) of Service:    02/24/2014 - 02/24/2014

**Phone: VHS Harlingen Hospital (se habla Español)**
CUSTOMER SERVICE 1(866)589-9912
MON-FRI 7:30A-7:00P SAT 8:00A-5:00P CST

| DUE DATE | AMOUNT YOU OWE |
|---|---|
| Due Upon Receipt | $1,810.06 |

Please check box if address above is incorrect or insurance information
has changed, and indicate change on reverse side.

IF PAYING BY MASTERCARD, DISCOVER, VISA OR AMERICAN EXPRESS, FILL OUT BELOW.

☐ MASTERCARD   ☐ DISCOVER   ☐ VISA   ☐ AMERICAN EXPRESS

CARD NUMBER                          EXP. DATE (mo./yr.)

CARDHOLDER SIGNATURE                 SECURITY CODE (last 3 or 4
                                     on back of card)

CARDHOLDER NAME (please print)       CARDHOLDER PHONE #

AMOUNT AUTHORIZED / ENCLOSED $ _____

**REMIT PAYMENT TO:**

VHS HARLINGEN HOSPITAL
P.O. BOX 910082
DALLAS, TX 75391-0082

06/11/2014   12:08 Valley Family Clinic            (FAX)1 956 690 4026        P.003/003

STATEMENT:  Page: 3 of 4     BOBBY L MITCHELL        Patient Reference Number: G1405101286

Insurance(s)
MULTIPLAN



*Understanding Your Statement...*

A   The services you received during your stay at the Hospital
B   Total dollar amount charged by the Hospital for services delivered
C   Total statement charges on your account
D   The dollar amount reduced due to an insurance contractual adjustment or other discount
E   The amount paid by one or more insurance companies to the Hospital on behalf of the patient
F   The amount already paid to the Hospital by the patient or their guarantor
G   The amount due from the patient as indicated on the provider bill or statement

653943

| Dates of Activity | Item Description / Activity | Charges |
|---|---|---|

| | | |
|---|---|---|
| C  Total Charges | $2,484.30 |
| D  Account Adjustments | $372.64 |
| E  Paid by Insurance | $301.60 |
| F  Paid by Patient | $0.00 |
| G  Remaining Balance | $1,810.06 |

*Thank you for choosing
VHS Harlingen Hospital!*

Amount you owe now  . . . . . . $1,810.06



GROUP & PENSION ADMINISTRATORS, INC
P.O.BOX 749075
DALLAS, TX 75374-9075
PLAN PART (972) 233-7900, 800 24-7223
PROVIDERS (972) 744-2489  866 42-  517
8:00AM - 1:55 PM CST MON-THURF
8:00AM - 2:55 PM CST FRIDAY

Temp-Return Service Requested

004509-008005-000002-008005 2000770 3472CK03_1
BOBBY MITCHELL
394 W Harris Ave
Raymondville, TX 78580-2435

Valley Telephone Co-Op, Inc.

**EXPLANATION OF BENEFITS**

**THIS IS NOT A BILL**

| | |
|---|---|
| Group #: | S860063008510035 |
| Date: | 04/04/2014 |
| Employee: | BOBBY MITCHELL |
| Patient: | BOBBY MITCHELL |
| Document #: | 1406504459 |
| Patient Id: | G1405101286 |
| EOB # | 20140401-5108 |

| Provider/ Nature Of Service | Dates of Service From | To | Charges Submitted | Ineligible | Code | Discount | Copay | Deductible | % Plan Pays | Benefit Payable |
|---|---|---|---|---|---|---|---|---|---|---|
| V=S HARLINGEN HOSPITAL COMPANY | | | | | | | | | | |
| OUT OF CONTRACT | 02/24/14 | 02/24/14 | 453.60 | 453.60 | ** | | | | | |
| OUT OF CONTRACT | 02/24/14 | 02/24/14 | 1308.30 | 1308.30 | ** | | | | | |
| OUT OF CONTRACT | 02/24/14 | 02/24/14 | 722.40 | 420.80 | * | | | | 100% | 301.60 |
| | TOTAL AMOUNTS | | 2484.30 | 2182.70 | | | | | | 301.60 |

The percentage(s)payable or any patient deductible(s) or co-pay(s) has been applied in accordance with the schedule of benefits in the Summary Plan Description.
** **EXPLANATION OF CODE** **

** 882  882-THESE CHARGES EXCEED THE PLAN'S ALLOWABLE CLAIM LIMITS, THEREFORE, THE CHARGES HAVE BEEN DENIED AS STATED IN THE EXCLUSIONS AND LIMITATIONS IN YOUR SUMMARY PLAN DESCRIPTION.  APPEAL RIGHTS UNDER THIS PLAN ALSO APPLY TO PROVIDERS OF SERVICE

**SEE BACK FOR APPEAL PROCESS**

| SUMMARY OF SUBMITTED CHARGES | | | |
|---|---|---|---|
| | | INELIGIBLE CHARGES | 2182.70 |
| | | DEDUCTIBLE | |
| TOTAL SUBMITTED CHARGES | 2484.30 | CO-PAY | |
| TOTAL BENEFITS PAID | 301.60 | PATIENT'S COINSURANCE | |
| TOTAL DISCOUNT | | | |
| OTHER INSURANCE CARRIER PAYMENT | | TOTAL DUE TO PROVIDER | |

**YEAR TO DATE ACCUMULATORS**

THE PATIENT'S 2014 MEDICAL DEDUCTIBLE SATISFIED IS $600.00       THE 2014 FAMILY MEDICAL DEDUCTIBLE SATISFIED IS $725.00

| PAYEE NAME: | AMOUNT: |
|---|---|
| CVHS HARLINGEN HOSPITA | $301.60 |



# Valley Family Clinic

994 East Hidalgo Ave. Raymondville Tx 78580 P 956-690-4012 F 956/690-4026

For: _____ *LLMY* _____

Fax Number : _*888-560-2447*_   Date: *6-11-14*

From: Rachel/Shreena/Angela/Janie/Jennifer

Regarding: _____

Number of pages: __ including cover sheet *3*

Comments: _____
_____
_____

The document accompanying this facsimile transmission contains confidential information belonging to the sender that is legally privileged, and not intended for public use. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this document in error, please notify us by telephone immediately.

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 20

06/30/2014   15:17 Valley Family Clinic                    (FAX)1 956 690 4026           P.002/002


**VHS Harlingen Hospital**
BOX 830913 (Use mail address below)
Birmingham, AL 35283-0913

Page: 1 of 2

June 23, 2014

**CUSTOMER SERVICE 1(855)589-9912**
**MONDAY - FRIDAY 7:00AM TO 6:30PM CST**

**CHANGE SERVICE REQUESTED**

#BWNHDKX
#6163070000350028#
BOBBY L MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2435

**BOBBY L MITCHELL**

| Facility: | VHS Harlingen Hospital |
|---|---|
| Patient Reference Number: | 61405101286 |
| Date(s) of Service: | 02/24/2014 - 02/24/2014 |
| Hospital Code: | |
| Message ID: | 502 |
| Payment Due Date: | Due Upon Receipt |

| Account Summary | |
|---|---|
| Total Charges . . . . . . . . . . . . . . . | $2,484.30 |
| Adjustments . . . . . . . . . . . . . . . | $372.64 |
| Paid by Insurance . . . . . . . . . . . . . . . | $301.60 |
| Already Paid by Patient . . . . . . . . . . . . . . . | $0.00 |
| **Amount Owed** . . . . . . . . . . . . . . . | **$1,810.06** |

## IMPORTANT INFORMATION

Thank you for choosing our facility for your health care needs. We have been attempting to contact you about a remaining balance on your account. If you provided insurance information, it was billed and all efforts to collect from them have been exhausted. If you have additional insurance for this date of service, please call us at the number listed above or return a photocopy of the front and back of your insurance card along with the perforated payment slip in the return envelope. As a courtesy, we will file a claim for you, but please note that insurance companies have filing deadlines which must be met in order for them to pay. If the deadline is missed, the balance is solely your responsibility. We do not file disputes nor do we hold accounts for disputes you may choose to file with your insurance company.

Please return payment in full along with the perforated payment slip below in the return envelope. Payment may be made by personal check, money order or any of the credit/debit cards listed on the payment slip. To have your account credited more quickly, call the number above and give a representative in our business office your account number and credit/debit card information.

If you are unable to pay the balance in full, please call our office at the number listed above to discuss alternate arrangements. Any of our representatives will be able to assist you with payment or other

**Continued on reverse...  ▶ ▶ ▶**

---

Detach and return bottom portion with payment. Please make checks or money orders payable in U.S. funds to VHS Harlingen Hospital and include your patient reference number.

June 23, 2014                                                              33360

**BOBBY L MITCHELL**

| Patient Reference Number: | 61405101286 |
|---|---|
| Payment Due Date: | Due Upon Receipt |
| Location Code: | 885 0 |
| Date(s) of Service: | 02/24/2014 - 02/24/2014 |

Phone: VHS Harlingen Hospital (se habla Español)
CUSTOMER SERVICE 1(855)589-9912
MONDAY - FRIDAY 7:00AM TO 6:30PM CST

| DUE DATE | AMOUNT YOU OWE |
|---|---|
| Due Upon Receipt | **$1,810.06** |

Please check box if address above is incorrect or insurance information has changed, and indicate changes on reverse side

IF PAYING BY MASTERCARD, DISCOVER, VISA OR AMERICAN EXPRESS, FILL OUT BELOW.

☐ MASTERCARD   ☐ DISCOVER   ☐ VISA   ☐ AMERICAN EXPRESS

CARD NUMBER                                    EXP. DATE (e.g. 11/23)

CARDHOLDER SIGNATURE                  SECURITY CODE (required, 3 digits on back of card)

CARDHOLDER NAME (please print)          CARDHOLDER PHONE #

AMOUNT AUTHORIZED / ENCLOSED $ _____

**REMIT PAYMENT TO:**

VHS HARLINGEN HOSPITAL
P.O. BOX 910082
DALLAS, TX 75391-0082



# Valley Family Clinic

994 East Hidalgo Ave. Raymondville Tx 78580 P 956-690-4012 F 956/690-4026

For: _____ *ELAP* _____

Fax Number : _*888-560-2447*_ Date: *6/30/14*

From: Rachel/Shreena/Angela/Janie/Jennifer

Regarding: _____

Number of pages: ___ including cover sheet *2*

Comments: _____
_____
_____

The document accompanying this facsimile transmission contains confidential
information belonging to the sender that is legally privileged, and not intended for public
use. If you are not the intended recipient, you are hereby notified that any disclosure,
copying, distribution, or the taking of any action in reliance on the contents of this
telecopied information is strictly prohibited. If you have received this document in error,
please notify us by telephone immediately.

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

2016-DCL-00459

# Pl. Ex. 21

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

CARRIE STEPHENS
DIRECT DIAL: 404.991.3787
E-MAIL: CARRIE.STEPHENS@LEWISBRISBOIS.COM

June 24, 2014

Bobby Mitchell
394 W Harris Avenue
Raymondville, TX 78580

RE:     Settlement Offer

Dear Bobby Mitchell:

This firm represents you and Valley Telephone Cooperative, Inc. Medical Benefit Plan for claims associated with the reimbursement of medical care provided at VHS Harlingen Hospital. Enclosed please find a settlement offer recently made in an attempt to resolve the dispute over the outstanding balance which VHS Harlingen Hospital claims is owed. If the offer is accepted, the plan will pay the offer amount and the matter will be closed.

Please note this correspondence is simply for your information. **There is no need for any action on your part at this time.** Please feel free to contact us if you have any questions.

Very Truly Yours,

Carrie Stephens of
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:     Valley Telephone Cooperative, Inc. Medical Benefit Plan

4840-1694-5164.1

# LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

CARRIE STEPHENS
DIRECT DIAL: 404.991.3787
E-MAIL: CARRIE.STEPHENS@LEWISBRISBOIS.COM

June 24, 2014

**VIA U.S. MAIL**

Manager, Patient Accounts
VHS Harlingen Hospital
2101 Pease Street
Harlingen, TX 78550

RE:   **Patient:**                **Bobby Mitchell**
      **Patient Account No.:**    **G1405101286**
      **Date of Service:**        **February 24, 2014**
      **Plan Name:**              **Valley Telephone Cooperative, Inc.**
                                  **Medical Benefit Plan**

      **Alleged Amount:**         **$1,810.06**

Dear Sir or Madam:

This firm represents Bobby Mitchell in a dispute arising out of medical bills for services rendered to Bobby Mitchell on February 24, 2014.  In lieu of continuing this dispute over the amount listed above, my client has authorized me to make an offer of settlement and compromise to resolve the above-referenced claim(s) under the following terms:

- VHS Harlingen Hospital will be paid a lump sum payment of **$724.02** within thirty (30) days of receipt of the written acceptance of this offer;

- VHS Harlingen Hospital will accept the above amount as full and final settlement, satisfaction, and compromise of the above-referenced amount, and will write off any and all remaining balances for the above-named patient for the date of service indicated above;

- VHS Harlingen Hospital will make no further attempts to collect any portion of the remaining balance against Bobby Mitchell, Valley Telephone Cooperative, Inc. Medical Benefit Plan, any of the Plan's participants or fiduciaries, and/or any other third-party guarantor of the above-referenced medical bill(s);

4840-1694-5164.1

- VHS Harlingen Hospital will agree not to report this matter to any credit reporting agency, or if already reported, will agree to immediately completely and totally remove any and all adverse credit reports from the patient's credit report.  Reporting the debt as "Amount Paid in Full for Less Than Full Amount," or "Settled in Full" expressly does not satisfy the terms of this settlement agreement, as only total removal will comply with the terms of this agreement;

- VHS Harlingen Hospital will acknowledge receipt of this offer in writing by signature below, and shall return this signed acknowledgment via certified U.S. Mail, return receipt requested and/or fax to the address and/or fax number listed in the letterhead above; and

- By signing on behalf of VHS Harlingen Hospital, the person signing represents and warrants that he/she has the full authority necessary to bind VHS Harlingen Hospital to the terms of this offer as set forth herein.

Based on the terms of the offer extended herein, and if you choose to accept the offer, this will be resolved within thirty (30) days of this firm's receipt of this signed agreement.  If you choose not to accept the offer, we will vigorously defend any future attempts by VHS Harlingen Hospital and/or its agents to collect any amounts on the above-referenced bill.

The entire contents of this letter represent an offer of compromise and settlement and shall not be used against any of the above-named parties in any legal action.

Thank you for your prompt attention to this matter.  My client looks forward to your response.

Sincerely,

Carrie Stephens of
LEWIS BRISBOIS BISGAARD & SMITH LLP

CS:    md
cc:    Bobby Mitchell

4840-1694-5164.1

By my signature below, I hereby accept the above offer related to Bobby Mitchell on behalf of VHS Harlingen Hospital on the terms listed above. I hereby represent and warrant that I have the full authority necessary to bind VHS Harlingen Hospital to the terms of this offer as set forth herein.

This _____ day of _____, 2014.


_____
(Signature of VHS Harlingen Hospital representative)


_____
(Print name of person signing above)


**Payment Information**
(To be completed by person signing above)

| Payee on check | |
|---|---|
| Remittance Address | |

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 22

AUG-26-2014 00:15 From:direct.....           To:18385602447         Page:3/7

**VHS Harlingen Hospital**
BOX 830913 (Use mail address below)
Birmingham, AL 35283-0913

Page: 1 of 2

July 14, 2014

CUSTOMER SERVICE 1(855)589-9912
MONDAY - FRIDAY 7:00AM TO 6:30PM CST

CHANGE SERVICE REQUESTED

#BWNHDKX
#2068500001380033#
BOBBY L MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2435

**BOBBY L MITCHELL**
Facility:                      VHS Harlingen Hospital

Patient Reference Number:         G1405101286
Date(s) of Service:          02/24/2014 - 02/24/2014
Hospital Code:
Message ID:                              EH2
Payment Due Date:              Due Upon Receipt

| Account Summary | |
|---|---|
| Total Charges . . . . . . . . . . . . . . . . | $2,484.30 |
| Adjustments . . . . . . . . . . . . . . . . . | $372.64 |
| Paid by Insurance . . . . . . . . . . . . . . | $301.60 |
| Already Paid by Patient . . . . . . . . . . . | $0.00 |
| **Amount Owed** . . . . . . . . . . . . . . . | **$1,810.06** |

## IMPORTANT INFORMATION

We have not received a response to our previous statement asking for payment. At the time services were rendered, you became responsible for all costs associated with your treatment. Please return payment in full along with the perforated payment slip below in the provided return envelope. Payment may be in the form of a personal check, money order or any of the credit/debit cards listed on the payment slip. To have your account credited more quickly, call the number listed above and give a representative in our business office your account number and credit/debit card information.

If you are unable to pay the balance in full, please call our office at the number listed above to discuss alternate arrangements for payment. Any of our representatives will be able to assist you with payment or other account questions.

If payment has already been made, please disregard this notice.

We look forward to hearing from you or receiving your payment. Thank you for your prompt attention to this matter.

---

Detach and return bottom portion with payment. Please make checks or money orders payable in U.S. funds to VHS Harlingen Hospital and include your patient reference number

July 14, 2014

**BOBBY L MITCHELL**

Patient Reference Number:         G1405101286
Payment Due Date:            Due Upon Receipt
Location Code:                         883 0
Date(s) of Service:        02/24/2014 - 02/24/2014

Phone: VHS Harlingen Hospital (se habla Español)
CUSTOMER SERVICE 1(855)589-9912
MONDAY - FRIDAY 7 00AM TO 6:30PM CST

| DUE DATE | AMOUNT YOU OWE |
|---|---|
| Due Upon Receipt | $1,810.06 |

Please check box if address above is incorrect or insurance information has changed, and indicate changes on reverse side.

IF PAYING BY MASTERCARD, DISCOVER, VISA OR AMERICAN EXPRESS, FILL OUT BELOW.

☐ MASTERCARD   ☐ DISCOVER   ☐ VISA   ☐ AMERICAN EXPRESS

CARD NUMBER                                          EXP DATE  e.g. 11/99

CARDHOLDER SIGNATURE                          SECURITY CODE  your card

CARDHOLDER NAME (PLEASE PRINT)                  CARDHOLDER PHONE

AMOUNT AUTHORIZED / ENCLOSED $ _____

**REMIT PAYMENT TO:**

VHS HARLINGEN HOSPITAL
P O.BOX 910082
DALLAS, TX 75391-0082

G1405101286000181006833

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 23

SEP-05-2014 04:39 From:standard Health Systems                     To:18885602447                     Page:2/3

**VHS Harlingen Hospital**
BOX 8309-3 (Use mail address below)
Birmingham AL 35283-0913

Page: 1 of 2

August 22, 2014

CUSTOMER SERVICE 1(855)589-9912
MON-FRI 7:30A-7:00P, SAT 8:00A-5:00P CST

CHANGE SERVICE REQUESTED

#BWNHDKX
#3503300001060045#

BOBBY L MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2435

**BOBBY L MITCHELL**
Facility:                     VHS Harlingen Hospital

Patient Reference Number:           G1405101286
Date(s) of Service:        02/24/2014 - 02/24/2014
Hospital Code:
Message ID:                              F02
Payment Due Date:                  09/01/2014

| Account Summary | |
|---|---|
| Total Charges . . . . . . . . . . . . . . . . . | $2,484.30 |
| Adjustments . . . . . . . . . . . . . . . . . | $372.64 |
| Paid by Insurance . . . . . . . . . . . . . . | $301.60 |
| Already Paid by Patient . . . . . . . . . . . . | $0.00 |
| **Amount Owed** . . . . . . . . . . . . . . . | **$1,810.06** |

## IMPORTANT INFORMATION

Despite our previous attempts to contact you there remains an unpaid balance on your account. At the time services were rendered, you became responsible for all costs associated with your treatment. Please return payment in full along with the perforated payment slip below in the provided return envelope. Payment of the amount owed may be in the form of a personal check, money order or any of the credit/debit cards listed on the payment slip. To have your account credited more quickly, call the number listed above and give a representative in our business office your account number and credit/debit card information.

If you are unable to pay the balance in full, please call our office at the number listed above to discuss alternate arrangements for payment. Any of our representatives will be able to assist you with payment or other account questions. Hesitating to resolve this debt may result in your account being referred to a collection agency.

If payment has already been made, please disregard this notice.

We look forward to hearing from you or receiving your payment within 10 days from the date of this letter.

Continued on reverse... ► ► ►

---

Detach and return bottom portion with payment. Please make checks or money orders payable in U.S. funds to VHS Harlingen Hospital and include your patient reference number

August 22, 2014                                                                33384

**BOBBY L MITCHELL**

Patient Reference Number:        G1405101286
Payment Due Date:                     09/01/2014
Location Code:                               883 0
Date(s) of Service:        02/24/2014 - 02/24/2014

Phone: VHS Harlingen Hospital (se habla Español)
CUSTOMER SERVICE 1(855)589-9912
MON-FRI 7:30A-7:00P, SAT 8:00A-5:00P CST

| DUE DATE | AMOUNT YOU OWE |
|---|---|
| 09/01/2014 | $1,810.06 |

☐ Please check box if address above is incorrect or insurance information has changed, and indicate change(s) on reverse side

IF PAYING BY MASTERCARD, DISCOVER, VISA OR AMERICAN EXPRESS, FILL OUT BELOW

☐ MASTERCARD   ☐ DISCOVER   ☐ VISA   ☐ AMERICAN EXPRESS

CARD NUMBER                                          EXP DATE (MO, YR OR)

CARDHOLDER SIGNATURE                        SECURITY CODE (required on back only)

CARDHOLDER NAME (please print)              CARDHOLDER PHONE #

AMOUNT AUTHORIZED / ENCLOSED $ _____

**REMIT PAYMENT TO:**

VHS HARLINGEN HOSPITAL
P.O. BOX 910082
DALLAS, TX 75391-0082

G1405101286000181006883

From: Bobby
Mitchell


Fax # 1-888-560-2447

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 24

# LEWIS
## BRISBOIS
## BISGAARD
## & SMITH LLP
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

LINDSAY FORLINES
DIRECT DIAL: 404.991.2163
E-MAIL: LINDSAY.FORLINES@LEWISBRISBOIS.COM

September 15, 2014

Manager, Patient Accounts
VHS Harlingen Hospital
PO Box 2588
Harlingen, TX 78551

|   | RE: | Patient: | **Bobby Mitchell** |
|---|---|---|---|
|   |   | **Patient Account No.:** | **G1405101286** |
|   |   | **Date of Service:** | **February 24, 2014** |
|   |   | **Plan Name:** | **Valley Telephone Cooperative, Inc.** |
|   |   |   | **Medical Benefit Plan** |
|   |   | **Alleged Amount:** | **$1,810.06** |

Dear Sir or Madam:

I write this letter to remind you that this firm represents the above-mentioned patient, Bobby Mitchell, in connection with the above matter.   From this point forward, please direct all communications regarding this matter to Lindsay Forlines and *not* to Bobby Mitchell.  Please cease direct communications with Bobby Mitchell immediately.

I write this letter in response to a statement dated August 22, 2014 that VHS Harlingen Hospital sent directly to my client.  The statement reflects an alleged amount due of $1,810.06.  My client denies owing the amount alleged due to VHS Harlingen Hospital.  Bobby Mitchell stands by the audit of the medical treatment you previously received in connection with the above-referenced date of service.

September 15, 2014
Page 2


If you have any further questions, please contact Lindsay Forlines.  The entire contents of this letter constitute settlement negotiations, and nothing herein shall be used against my client should this case proceed to litigation.


Sincerely,



Lindsay Forlines for
LEWIS BRISBOIS BISGAARD & SMITH LLP


cc:    Bobby Mitchell

/EGB

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 25

Central Financial Control
BOX 8300 * (Use mail address below)
Birmingham, AL 35283-0913

Page 1 of 2

April 17, 2015



Customer Service 1(800)300-7192
M-TH 8:00-6:30 W-TH 8:00-8:00 CST

CHANGE SERVICE REQUESTED

#BWNHDKX
#12335100082400025A
BOBBY L MITCHELL
394 W HARRIS AVE
RAYMONDVILLE, TX 78580-2435

BOBBY L. MITCHELL

Facility                      VHS Harlingen Hospital
Account Number                0193605110G
Patient Reference Number      04524079E
Date(s) of Service     02/24/2014 - 02/24/2014
Hospital Code                 538
Message ID                    12
Payment Due Date              Due Upon Receipt

Account Summary
Amount Owed ............................. $1,810.06

## IMPORTANT INFORMATION

### CREDIT REPORTING NOTICE

The above amount owed has been placed with us for collection and must be paid.  Your payment may be mailed in the enclosed envelope.

You are hereby notified that thirty days after the date of this letter a credit report reflecting your record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. To avoid having this debt reported and appearing on your credit report, you need to contact us as soon as possible to make arrangement for payment of this debt.

Please note that the amount owed shown above may increase or decrease depending upon any amounts that are - or are not - covered by health insurance or other third party coverage that was available at the time that the medical services that form the basis of this debt were rendered. You may call us at 1-800-300-7192.

This has been sent by a debt collector, Central Financial Control.  This is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose.

---

Detach and return bottom portion with payment. Please make checks or money orders payable in U.S. funds to VHS Harlingen Hospital and include your patient reference number.

April 17, 2016

BOBBY L. MITCHELL

Account Number            0193605110G
Patient Reference Number  04524079E
Payment Due Date          Due Upon Receipt

Date(s) of Service     02/24/2014 - 02/24/2014

Phone: Central Financial Control (se habla Español)
    Customer Service 1-800-300-7192
    M-TH 8:00-6:30 W-TH 8:00-8:00 CST
    Account Specialists Contact Fund

AMOUNT YOU OWE
Due Upon Receipt          $1,810.06

REMIT PAYMENT TO:

CENTRAL FINANCIAL CONTROL
PO BOX 60044
ANAHEIM, CA 92816-6044



GROUP & PENSION ADMINISTRATORS  INC
P.O. BOX 749075
DALLAS  TX  75374-9075
PLAN PART  972 235-7000  800 827-7223
REGUIRERS 972  744-2489  800  376-4124
8:00AM 4:00PM IST MON - FRIDAY
8:00AM 4:00 PM IST  FRIDAY

Temp-Return Service Requested

　004509-C08005-000002-C08005 2002770 3472CK02_1
BOBBY MITCHELL
394 W Harris Ave
Raymondville, TX  78580-2435

Valley Telephone Co-Op, Inc.

### EXPLANATION OF BENEFITS

#### THIS IS NOT A BILL

| | |
|---|---|
| Group # | S860063C08510035 |
| Date | 04/04/2014 |
| Employee | BOBBY MITCHELL |
| Patient | BOBBY MITCHELL |
| Document # | 1406504459 |
| Patient Id | G1406101286 |
| EOB # | 20140401-5108 |

| Provider/ Nature Of Service S HARLINGEN OSPITAL COMPANY | Dates of Service From    To | Charges Submitted | Ineligible | Code ** | Discount | Copay | Deductible | % Plan Pays | Benefit Payable |
|---|---|---|---|---|---|---|---|---|---|
| T OF CONTRACT | 02/24/14 02/24/14 | 453.60 | 453.60 | 1 | | | | | |
| T OF CONTRACT | 02/24/14 02/24/14 | 1308.30 | 1308.30 | 1 | | | | | |
| T OF CONTRACT | 02/24/14 02/24/14 | 722.40 | 420.80 | 1 | | | | 100% | 301.6 |
| | TOTAL AMOUNTS | 2484.30 | 2182.70 | | | | | | 301.6 |

The percentage(s)payable or any patient deductible(s) or co-pay(s) has been applied in accordance with the schedule of benefits in the Summary Plan Description.
** EXPLANATION OF CODE **

1 -  582 - 582 - THESE CHARGES EXCEED THE PLAN'S ALLOWABLE CLAIM LIMITS. THEREFORE, THE CHARGES HAVE BEEN DENIED AS STATED IN THE EXCLUSIONS
AND LIMITATIONS IN YOUR SUMMARY PLAN DESCRIPTION.  APPEAL RIGHTS UNDER THIS PLAN ALSO APPLY TO PROVIDERS OF SERVICE.

SEE BACK FOR APPEAL PROCESS

| SUMMARY OF SUBMITTED CHARGES | | | |
|---|---|---|---|
| | | INELIGIBLE CHARGES | 2182.70 |
| | | DEDUCTIBLE | |
| OTAL SUBMITTED CHARGES | 2484.30 | CO-PAY | |
| OTAL BENEFITS PAID | 301.60 | PATIENT'S COINSURANCE | |
| OTAL DISCOUNT | | | |
| THER INSURANCE CARRIER PAYMENT | | TOTAL DUE TO PROVIDER | 0.00 |

YEAR TO DATE ACCUMULATORS

E PATIENT'S 2014 MEDICAL DEDUCTIBLE SATISFIED IS $500.00         THE 2014 FAMILY MEDICAL DEDUCTIBLE SATISFIED IS $725.00

YEE NAME:                          AMOUNT:
HS HARLINGEN HOSPITA                $301.60

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 26

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lewisbrisbois.com

LINDSAY FORLINES
DIRECT DIAL:404.991.2163
E-MAIL: LINDSAY.FORLINES@LEWISBRISBOIS.COM

June 12, 2015

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Central Financial Control
PO Box 66044
Anaheim, CA 92816

| | | |
|---|---|---|
| RE: | My Client: | **Bobby Mitchell** |
| | Your Client: | **VHS Harlingen Hospital** |
| | Patient Account No.: | **01936051100** |
| | Date of Service: | **February 24, 2014** |
| | Alleged Amount: | **$1,810.06** |
| | Plan Name: | **Valley Telephone Cooperative, Inc. Medical Benefit Plan** |

Dear Sir or Madam:

I write this letter to inform you that this firm represents the above-mentioned patient, Bobby Mitchell, in connection with the above matter. From this point forward, and pursuant to 15 U.S.C. § 1692c(a)(2), please direct all communication regarding this matter to Lindsay Forlines and _not_ to Bobby Mitchell. Please cease direct communications with Bobby Mitchell immediately.

We are in receipt of a statement dated April 17, 2015 that Central Financial Control sent to Bobby Mitchell. The amount claimed to be due is $1,810.06. We dispute the validity of this debt and/or a portion thereof. Please verify this debt and provide a copy of all verification documents so that we may further assess this claimed amount due. If you have any questions, please contact Lindsay Forlines. Thank you for your assistance in this matter.

Sincerely,

Lindsay Forlines for
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:     Bobby Mitchell

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

2016-DCL-00459

# Pl. Ex. 27



## Central Financial Control

P.O. Box 660873
Dallas, TX 75266-0873

(888)233-7880 Phone
(714)937-3427 Fax

RECEIVED
JUL 21 2015

July 17, 2015

Lewis, Brisbois, Bisgaard &Smith LLP
Attorneys at Law
Attn: Lindsay Forlines
1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309

CFC Account:           **1936051100**
Re:                    **Bobby Mitchell**

Dear Ms. Forlines:

Our office is in receipt of your correspondence dated June, 12, 2015, regarding your client, Bobby Mitchell. The aforementioned account results from services rendered by our client. Your client received a copy of the Conditions of Services at the time of service, which outlines her financial responsibilities for services rendered by our client.

The outstanding balance of this account is $1,810.06.

As per your request, we will cease all telephonic communication with your client regarding this account with our client.

Due to the mandates of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), we are requesting that your client sign and complete the enclosed HIPAA Authorization form which authorizes our office to release or communicate any further information to or with your office.

Upon receipt of this completed authorization, we will respond accordingly.

Sincerely,

Amy Nielsen
Inquiry Resolution Specialist

Enclosure: HIPAA Authorization Form

This is an attempt to collect a debt by a debt collector; any information obtained will be used for that purpose

Any call may be monitored or recorded for quality assurance.

## HIPAA AUTHORIZATION FORM

*Disclaimer: This document is provided solely for reference purposes. Covered Entities under HIPAA are advised to refer to their Institution's Privacy Policy for specific requirements for the HIPAA Authorization.*

I, _____, give permission to <u>Central Financial Control</u> to:

◻ use the following protected health information. and/or
◻ disclose the following protected health information to:

_____

_____

_____

[Name's) of entity to receive information]

Information to be disclosed (check all that apply):
◻ Medical Records
◻ Treatment Records
◻ Diagnostic Records
◻ Other: _____

_____

This protected health information is being used or disclosed for the following purposes:

_____

_____

This authorization expires:_____(specify (1) date or {2} event that relates to the purpose of this use or disclosure).

If the person or entity receiving this information is not a health care provider or health plan covered by federal privacy regulations, the information described above may be disclosed to other individuals or institutions and no longer protected by these regulations.

You may refuse to sign this authorization. Your refusal to sign will not affect your ability to obtain treatment or payment or your eligibility for benefits.

You may inspect or copy the protected health information to be used or disclosed under this authorization. For protected health information created as part of a clinical trial, your right to access is suspended until the clinical trial is completed.

Finally, you may revoke this authorization in writing at any time by sending written notification to this office at P.O. Box 660873, Dallas, TX 75266-0873. Your notice will not apply to actions taken by the requesting person/entity prior to the date they receive your written request to revoke authorization.

_____

Signature of Participant or Personal Representative

_____

Date

_____

Printed Name of Participant or Personal Representative

_____

Description of Personal Representative's Authority

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

LINDSAY FORLINES                                   September 16, 2015
DIRECT DIAL: 404.991.2163
E-MAIL: LINDSAY.FORLINES@LEWISBRISBOIS.COM

Bobby Mitchell
394 W. Harris Avenue
Raymondville, TX 78580

        RE:     Settlement Offer

Dear Bobby Mitchell:

        This firm represents you and Valley Telephone Cooperative, Inc. Medical Benefit Plan
for claims associated with the reimbursement of medical care provided at VHS Harlingen
Hospital. Enclosed please find a settlement offer recently made in an attempt to resolve the
dispute over the outstanding balance which VHS Harlingen Hospital claims is owed. If the offer
is accepted, the plan will pay the offer amount and the matter will be closed.

        Please note this correspondence is simply for your information. **There is no need for
any action on your part at this time.** Please feel free to contact us if you have any questions.

                        Very Truly Yours,



                        Lindsay Forlines of
                        LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:     Valley Telephone Cooperative, Inc. Medical Benefit Plan

4840-1694-5164.1

# LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

1180 Peachtree Street NE, Suite 2900
Atlanta, GA  30309
Telephone: 404.348.8585
Fax: 404.467.8845
www.lbbslaw.com

LINDSAY FORLINES
DIRECT DIAL: 404.991.2163
E-MAIL: LINDSAY.FORLINES@LEWISBRISBOIS.COM

September 16, 2015

**VIA U.S. MAIL**

Central Financial Control
PO Box 66044
Anaheim, CA 92816

|  | | |
|---|---|---|
| **RE:** | **Patient:** | **Bobby Mitchell** |
|  | **Patient Account No.:** | **01936051100** |
|  | **Date of Service:** | **Febuary 24, 2014** |
|  | **Plan Name:** | **Valley Telephone Cooperative, Inc. Medical Benefit Plan** |
|  | **Alleged Amount:** | **$1,810.06** |

Dear Sir or Madam:

I write this letter to inform you that this firm represents the above-mentioned patient, Bobby Mitchell, in connection with the above matter.  From this point forward, please direct all communication regarding this matter to Lindsay Forlines and *not* to Bobby Mitchell.  Please cease direct communications with Bobby Mitchell immediately.

We are in receipt of a statement recently sent regarding Bobby Mitchell.  The amount claimed to be due is $1,810.06.  We dispute the validity of this debt and/or a portion thereof. Please verify this debt and provide a copy of all verification documents so that we may further assess this claimed amount due.

While we continue to dispute the validity of this debt and/or a portion thereof, in lieu of prolonging this dispute, my client has authorized me to make an offer of settlement and compromise to resolve the above-referenced claim(s) under the following terms:

- VHS Harlingen Hospital will be paid a lump sum payment of $725.00 within thirty (30) days of receipt of the written acceptance of this offer;

- VHS Harlingen Hospital will accept the above amount as full and final settlement, satisfaction, and compromise of the above-referenced amount, and will write off any and

4840-1694-5164.1

all remaining balances for the above-named patient for the date of service indicated above;

- VHS Harlingen Hospital will make no further attempts to collect any portion of the remaining balance against Bobby Mitchell, Valley Telephone Cooperative, Inc. Medical Benefit Plan, any of the Plan's participants or fiduciaries, and/or any other third-party guarantor of the above-referenced medical bill(s);

- VHS Harlingen Hospital will agree not to report this matter to any credit reporting agency, or if already reported, will agree to immediately completely and totally remove any and all adverse credit reports from the patient's credit report.  Reporting the debt as "Amount Paid in Full for Less Than Full Amount," or "Settled in Full" expressly does not satisfy the terms of this settlement agreement, as only total removal will comply with the terms of this agreement;

- VHS Harlingen Hospital will acknowledge receipt of this offer in writing by signature below, and shall return this signed acknowledgment via certified U.S. Mail, return receipt requested and/or fax to the address and/or fax number listed in the letterhead above; and

- By signing on behalf of VHS Harlingen Hospital, the person signing represents and warrants that he/she has the full authority necessary to bind VHS Harlingen Hospital to the terms of this offer as set forth herein.

Based on the terms of the offer extended herein, and if you choose to accept the offer, this will be resolved within thirty (30) days of this firm's receipt of this signed agreement.  If you choose not to accept the offer, we will vigorously defend any future attempts by VHS Harlingen Hospital and/or its agents to collect any amounts on the above-referenced bill.

The entire contents of this letter represent an offer of compromise and settlement and shall not be used against any of the above-named parties in any legal action.

Thank you for your prompt attention to this matter.  My client looks forward to your response.

Sincerely,

Lindsay Forlines of
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:    Bobby Mitchell

4840-1694-5164.1

By my signature below, I hereby accept the above offer related to Bobby Mitchell on behalf of VHS Harlingen Hospital on the terms listed above.  I hereby represent and warrant that I have the full authority necessary to bind VHS Harlingen Hospital to the terms of this offer as set forth herein.

This _____ day of _____, 2015.


_____
(Signature of VHS Harlingen Hospital representative)


_____
(Print name of person signing above)


**Payment Information**
(To be completed by person signing above)

| Payee on check | |
|---|---|
| Remittance Address | |

2016-DCL-00459

FILED
2016-DCL-00459
1/19/2016 1:33:37 PM
Eric Garza
Cameron County District Clerk
By Cindy Medrano Deputy Clerk
8674670

# Pl. Ex. 29



**Central Financial Control**

P.O. Box 660873
Dallas, TX 75266-0873

(888)233-7880 Phone
(714)937-3427 Fax

RECEIVED

OCT 06 2015

September 30, 2015

Lewis, Brisbois, Bisgaard & Smith LLP
Attorneys at Law
Attn: Lindsay Forlines
1180 Peachtree Street NE, Suite 2900
Atlanta, GA 30309

CFC Account:     **1936051100**
Re:              **Bobby Mitchell**

Dear Ms. Forlines:

Our office is in receipt of your correspondence dated June, 12, 2015 and September 16, 2015, regarding your client, Bobby Mitchell. The aforementioned account results from services rendered by our client. Your client received a copy of the Conditions of Services at the time of service, which outlines her financial responsibilities for services rendered by our client.

The outstanding balance of this account is $1,810.06.

Per your requests, we will cease all telephonic communication with your client regarding this account with our client.

As per our initial response, mailed to you on July 17, 2015, due to the mandates of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), we are requesting that your client sign and complete the enclosed HIPAA Authorization form which authorizes our office to release or communicate any further information to or with your office.

Upon receipt of this completed authorization, we will respond accordingly.

Sincerely,

Amy Nielsen
Inquiry Resolution Specialist

Enclosure: HIPAA Authorization Form

This is an attempt to collect a debt by a debt collector; any information obtained will be used for that purpose.

Any call may be monitored or recorded for quality assurance.

## HIPAA AUTHORIZATION FORM

*Disclaimer: This document is provided solely for reference purposes. Covered Entities under HIPAA are advised to refer to their Institution's Privacy Policy for specific requirements for the HIPAA Authorization.*

I, _____, give permission to <u>Central Financial Control</u> to:

□ use the following protected health information. and/or
□ disclose the following protected health information to:

_____

_____

_____
[Name's) of entity to receive information]

Information to be disclosed (check all that apply):
□ Medical Records
□ Treatment Records
□ Diagnostic Records
□ Other:  _____

This protected health information is being used or disclosed for the following purposes:

_____

_____

This authorization expires:_____(specify (1) date or (2) event that relates to the purpose of this use or disclosure).

If the person or entity receiving this information is not a health care provider or health plan covered by federal privacy regulations, the information described above may be disclosed to other individuals or institutions and no longer protected by these regulations.

You may refuse to sign this authorization. Your refusal to sign will not affect your ability to obtain treatment or payment or your eligibility for benefits.

You may inspect or copy the protected health information to be used or disclosed under this authorization. For protected health information created as part of a clinical trial, your right to access is suspended until the clinical trial is completed.

Finally, you may revoke this authorization in writing at any time by sending written notification to this office at P.O. Box 660873, Dallas, TX 75266-0873. Your notice will not apply to actions taken by the requesting person/entity prior to the date they receive your written request to revoke authorization.

_____
Signature of Participant or Personal Representative

_____
Date

_____
Printed Name of Participant or Personal Representative

_____
Description of Personal Representative's Authority

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

Pl. Ex. 30

# UNITED STATES OF AMERICA
## CONSUMER FINANCIAL PROTECTION BUREAU

ADMINISTRATIVE PROCEEDING

File No. 2015-CFPB-0012

---

In the Matter of:

**Syndicated Office Systems, LLC,
d/b/a Central Financial Control**

---

**CONSENT ORDER**

## I
## Overview

The Consumer Financial Protection Bureau (Bureau) has reviewed the practices by which Syndicated Office Systems, LLC, d/b/a Central Financial Control (Respondent, as defined below), collects medical debt and furnishes information relating to consumers to consumer reporting agencies. The Bureau has identified the following law violations: (1) Respondent failed to respond within 30 days to consumer disputes about the information Respondent furnished to consumer reporting agencies, in violation of Section 623(a)(8) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(a)(8), and Subpart E of Regulation V, 12 C.F.R. § 1022.43, the implementing regulation of the FCRA; and (2) in certain instances, Respondent failed to provide consumers with a "debt validation notice" within five days of its initial communication with the consumer in connection with the collection of a debt, in violation of Section 809(a) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g(a). Under Sections 1053 and 1055 of the Consumer Financial

Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5563, 5565, the Bureau issues this Consent Order ("Consent Order").

## II
## Jurisdiction

1.  The Bureau has jurisdiction over this matter under: (a) Sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563, 5565; (b) Section 621 of the FCRA, 15 U.S.C. § 1681s(b)(1); and (3) Section 814 of the FDCPA, 15 U.S.C. § 1692l(b)(6).

## III
## Stipulation

2.  Respondent has executed a "Stipulation and Consent to the Issuance of a Consent Order," dated June 15, 2015 (Stipulation), which is incorporated by reference and is accepted by the Bureau. By this Stipulation, Respondent has consented to the issuance of this Consent Order by the Bureau under Sections 1053 and 1055 of the CFPA, 12 U.S.C. §§ 5563 and 5565. Respondent neither admits nor denies the findings of fact or conclusions of law in this Consent Order, except that Respondent admits the facts necessary to establish the Bureau's jurisdiction over Respondent and the subject matter of this action.

## IV
## Definitions

3.  The following definitions apply to this Consent Order:

    a.  "Affected Consumers" means all consumers who were the recipients or guarantors for the recipients of medical service(s), had a balance due for the service(s), including the estate or beneficiaries of any consumer who is now deceased, and for whom, during the Relevant Period, Respondent: (1) failed to respond to the consumer's Direct Dispute within 30 days; or (2) failed to send a

2

Debt Validation Notice to the consumer within five days of its initial communication with the consumer in connection with the collection of a medical debt.

b. "Bureau" means Consumer Financial Protection Bureau.

c. "Consumer Reporting Agencies" or "CRAs" means a "consumer reporting agency," as that term is defined in Section 603(f) of the FCRA, 15 U.S.C. § 1681a(f).

d. "Debt Validation Notice" means the written notice referenced in Section 809 of the FDCPA, 15 U.S.C. § 1692g(a).

e. "Direct Dispute" means a dispute that is submitted by a consumer directly to a Furnisher concerning information relating to the consumer that the Furnisher has furnished to a CRA, and that is subject to Section 623(a)(8) of the FCRA, 15 U.S.C. § 1681s-2(a)(8), and 12 C.F.R. § 1022.43.

f. "Effective Date" means the date on which the Consent Order is issued.

g. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau or his/her delegee.

h. "Furnisher" means an entity that furnishes information relating to consumers to one or more CRAs for inclusion in a consumer report, as defined in 12 C.F.R. § 1022.41(c).

i. "Furnisher Rule" refers to Regulation V, Subpart E, 12 C.F.R. §§ 1022.40-43.

j. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Respondent based on substantially the same facts as described in Section V of this Consent Order.

3

k. "Relevant Period" includes the period beginning on January 1, 2011 to the Effective Date.

l. "Respondent" means Syndicated Office Systems, LLC, d/b/a Central Financial Control, and its successors and assigns.

## V

### Bureau Findings and Conclusions

The Bureau finds the following:

4. Respondent is a third party debt collector with offices in California and Texas that specializes in the collection of medical debt. Respondent is an indirect subsidiary of Conifer Health Solutions, LLC.

5. Respondent is a "covered person" as that term is defined by 12 U.S.C. § 5481(6).

6. Respondent is a "debt collector," as that term is defined by the FDCPA, because it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" and because it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

7. Respondent is a "furnisher" as that term is defined in the Furnisher Rule, because it "furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c).

### Findings and Conclusions as to Violation of FCRA and Furnisher Rule

8. Since at least January 2011, Respondent has furnished information, including information about consumers' delinquent medical debt, to the CRAs on a regular basis for inclusion in consumer reports.

4

9.     From at least January 2011 through October 2013, Respondent routed all Direct Disputes to an internal department for investigation pursuant to Respondent's general policies and procedures.

10.    Respondent had no policies and procedures specifically tailored to the handling or tracking of Direct Disputes. Instead, Respondent reviewed and responded to Direct Disputes in the order in which they were received.

11.    Because Respondent's policies and procedures set no deadline for responding to Direct Disputes, in most instances Respondent did not respond to Direct Disputes within the 30-day timeframe required by the FCRA.

12.    On average, Respondent took more than 90 days to respond to Direct Disputes and, in some cases, Respondent took more than a year to respond to Direct Disputes.

13.    In total, during the Relevant Period, Respondent failed to investigate and respond within 30 days to 13,713 Direct Disputes.

14.    Respondent's failure to timely respond to Direct Disputes may have harmed consumers. Among other things, consumers may have expended time and money to follow up on unresolved Direct Disputes or experienced emotional distress due to Respondent's delayed response to their Direct Disputes. In addition, for approximately two percent of the Direct Disputes that consumers submitted for which Respondent did not provide a timely response, the dispute would have resulted in a change to the consumer's consumer reports.

15.    FCRA Section 623(a)(8) and the Furnisher Rule require that Furnishers, like Respondent, respond to Direct Disputes within 30 days of receiving notice of the

5

dispute. 15 U.S.C. §§ 1681s-2(a)(8)(E)(i)-(iv) and 1681i(a)(1)(A); 12 C.F.R. § 1022.43(e)(1)-(4).

16. As a result, the acts or practices described in paragraphs 8 – 15 constitute a violation of Sections 623(a)(8)(E) of the FCRA, 15 U.S.C. § 1681s-2(a)(8)(E), and the Furnisher Rule, 12 C.F.R. § 1022.43(e).

## Findings and Conclusions as to Violation of the FDCPA

17. Respondent collects or attempts to collect consumer medical debts that are owed to third parties.

18. As part of these collection efforts, Respondent initiates communications with consumers, typically through letters and telephone calls.

19. Generally, Respondent mails consumers a Debt Validation Notice before its initial communication with the consumer in connection with the collection of a debt.

20. However, on 4,172 accounts where the consumer was represented by counsel, Respondent did not send the consumer a Debt Validation Notice within five days of its initial communication with the consumer in connection with the collection of the debt.

21. In addition, on 6,686 accounts, Respondent failed to send the consumer a Debt Validation Notice because of scenario gaps in Respondent's computer system logic or due to human error.

22. In total, from January 1, 2011 to the Effective Date, Respondent did not send the Debt Validation Notice within five days of its initial communication with the consumer in connection with the collection of a debt for 10,858 accounts, and collected $2,359,563.94 on these accounts.

6

23. The Debt Validation Notice is an essential safeguard for consumers, especially with regard to medical debt, as the insurance reimbursement and the medical billing processes are commonly fraught with complexity, confusion, delay, and can lead to consumers being unsure of how much to pay, when to pay, or even whom to pay.

24. Respondent's failure to send the Debt Validation Notices to consumers on these accounts could have harmed consumers by, among other things, not informing consumers of their legal right to request that Respondent validate their debt at the outset, and through this process identify and correct any errors, such as who owes the debt or the amount of the debt.

25. Section 809 of the FDCPA requires debt collectors to send consumers a Debt Validation Notice within five days of their initial communication with the consumer in connection with the collection of a debt. 15 U.S.C. § 1692g(a).

26. As a result, the acts or practices described in paragraphs 17 - 25 constitute a violation of Section 809 of the FDCPA, 15 U.S.C. § 1692g(a).

## CONDUCT PROVISIONS
### VI
### Order to Cease and Desist and Take Other Affirmative Action

IT IS ORDERED, under Sections 1053 and 1055 of the CFPA, that:

27. Respondent and its officers, agents, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, shall cease and desist from any further violations of Section 623(a)(8) of the FCRA, 15 U.S.C. § 1681s-2(a)(8), and Subpart E of Regulation V (referred to as the Furnisher Rule), 12 C.F.R. § 1022.43, and take the following affirmative actions:

   a.  Develop and implement policies and procedures to comply with the FCRA and Furnisher Rule to respond to Direct Disputes within 30 days of receipt of the Direct Dispute.

   b.  Provide sufficient staffing, facilities, systems, and information necessary to timely and accurately respond to Direct Disputes in accordance with the FCRA, Furnisher Rule, and other Federal laws.

   c.  Employ qualified and experienced personnel to provide legal oversight regarding Respondent's obligations to timely respond to Direct Disputes and send consumers Debt Validation Notices in compliance with the FDCPA and FCRA.

   d.  For each Affected Consumer for whom Respondent failed to timely respond to a Direct Dispute, Respondent must, within 30 days of the Effective Date:

      i.  Update the information it has furnished to the CRAs, if it has not already done so; and

      ii.  Send a notice to each Affected Consumer stating that it has updated the information it has furnished to the CRA for the Affected Consumer, if it has not already done so.

   e.  Refrain from furnishing information to a CRA relating to a consumer's medical debt for at least 90 days from the date the account is assigned to Respondent for collection.

28.  Respondent and its officers, agents, servants, employees, and attorneys who have actual notice of this Consent Order, whether acting directly or indirectly, shall cease and desist from any further violations of Section 809 of the FDCPA, 15 U.S.C. § 1692g(a), and take the following affirmative actions:

8

    a. Within 30 days, correct any errors in Respondent's databases or systems that resulted in Respondent's failure to send a consumer a Debt Validation Notice;

    b. Except where the initial communication with the consumer results in a payment by the consumer on the debt, refrain from collecting any payments from any consumer until Respondent has confirmed that it sent the consumer a Debt Validation Notice;

    c. For each Affected Consumer to whom Respondent failed to send a Debt Validation Notice and for whom it furnished information to the CRAs, Respondent must, within 30 days of the Effective Date:

        i. Update the information it has furnished to the CRAs, if it has not already done so; and

        ii. Send a notice to each Affected Consumer stating that it has updated the information it has furnished to the CRA for the Affected Consumer, if it has not already done so.

## VII
## Compliance Plan

**IT IS FURTHER ORDERED** that:

29. Within 60 days of the Effective Date, Respondent must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Respondent's practices for responding to Direct Disputes and sending consumers a Debt Validation Notice comply with all applicable Federal consumer financial laws and the terms of this Consent Order (Compliance Plan). The Compliance Plan must include, at a minimum:

    a. Detailed steps for addressing each action required by this Consent Order;

    b. An explanation of Respondent's consumer compliance organizational and reporting structure;

    c. Written descriptions of the job duties for key consumer-compliance staff positions, which clearly define employee authority and accountability;

    d. A requirement that Respondent allocate resources to compliance that are commensurate with the company's size, complexity, and business operations to ensure that it implements an adequate compliance program including appropriate staffing levels with qualified and experienced personnel;

    e. A requirement that Respondent conduct monthly audits to ensure that it is responding to Direct Disputes within 30 days of receipt of the dispute, as required by the FCRA and Furnisher Rule, which must include:

        i. Data relating to the timeliness of Respondent's response to Direct Disputes, including data on the number of Direct Disputes received each month, the length of time it took to respond to Direct Disputes, whether it took longer than 30 days to respond to any Direct Dispute, and whether any errors were identified through the Direct Dispute investigation process; and

        ii. A plan for promptly resolving any issues in the Direct Dispute response process;

    f. A requirement that Respondent conduct monthly audits to ensure that it is sending consumers a written Debt Validation Notice within five days of its initial communication with the consumer in connection with the collection of a debt, as required by the FDCPA, which must include:

        i. Data relating to the number of new accounts assigned to Respondent, the number of accounts for which a Debt Validation Notice has been sent, the

number of accounts for which no Debt Validation Notice has been sent, and, for such accounts, an explanation of why no Debt Validation Notice has been sent; and

ii. A plan for promptly resolving any issues relating to Respondent's failure to send consumers a Debt Validation Notice within five days of its initial communication with the consumer in connection with the collection of a debt;

g. A requirement that Respondent provide ongoing education and training in Federal consumer financial laws for all appropriate employees and affiliated individuals, with training tailored to each individual's responsibilities and duties; training activities must be documented and the training programs reviewed and updated at least annually to ensure that appropriate personnel are provided with the most relevant and pertinent information;

h. A requirement that the Compliance Plan be updated at least every two years, or as required by changes in laws or regulations, so that the Compliance Plan remains current and effective; and

i. Specific timeframes and deadlines for implementation of the steps described above.

30. The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or to direct Respondent to revise it. If the Enforcement Director directs Respondent to revise the Compliance Plan, Respondent must make the requested revisions and resubmit the Compliance Plan to the Enforcement Director within 30 days.

31. After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan, Respondent must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## MONETARY PROVISIONS
## VIII
## Order to Pay Redress

**IT IS FURTHER ORDERED** that:

32. Within 10 days of the Effective Date, Respondent must reserve or deposit $5,130,213.94 into a segregated deposit account for the purpose of providing redress to Affected Consumers as required by this Section.

33. Within 60 days of the Effective Date, Respondent must submit to the Enforcement Director for review and non-objection a comprehensive written plan for providing redress consistent with this Consent Order (Redress Plan). The Enforcement Director will have the discretion to make a determination of non-objection to the Redress Plan or direct the Respondent to revise it. If the Enforcement Director directs the Respondent to revise the Redress Plan, the Respondent must make the revisions and resubmit the Redress Plan to the Enforcement Director within 30 days. After receiving notification that the Enforcement Director has made a determination of non-objection to the Redress Plan, Respondent must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

34. The Redress Plan must:

12

    a. Specify how Respondent will identify all Affected Consumers who will receive redress under this Consent Order;

    b. Require Respondent to compensate each Affected Consumer for whom Respondent failed to respond to a Direct Dispute within 30 days; the amount of the payment to each Affected Consumer will range from $100 - $1,000 and correspond to the duration of Respondent's delay in responding to the Direct Dispute;

    c. Require Respondent to compensate each Affected Consumer to whom Respondent failed to send a Debt Validation Notice, either:

        i. A full refund of all amounts paid by the Affected Consumer for the account(s) for which Respondent failed to send a Debt Validation Notice; or

        ii. $100 for each Affected Consumer who did not make any payments to Respondent;

    d. Provide that, for Affected Consumers to whom Respondent provides a refund in accordance with Paragraph 34(c)(i), Respondent will forgive any remaining balance and not attempt to re-collect the debt, resulting in debt forgiveness of $319,731.74;

    e. Provide that nothing in the Redress Plan creates any new collection, credit reporting, or litigation rights on behalf of Respondent; and

    f. Provide that Respondent shall pay all costs of administering redress as required by this Section.

35. Respondent shall provide all relief to Affected Consumers required by this Consent Order, regardless of whether the total of such relief exceeds the amount reserved or deposited into a segregated account under Paragraph 32.

36.   After completing the Redress Plan, if the amount of redress provided to Affected
      Consumers is less than $5,130,213.94, within 30 days of the completion of the
      Redress Plan, Respondent must pay to the Bureau, by wire transfer to the Bureau
      or to the Bureau's agent, and according to the Bureau's wiring instructions, the
      difference between the amount of redress provided to Affected Consumers and
      $5,130,213.94, so that such funds may be distributed to the U.S. Treasury as
      disgorgement.

37.   Respondent may not condition the payment of any redress to any Affected
      Consumer under this Order on the Affected Consumer waiving any right, nor deny
      any service, modification, or other consideration regularly offered or provided to
      consumers to any Affected Consumer.

# IX
## Order to Pay Civil Money Penalties

**IT IS FURTHER ORDERED** that:

38.   Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations
      of law described in Section V of this Consent Order, and taking into account the
      factors in 12 U.S.C. § 5565(c)(3), Respondent must pay a civil money penalty of
      $500,000 to the Bureau.

39.   Within 10 days of the Effective Date, Respondent must pay the civil money penalty
      by wire transfer to the Bureau or to the Bureau's agent in compliance with the
      Bureau's wiring instructions.

40.   The civil money penalty paid under this Consent Order will be deposited in the
      Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12
      U.S.C. § 5497(d).

41.     Respondent must treat the civil money penalty paid under this Consent Order as a
penalty paid to the government for all purposes. Regardless of how the Bureau
ultimately uses those funds, Respondent may not:

a.  Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit
for any civil money penalty paid under this Consent Order; or

b.  Seek or accept, directly or indirectly, reimbursement or indemnification from
any source, including but not limited to payment made under any insurance
policy, with regard to any civil money penalty paid under this Consent Order.

42.     To preserve the deterrent effect of the civil money penalty in any Related
Consumer Action, Respondent may not argue that Respondent is entitled to, nor
may Respondent benefit by, any offset or reduction of any compensatory monetary
remedies imposed in the Related Consumer Action because of the civil money
penalty paid in this action (Penalty Offset). If the court in any Related Consumer
Action grants such a Penalty Offset, Respondent must, within 30 days after entry of
a final order granting the Penalty Offset, notify the Bureau, and pay the amount of
the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an
additional civil money penalty and will not change the amount of the civil money
penalty imposed in this action.

## X
## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

43.     In the event of any default on Respondent's obligations to make payment under
this Consent Order, interest, computed under 28 U.S.C. § 1961, as amended, will

accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

44. Respondent must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Respondent.

45. Under 31 U.S.C. § 7701, Respondent, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Consent Order.

46. Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Respondent must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that Respondent paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

## XI
### Reporting Requirements

**IT IS FURTHER ORDERED** that:

47. Respondent must notify the Bureau of any development that may affect compliance obligations arising under this Consent Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Consent Order; the filing of any bankruptcy or insolvency proceeding by or against

Respondent; or a change in Respondent's name or address. Respondent must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

48. Within 90 days of the Bureau's non-objection to the Compliance Plan, and again one year after the Effective Date, Respondent must submit to the Enforcement Director an accurate written compliance progress report (Compliance Report), which, at a minimum:

   a. Describes in detail the manner and form in which Respondent has complied with this Order; and

   b. Attaches a copy of each Order Acknowledgment obtained under Section XII, unless previously submitted to the Bureau.

## XII
## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

49. Within 30 days of the Effective Date, Respondent must deliver a copy of this Consent Order to each of its board members and executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who have responsibilities related to the subject matter of the Consent Order.

50. For 5 years from the Effective Date, Respondent must deliver a copy of this Consent Order to any business entity resulting from any change in structure referred to in Section XI, any future board members and executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of the Consent Order before they assume their responsibilities.

17

51.    Respondent must secure a signed and dated statement acknowledging receipt of a copy of this Consent Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all persons receiving a copy of this Consent Order under this Section.

## XIII
## Recordkeeping

**IT IS FURTHER ORDERED** that:

52.    Respondent must create, for at least 5 years from the Effective Date, the following business records:

    a.    All documents and records necessary to demonstrate full compliance with each provision of this Consent Order, including all submissions to the Bureau; and

    b.    All documents and records pertaining to the Redress Program, described in Section VIII above.

53.    Respondent must retain the documents identified in Paragraph 52 for at least 5 years.

54.    Respondent must make the documents identified in Paragraph 52 available to the Bureau upon the Bureau's request.

## XIV
## Notices

**IT IS FURTHER ORDERED** that:

55.    Unless otherwise directed in writing by the Bureau, Respondent must provide all submissions, requests, communications, or other documents relating to this Consent Order in writing, with the subject line, "*In re Syndicated Office Systems, LLC,* File No. 2015-CFPB-0012," and send them either:

a. By overnight courier (not the U.S. Postal Service), as follows:

Assistant Director for Enforcement
Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement
1625 Eye Street, N.W.
Washington D.C. 20006; or

b. By first-class mail to the below address and contemporaneously by email

to Enforcement_Compliance@cfpb.gov:

Assistant Director for Enforcement
Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement
1700 G Street, N.W.
Washington D.C. 20552

## XVI

### Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Respondent's compliance with this Consent Order:

56. Within 14 days of receipt of a written request from the Bureau, Respondent must submit additional compliance reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

57. Respondent must permit Bureau representatives to interview any employee or other person affiliated with Respondent who has agreed to such an interview. The person interviewed may have counsel present.

58. Nothing in this Consent Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

59.   For the duration of the Order in whole or in part, Respondent agrees to be subject to the Bureau's supervisory authority under 12 U.S.C. § 5514. Consistent with 12 C.F.R. § 1091.111, Respondent may not petition for termination of supervision under 12 C.F.R. § 1091.113.

## XVII
## Modifications to Non-Material Requirements

**IT IS FURTHER ORDERED** that:

60.   Respondent may seek a modification to non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) by submitting a written request to the Enforcement Director.

61.   The Enforcement Director may, in his/her discretion, modify any non-material requirements of this Consent Order (*e.g.*, reasonable extensions of time and changes to reporting requirements) if he/she determines good cause justifies the modification. Any such modification by the Enforcement Director must be in writing.

## XVIII
## Administrative Provisions

62.   The provisions of this Consent Order do not bar, estop, or otherwise prevent the Bureau, or any other governmental agency, from taking any other action against Respondent, except as described in Paragraph 63.

63.   The Bureau releases and discharges Respondent from all potential liability for law violations that the Bureau has or might have asserted based on the practices described in Section V of this Consent Order, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective

Date. The Bureau may use the practices described in this Consent Order in future enforcement actions against Respondent and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Consent Order, or to seek penalties for any violations of the Consent Order.

64. This Consent Order is intended to be, and will be construed as, a final Consent Order issued under Section 1053 of the CFPA, 12 U.S.C. § 5563, and expressly does not form, and may not be construed to form, a contract binding the Bureau or the United States.

65. This Consent Order will terminate 5 years from the Effective Date or 5 years from the most recent date that the Bureau initiates an action alleging any violation of the Consent Order by Respondent. If such action is dismissed or the relevant adjudicative body rules that Respondent did not violate any provision of the Consent Order, and the dismissal or ruling is either not appealed or upheld on appeal, then the Consent Order will terminate as though the action had never been filed. The Consent Order will remain effective and enforceable until such time, except to the extent that any provisions of this Consent Order have been amended, suspended, waived, or terminated in writing by the Bureau or its designated agent.

66. Calculation of time limitations will run from the Effective Date and be based on calendar days, unless otherwise noted.

67. The provisions of this Consent Order will be enforceable by the Bureau. For any violation of this Consent Order, the Bureau may impose the maximum amount of

21

civil money penalties allowed under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c). In connection with any attempt by the Bureau to enforce this Consent Order in federal district court, the Bureau may serve Respondent wherever Respondent may be found and Respondent may not contest that court's personal jurisdiction over Respondent.

68.   This Consent Order and the accompanying Stipulation contain the complete agreement between the parties. The parties have made no promises, representations, or warranties other than what is contained in this Consent Order and the accompanying Stipulation. This Consent Order and the accompanying Stipulation supersede any prior oral or written communications, discussions, or understandings.

69.   Nothing in this Consent Order or the accompanying Stipulation may be construed as allowing the Respondent, its Board, officers, or employees to violate any law, rule, or regulation.

**IT IS SO ORDERED**, this 18th day of June, 2015.

Richard Cordray
Director
Consumer Financial Protection Bureau

22

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

Pl. Ex. 31

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND D/B/A VALLEY | § | |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO
## DEFENDANT VHS HARLINGEN HOSPITAL COMPANY, LLC.

TO:    Defendant VHS Harlingen Hospital Company, LLC.

Plaintiff serves these interrogatories on Defendant VHS Harlingen Hospital Company, LLC ("Defendant"), as allowed by Texas Rule of Civil Procedure 197.  Pursuant to Rules 190 and 197 of the Texas Rules of Civil Procedure, you are requested to provide answers to these Interrogatories within fifty (50) days of service of this discovery to Plaintiff's Counsel, William J. Akins, FisherBroyles, LLP, 100 Congress Avenue, Suite 2000, Austin, Texas 78701, E-Mail: william.akins@fisherbroyles.com, Telephone: (214) 924-9504, Facsimile: (214) 481-3768, in accordance with the Texas Rules of Civil Procedure.

Respectfully submitted,

_____

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF

## I.   GENERAL INSTRUCTIONS

A.   These interrogatories are continuing in character so as to require the Responding Party to serve supplemental answers if the Responding Party obtains further, or different, information prior to trial.

B.   Each interrogatory is to be answered separately and completely. The omission of any name, fact or other item of information from the answers of the Responding Party to these interrogatories shall be deemed by the Requesting Party to be a representation that such name, fact or item was not known to the Responding Party at the time the Responding Party certified to the truth of the answers.

C.   If the Responding Party contends that any interrogatory requests information contained in a privileged oral communication, the Responding Party must state:

1.   the nature of the privilege asserted;

2.   the subject matter to which the claim of privilege relates;

3.   the name(s) of the person(s) from whom such information was obtained and to whom such information was communicated; and

4.   the date the communication was made.

D.   If the Responding Party contends that any interrogatory requests information contained in a privileged document, state:

1.   the nature of the privilege asserted;

2.   the date(s) the document was created;

---

3.  the date(s) the document was provided to all persons who received an original or copy of the document;

4.  the full name(s), address(es), and title(s) of the document's author(s), addressee(s) and all persons who received an original or copy of the document;

5.  whether the document is a letter, tape, disk, memorandum, written agreement, drawing, graph, photograph, etc.;

6.  the number of pages of the document or its file size if electronic form;

7.  the current location of the document and all copies of the document; and

8.  a description of the general content and substance of the document.

E.  When used in reference to any oral communication, the word "identify" requires the Responding Party to:

1.  state the name, address and telephone number of the person(s) by whom it was made, the person(s) to whom it was made and the person(s) present at the time it was made;

2.  state the date or best approximate date it was made;

3.  state the location where the communication was made;

4.  describe the complete content and substance of the communication.

F.  When used in reference to a document, the word "identify" requires the Responding Party to:

1.  state the date appearing on such document, or if no date so appears, to so state and to give the date or best approximate date on which such document was prepared or created;

2.  provide identifying labels, code numbers, file numbers, names, markings or titles;

3.  state whether the document is a letter, tape, disk, memorandum, written agreement, drawing, graph, photograph, etc.;

4.  state the document's number of pages;

5.  set forth in writing the document's authors, including those who did not sign it;

6.  set forth in writing every recipient of an original or copy of the document;

7.  set forth in writing every person who possessed, controlled or otherwise had custody of the document;

8.  attach a copy of the document to the Responding Party's answers to these interrogatories; and

9.  describe the document's complete content and substance.

G.  As used in these interrogatories, the words "state" and "describe" require the Responding Party to fully put into words the act, transaction, relationship, thing, or occurrence referred to in the interrogatory by reference to specific facts rather than conclusions of fact or law and further requires the Responding Party to provide the identity of:

1.  the source(s) of the Responding Party's information concerning such fact, including the date on which the Responding Party first received such information;

2.  each document relating to, referring to, or evidencing such fact;

3.  each document which the Responding Party intends to offer in evidence to prove, or with respect to, such fact; and

4.  each person having knowledge of such fact.

H.  In answering these interrogatories, furnish such information available to the Responding Party, not merely such information of the Responding Party's own personal knowledge. This means the Responding Party is to furnish information that is known by, or in the possession of, the Responding Parties' employees, representatives, or agents, including the Responding Party's attorney(s), subject to Instructions C and D.

I.  Do not incorporate by reference facts contained in documents or publications; specify the precise facts, allegations, names, etc., called for by the interrogatories.

J.  In answering these interrogatories, words used in the singular shall include the plural and vice versa. Furthermore, whenever a question is framed in the conjunctive, it shall be construed as the disjunctive, as well, and vice versa. Finally, "all" refers to "any" and "each," and vice versa.

K.  If the Responding Party encounters any ambiguity in construing either an interrogatory or a definition or instruction relevant to the interrogatory, identify the matter deemed ambiguous and set forth the construction chosen or used in answering the interrogatory. In all instances, the construction that results in the provision of the most facts or most comprehensive answers is intended and should be assumed.

L.  Whenever an objection is made to a sub-part of an interrogatory, an answer shall be furnished to the parts of the interrogatory to which there is no objection.

## II.  DEFINITIONS

A.  As used herein, the term "Document," and all forms thereof, means all tangible forms and electronic media in which information is stored and includes all written or graphic matter of every kind and description, however produced or reproduced, WHETHER DRAFT OR FINAL, original or reproduction, (including writings, drawings, graphs, charts, photographs, phone-records, and other data compilations from which information can be obtained and translated, if necessary, by the Responding Party through electronic devices into reasonably usable form). It includes but is not limited to letters; emails; correspondence; memoranda; notes; transcripts; contracts; agreements; licenses; applications; memoranda of telephone conversations or personal conversations; minutes of meetings; interoffice communications; reports; financial statements; ledgers; books of account; proposals; prospectuses; offers; orders; receipts; working papers; desk calendars; appointment books; diaries; time sheets; logs; recordings or materials similar to any of the foregoing; however denominated; and including writing; drawings; graphs; photographs; charts; invoices; diaries; oral conversations; meetings; reports of telephone conversations; all video and audio recordings; microfilm; microfiche; computer discs, including floppy discs and hard drives; CD-Rom; computer printout or tape; data processing results; printouts and computations, (both in existence and stored in memory components), and other compilations from which information can be obtained or translated, if necessary, through detective devices into reasonably usable form.

B.  The term "Document" also includes all copies of material containing any additional writing, underlining, notes, deletions, other markings or notations, or are otherwise not identical copies of the original whether actually or constructively possessed. The production of all electronic data shall be in its original native form, and must include all metadata.

C.  As used in these interrogatories, "person or persons" means an individual, company, partnership, corporation, association, or any governmental agency, department or unit. A request to "identify" a person shall require the identification of his or her: 1) full name; 2) present or last known home or business address

(including street name and number, city or town, and state); 3) telephone number; and 4) present or last known position, business affiliation, or job description. A request to "identify" a company, partnership, corporation, association, or any governmental agency, department or unit shall require the identification of its: 1) full name and type of organization or entity; 2) address of principal place of business; and 3) jurisdiction and date of incorporation or organization.

D.      As used in these interrogatories, "Action" means the above-captioned matter.

E.      As used in these interrogatories, "Complaint" means the Plaintiff's Complaint, which was filed by Plaintiff in the Action.

F.      As used in these interrogatories, "Answer" means Defendant's Answer which was, or will be, filed by Defendant in the Action.

G.      As used in these interrogatories, "communication" means the exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior.

H.      As used in these interrogatories, "concern" and "concerning" mean referring to, relating to, regarding, involving or otherwise evidencing the subject matter of the question.

I.      As used in these interrogatories, "Plaintiff", and all forms thereof, shall mean Plaintiff Bobby L. Mitchell, his agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on his behalf.

J.      As used in these interrogatories, "VHS" and all forms thereof shall mean VHS Harlingen Hospital Company, LLC, and its agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on its behalf. "You" shall mean Defendant VHS.

K.      As used in these interrogatories, "VB" and all forms thereof shall mean Defendant VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center, and its agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on its behalf.

L.      As used in these interrogatories, "CFC" and all forms thereof shall mean Defendant Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control, and its agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on its behalf.

M.      As used in these interrogatories, "Credit Reporting Agencies" and all forms thereof shall mean the following credit reporting agencies, and their collective and respective agents, attorneys, directors, employees, officers, representatives and any

other person who acts or has acted on their behalves:   Equifax, Experian, and TransUnion.

N.    As used in these interrogatories, "Dates of Service" and all forms thereof shall mean the medical services and supplies received by Plaintiff on or about September 10, 2013, September 13, 2013, and February 24, 2014.

O.    As used in these interrogatories, "Chargemaster List" and all forms thereof shall mean the list of all medical service, procedures, and supplies provided by VHS/VB during the Dates of Service.

## III.   INTERROGATORIES

**Interrogatory No. 1:** Identify all communications between You and Plaintiff concerning the medical services and supplies provided to Plaintiff, which provision of medical services and supplies occurred during each of the Dates of Service, including, but not limited to, pre-admission communications, the services and supplies that were provided to Plaintiff, the cost of the services and supplies that were provided to Plaintiff, VHS/VB's Chargemaster List, VHS/VB's acceptance of insurance payments, collection of the alleged outstanding amount, and reporting to Credit Reporting Agencies of any alleged outstanding amount.

**RESPONSE:**

**Interrogatory No. 2:** Identify all documents that concern each communication identified in Interrogatory No. 1.

**RESPONSE:**

**Interrogatory No. 3:** Identify all communications between You and any party used by You to collect the alleged debt concerning the medical services and supplies provided to Plaintiff, which provision of medical services and supplies occurred on the Dates of Service, including, but not limited to, pre-admission communications, the services and supplies that were provided to Plaintiff, the cost of the services and supplies that were provided to Plaintiff, VHS/VB's Chargemaster List, VHS/VB's acceptance of insurance payments, collection of the alleged outstanding amount, and reporting to Credit Reporting Agencies.

**RESPONSE:**

**Interrogatory No. 4:** Identify all documents that concern each communication identified in Interrogatory No. 3.

**RESPONSE:**

**Interrogatory No. 5:** Identify all communications between You and any Credit Reporting Agency concerning Plaintiff's alleged debt for medical services and supplies, which provision of medical services and supplies occurred during the Dates of Service.

    **RESPONSE:**

**Interrogatory No. 6:** Identify all documents that concern each communication identified in Interrogatory No. 5.

    **RESPONSE:**

**Interrogatory No. 7:** State with specificity the charges as set forth in Your Chargemaster List for the period of time that You treated or provided medical services or supplies to Plaintiff for each and every medical service and supply that You provided to Plaintiff during the Dates of Service.

    **RESPONSE:**

**Interrogatory No. 8:** Identify all documents that concern Your response to Interrogatory No. 7.

    **RESPONSE:**

**Interrogatory No. 9:** Identify how You calculated the charges on the Chargemaster List for those medical procedures and supplies that You provided to Plaintiff.

    **RESPONSE:**

**Interrogatory No. 10:** Identify all documents that concern Your response to Interrogatory No. 9.

    **RESPONSE:**

**Interrogatory No. 11:** State with specificity (a) each and every medical service and supply that You provided to Plaintiff during the Dates of Service, and (b) the amount You charged Plaintiff for each and every medical service and supply that You provided to Plaintiff during the Dates of Service.

    **RESPONSE:**

**Interrogatory No. 12:** Identify all documents that concern Your response to Interrogatory No. 11.

    **RESPONSE:**

**Interrogatory No. 13:** Without identifying the name or other identifying information of other patients, state with specificity (a) what You have charged other patients for the two years prior to Plaintiff's admission to VHS/VB for each and every medical service and supply that You provided

to Plaintiff and (b) what You have accepted as payment in full from or on behalf of other patients for the three years prior to Plaintiff's admission to VHS/VB for each and every medical service and supply that You provided to Plaintiff.

**RESPONSE:**

**Interrogatory No. 14:** Identify all documents that concern Your response to Interrogatory No. 13.

**RESPONSE:**

**Interrogatory No. 15:** State how You determined the charges for each and every medical service and supply that You provided to Plaintiff, and whether and in what manner You provided notice to Plaintiff of Your financial assistance policy and whether a discount would be provided.

**RESPONSE:**

**Interrogatory No. 16:** Identify all documents that concern Your response to Interrogatory No. 15.

**RESPONSE:**

**Interrogatory No. 17:** Do You contend that You did not accept payment made on behalf of Plaintiff for the medical services and supplies that You provided to Plaintiff during the Dates of Service? If so, set forth with specificity the factual basis for Your contention.

**RESPONSE:**

**Interrogatory No. 18:** Identify all documents that concern the subject matter of Interrogatory No. 17.

**RESPONSE:**

**Interrogatory No. 19:** Identify all information that You provided to any person or party authorized or directed by You to collect the alleged debt owed by Plaintiff. Identify all documents that concern the subject matter of this Interrogatory.

**RESPONSE:**

**Interrogatory No. 20:** Identify all documents that concern the subject matter of Interrogatory No. 19.

**RESPONSE:**

**Interrogatory No. 21:** Identify each of Your employees, independent contractors and/or agents that provided medical services or supplies to Plaintiff concerning Your claim for an alleged debt from Plaintiff.

    **RESPONSE:**

**Interrogatory No. 22:** Identify all documents that concern the subject matter of Interrogatory No. 21.

    **RESPONSE:**

**Interrogatory No. 23:** State whether You determined if Plaintiff was entitled to financial assistance pursuant to any written financial assistance policy before You sought to collect the alleged debt from Plaintiff.

    **RESPONSE:**

**Interrogatory No. 24:** Identify all documents that concern the subject matter of Interrogatory No. 23.

    **RESPONSE:**

**Interrogatory No. 25:** Identify whether and what efforts You made to determine if Plaintiff qualified for a discount under Your financial assistance policy or any other policy, and whether You determined that such a discount would be provided.

    **RESPONSE:**

**Interrogatory No. 26:** Identify all documents that concern the subject matter of Interrogatory No. 25.

    **RESPONSE:**

**Interrogatory No. 27:** Set forth the factual basis for each and every affirmative defense pled in response to the Complaint.

    **RESPONSE:**

**Interrogatory No. 28:** Identify all documents that concern the subject matter of Interrogatory No. 27.

    **RESPONSE:**

**Interrogatory No. 29:** Describe the relationship You have with VB.

**RESPONSE:**

**Interrogatory No. 30:** Identify all documents that concern Your response to Interrogatory No. 29.

**RESPONSE:**

**Interrogatory No. 31:** Identify the relationship You have with CFC.

**RESPONSE:**

**Interrogatory No. 32:** Identify all documents that concern Your response to Interrogatory No. 31.

**RESPONSE:**

**Interrogatory No. 33:** Identify all records or other documents searched in order to supply responsive answers to these interrogatories, including, but not limited to, a description of the records or other documents, the manner in which they have been kept since their generation, including all storage locations and current custodians, whether you believe responsive documents existed at one time that no longer exist and, if so, the basis for such belief, and the procedure utilized to examine such records to ascertain whether they were responsive to the discovery demands.

**RESPONSE:**

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

Pl. Ex. 32

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND D/B/A VALLEY | § | |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT VB HARLINGEN HOLDINGS, INDIVIDUALLY AND D/B/A VALLEY BAPTIST MEDICAL CENTER.

TO:    Defendant VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center,

Plaintiff serves these interrogatories on Defendant VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center ("Defendant"), as allowed by Texas Rule of Civil Procedure 197. Pursuant to Rules 190 and 197 of the Texas Rules of Civil Procedure, you are requested to provide answers to these Interrogatories within fifty (50) days of service of this discovery to Plaintiff's Counsel, William J. Akins, FisherBroyles, LLP, 100 Congress Avenue, Suite 2000, Austin, Texas 78701, E-Mail: william.akins@fisherbroyles.com, Telephone: (214) 924-9504, Facsimile: (214) 481-3768, in accordance with the Texas Rules of Civil Procedure.

Respectfully submitted,

_____

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF

## I.    GENERAL INSTRUCTIONS

A.    These interrogatories are continuing in character so as to require the Responding Party to serve supplemental answers if the Responding Party obtains further, or different, information prior to trial.

B.    Each interrogatory is to be answered separately and completely.  The omission of any name, fact or other item of information from the answers of the Responding Party to these interrogatories shall be deemed by the Requesting Party to be a representation that such name, fact or item was not known to the Responding Party at the time the Responding Party certified to the truth of the answers.

C.    If the Responding Party contends that any interrogatory requests information contained in a privileged oral communication, the Responding Party must state:

1.   the nature of the privilege asserted;

2.   the subject matter to which the claim of privilege relates;

3.   the name(s) of the person(s) from whom such information was obtained and to whom such information was communicated; and

4.   the date the communication was made.

D.    If the Responding Party contends that any interrogatory requests information contained in a privileged document, state:

1.   the nature of the privilege asserted;

2.   the date(s) the document was created;

3.   the date(s) the document was provided to all persons who received an original or copy of the document;

4.   the full name(s), address(es), and title(s) of the document's author(s), addressee(s) and all persons who received an original or copy of the document;

5.   whether the document is a letter, tape, disk, memorandum, written agreement, drawing, graph, photograph, etc.;

6.   the number of pages of the document or its file size if electronic form;

7.   the current location of the document and all copies of the document; and

8.   a description of the general content and substance of the document.

E.   When used in reference to any oral communication, the word "identify" requires the Responding Party to:

1.   state the name, address and telephone number of the person(s) by whom it was made, the person(s) to whom it was made and the person(s) present at the time it was made;

2.   state the date or best approximate date it was made;

3.   state the location where the communication was made;

4.   describe the complete content and substance of the communication.

F.   When used in reference to a document, the word "identify" requires the Responding Party to:

1.   state the date appearing on such document, or if no date so appears, to so state and to give the date or best approximate date on which such document was prepared or created;

2.   provide identifying labels, code numbers, file numbers, names, markings or titles;

3.   state whether the document is a letter, tape, disk, memorandum, written agreement, drawing, graph, photograph, etc.;

---

4.  state the document's number of pages;

5.  set forth in writing the document's authors, including those who did not sign it;

6.  set forth in writing every recipient of an original or copy of the document;

7.  set forth in writing every person who possessed, controlled or otherwise had custody of the document;

8.  attach a copy of the document to the Responding Party's answers to these interrogatories; and

9.  describe the document's complete content and substance.

G.  As used in these interrogatories, the words "state" and "describe" require the Responding Party to fully put into words the act, transaction, relationship, thing, or occurrence referred to in the interrogatory by reference to specific facts rather than conclusions of fact or law and further requires the Responding Party to provide the identity of:

1.  the source(s) of the Responding Party's information concerning such fact, including the date on which the Responding Party first received such information;

2.  each document relating to, referring to, or evidencing such fact;

3.  each document which the Responding Party intends to offer in evidence to prove, or with respect to, such fact; and

4.  each person having knowledge of such fact.

H.  In answering these interrogatories, furnish such information available to the Responding Party, not merely such information of the Responding Party's own personal knowledge.  This means the Responding Party is to furnish information that is known by, or in the possession of, the Responding Parties' employees, representatives, or agents, including the Responding Party's attorney(s), subject to Instructions C and D.

I.  Do not incorporate by reference facts contained in documents or publications; specify the precise facts, allegations, names, etc., called for by the interrogatories.

J.    In answering these interrogatories, words used in the singular shall include the plural and vice versa. Furthermore, whenever a question is framed in the conjunctive, it shall be construed as the disjunctive, as well, and vice versa. Finally, "all" refers to "any" and "each," and vice versa.

K.    If the Responding Party encounters any ambiguity in construing either an interrogatory or a definition or instruction relevant to the interrogatory, identify the matter deemed ambiguous and set forth the construction chosen or used in answering the interrogatory. In all instances, the construction that results in the provision of the most facts or most comprehensive answers is intended and should be assumed.

L.    Whenever an objection is made to a sub-part of an interrogatory, an answer shall be furnished to the parts of the interrogatory to which there is no objection.

## II.   DEFINITIONS

A.    As used herein, the term "Document," and all forms thereof, means all tangible forms and electronic media in which information is stored and includes all written or graphic matter of every kind and description, however produced or reproduced, WHETHER DRAFT OR FINAL, original or reproduction, (including writings, drawings, graphs, charts, photographs, phone-records, and other data compilations from which information can be obtained and translated, if necessary, by the Responding Party through electronic devices into reasonably usable form). It includes but is not limited to letters; emails; correspondence; memoranda; notes; transcripts; contracts; agreements; licenses; applications; memoranda of telephone conversations or personal conversations; minutes of meetings; interoffice communications; reports; financial statements; ledgers; books of account; proposals; prospectuses; offers; orders; receipts; working papers; desk calendars; appointment books; diaries; time sheets; logs; recordings or materials similar to any of the foregoing; however denominated; and including writing; drawings; graphs; photographs; charts; invoices; diaries; oral conversations; meetings; reports of telephone conversations; all video and audio recordings; microfilm; microfiche; computer discs, including floppy discs and hard drives; CD-Rom; computer printout or tape; data processing results; printouts and computations, (both in existence and stored in memory components), and other compilations from which information can be obtained or translated, if necessary, through detective devices into reasonably usable form.

B.    The term "Document" also includes all copies of material containing any additional writing, underlining, notes, deletions, other markings or notations, or are otherwise not identical copies of the original whether actually or constructively possessed. The production of all electronic data shall be in its original native form, and must include all metadata.

C.     As used in these interrogatories, "person or persons" means an individual, company, partnership, corporation, association, or any governmental agency, department or unit. A request to "identify" a person shall require the identification of his or her: 1) full name; 2) present or last known home or business address (including street name and number, city or town, and state); 3) telephone number; and 4) present or last known position, business affiliation, or job description. A request to "identify" a company, partnership, corporation, association, or any governmental agency, department or unit shall require the identification of its: 1) full name and type of organization or entity; 2) address of principal place of business; and 3) jurisdiction and date of incorporation or organization.

D.     As used in these interrogatories, "Action" means the above-captioned matter.

E.     As used in these interrogatories, "Complaint" means the Plaintiff's Complaint, which was filed by Plaintiff in the Action.

F.     As used in these interrogatories, "Answer" means Defendant's Answer which was, or will be, filed by Defendant in the Action.

G.     As used in these interrogatories, "communication" means the exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior.

H.     As used in these interrogatories, "concern" and "concerning" mean referring to, relating to, regarding, involving or otherwise evidencing the subject matter of the question.

I.     As used in these interrogatories, "Plaintiff", and all forms thereof, shall mean Plaintiff Bobby L. Mitchell, his agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on his behalf.

J.     As used in these interrogatories, "VHS" and all forms thereof shall mean VHS Harlingen Hospital Company, LLC, and its agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on its behalf.

K.     As used in these interrogatories, "VB" and all forms thereof shall mean Defendant VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center, and its agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on its behalf. "You" shall mean Defendant VB.

L.     As used in these interrogatories, "CFC" and all forms thereof shall mean Defendant Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control, and its agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on its behalf.

M.      As used in these interrogatories, "Credit Reporting Agencies" and all forms thereof shall mean the following credit reporting agencies, and their collective and respective agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on their behalves: Equifax, Experian, and TransUnion.

N.      As used in these interrogatories, "Dates of Service" and all forms thereof shall mean the medical services and supplies received by Plaintiff on or about September 10, 2013, September 13, 2013, and February 24, 2014.

O.      As used in these interrogatories, "Chargemaster List" and all forms thereof shall mean the list of all medical service, procedures, and supplies provided by VHS/VB during the Dates of Service.

## III.    INTERROGATORIES

**Interrogatory No. 1:** Identify all communications between You and Plaintiff concerning the medical services and supplies provided to Plaintiff, which provision of medical services and supplies occurred during each of the Dates of Service, including, but not limited to, pre-admission communications, the services and supplies that were provided to Plaintiff, the cost of the services and supplies that were provided to Plaintiff, VHS/VB's Chargemaster List, VHS/VB's acceptance of insurance payments, collection of the alleged outstanding amount, and reporting to Credit Reporting Agencies of any alleged outstanding amount.

**RESPONSE:**

**Interrogatory No. 2:** Identify all documents that concern each communication identified in Interrogatory No. 1.

**RESPONSE:**

**Interrogatory No. 3:** Identify all communications between You and any party used by You to collect the alleged debt concerning the medical services and supplies provided to Plaintiff, which provision of medical services and supplies occurred on the Dates of Service, including, but not limited to, pre-admission communications, the services and supplies that were provided to Plaintiff, the cost of the services and supplies that were provided to Plaintiff, VHS/VB's Chargemaster List, VHS/VB's acceptance of insurance payments, collection of the alleged outstanding amount, and reporting to Credit Reporting Agencies.

**RESPONSE:**

**Interrogatory No. 4:** Identify all documents that concern each communication identified in Interrogatory No. 3.

**RESPONSE:**

**RESPONSE:**

**Interrogatory No. 5:** Identify all communications between You and any Credit Reporting Agency concerning Plaintiff's alleged debt for medical services and supplies, which provision of medical services and supplies occurred during the Dates of Service.

    **RESPONSE:**

**Interrogatory No. 6:** Identify all documents that concern each communication identified in Interrogatory No. 5.

    **RESPONSE:**

**Interrogatory No. 7:** State with specificity the charges as set forth in Your Chargemaster List for the period of time that You treated or provided medical services or supplies to Plaintiff for each and every medical service and supply that You provided to Plaintiff during the Dates of Service.

    **RESPONSE:**

**Interrogatory No. 8:** Identify all documents that concern Your response to Interrogatory No. 7.

    **RESPONSE:**

**Interrogatory No. 9:** Identify how You calculated the charges on the Chargemaster List for those medical procedures and supplies that You provided to Plaintiff.

    **RESPONSE:**

**Interrogatory No. 10:** Identify all documents that concern Your response to Interrogatory No. 9.

    **RESPONSE:**

**Interrogatory No. 11:** State with specificity (a) each and every medical service and supply that You provided to Plaintiff during the Dates of Service, and (b) the amount You charged Plaintiff for each and every medical service and supply that You provided to Plaintiff during the Dates of Service.

    **RESPONSE:**

**Interrogatory No. 12:** Identify all documents that concern Your response to Interrogatory No. 11.

    **RESPONSE:**

**Interrogatory No. 13:** Without identifying the name or other identifying information of other patients, state with specificity (a) what You have charged other patients for the two years prior to Plaintiff's admission to VHS/VB for each and every medical service and supply that You provided to Plaintiff and (b) what You have accepted as payment in full from or on behalf of other patients for the three years prior to Plaintiff's admission to VHS/VB for each and every medical service and supply that You provided to Plaintiff.

    **RESPONSE:**

**Interrogatory No. 14:** Identify all documents that concern Your response to Interrogatory No. 13.

    **RESPONSE:**

**Interrogatory No. 15:** State how You determined the charges for each and every medical service and supply that You provided to Plaintiff, and whether and in what manner You provided notice to Plaintiff of Your financial assistance policy and whether a discount would be provided.

    **RESPONSE:**

**Interrogatory No. 16:** Identify all documents that concern Your response to Interrogatory No. 15.

    **RESPONSE:**

**Interrogatory No. 17:** Do You contend that You did not accept payment made on behalf of Plaintiff for the medical services and supplies that You provided to Plaintiff during the Dates of Service? If so, set forth with specificity the factual basis for Your contention.

    **RESPONSE:**

**Interrogatory No. 18:** Identify all documents that concern the subject matter of Interrogatory No. 17.

    **RESPONSE:**

**Interrogatory No. 19:** Identify all information that You provided to any person or party authorized or directed by You to collect the alleged debt owed by Plaintiff. Identify all documents that concern the subject matter of this Interrogatory.

    **RESPONSE:**

**Interrogatory No. 20:** Identify all documents that concern the subject matter of Interrogatory No. 19.

RESPONSE:

**Interrogatory No. 21:** Identify each of Your employees, independent contractors and/or agents that provided medical services or supplies to Plaintiff concerning Your claim for an alleged debt from Plaintiff.

RESPONSE:

**Interrogatory No. 22:** Identify all documents that concern the subject matter of Interrogatory No. 21.

RESPONSE:

**Interrogatory No. 23:** State whether You determined if Plaintiff was entitled to financial assistance pursuant to any written financial assistance policy before You sought to collect the alleged debt from Plaintiff.

RESPONSE:

**Interrogatory No. 24:** Identify all documents that concern the subject matter of Interrogatory No. 23.

RESPONSE:

**Interrogatory No. 25:** Identify whether and what efforts You made to determine if Plaintiff qualified for a discount under Your financial assistance policy or any other policy, and whether You determined that such a discount would be provided.

RESPONSE:

**Interrogatory No. 26:** Identify all documents that concern the subject matter of Interrogatory No. 25.

RESPONSE:

**Interrogatory No. 27:** Set forth the factual basis for each and every affirmative defense pled in response to the Complaint.

RESPONSE:

**Interrogatory No. 28:** Identify all documents that concern the subject matter of Interrogatory No. 27.

**RESPONSE:**

**Interrogatory No. 29:** Describe the relationship You have with VHS.

**RESPONSE:**

**Interrogatory No. 30:** Identify all documents that concern Your response to Interrogatory No. 29.

**RESPONSE:**

**Interrogatory No. 31:** Identify the relationship You have with CFC.

**RESPONSE:**

**Interrogatory No. 32:** Identify all documents that concern Your response to Interrogatory No. 31.

**RESPONSE:**

**Interrogatory No. 33:** Identify all records or other documents searched in order to supply responsive answers to these interrogatories, including, but not limited to, a description of the records or other documents, the manner in which they have been kept since their generation, including all storage locations and current custodians, whether you believe responsive documents existed at one time that no longer exist and, if so, the basis for such belief, and the procedure utilized to examine such records to ascertain whether they were responsive to the discovery demands.

**RESPONSE:**

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

Pl. Ex. 33

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND D/B/A VALLEY | § | |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT SYNDICATED OFFICE SYSTEMS, LLC, INDIVIDUALLY AND D/B/A CENTRAL FINANCIAL CONTROL.

TO:   Defendant, Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control.

Plaintiff serves these interrogatories on Defendant Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control. ("Defendant"), as allowed by Texas Rule of Civil Procedure 197. Pursuant to Rules 190 and 197 of the Texas Rules of Civil Procedure, you are requested to provide answers to these Interrogatories within fifty (50) days of service of this request to Plaintiff's Counsel, William J. Akins, FisherBroyles, LLP, 100 Congress Avenue, Suite 2000, Austin, Texas 78701, E-Mail: william.akins@fisherbroyles.com, Telephone: (214) 924-9504, Facsimile: (214) 481-3768, in accordance with the Texas Rules of Civil Procedure.

PLAINTIFF'S FIRST SET OF INTERROGATORIES TO SYNDICATED OFFICE SYSTEMS, LLC, INDIVIDUALLY AND D/B/A CENTRAL FINANCIAL CONTROL

PAGE 1
*Plaintiff's Exhibit 33*

Respectfully submitted,

_____

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF

## I.   GENERAL INSTRUCTIONS

A.   These interrogatories are continuing in character so as to require the Responding Party to serve supplemental answers if the Responding Party obtains further, or different, information prior to trial.

B.   Each interrogatory is to be answered separately and completely.  The omission of any name, fact or other item of information from the answers of the Responding Party to these interrogatories shall be deemed by the Requesting Party to be a representation that such name, fact or item was not known to the Responding Party at the time the Responding Party certified to the truth of the answers.

C.   If the Responding Party contends that any interrogatory requests information contained in a privileged oral communication, the Responding Party must state:

   1.   the nature of the privilege asserted;

   2.   the subject matter to which the claim of privilege relates;

   3.   the name(s) of the person(s) from whom such information was obtained and to whom such information was communicated; and

   4.   the date the communication was made.

D.   If the Responding Party contends that any interrogatory requests information contained in a privileged document, state:

   1.   the nature of the privilege asserted;

2.  the date(s) the document was created;

3.  the date(s) the document was provided to all persons who received an original or copy of the document;

4.  the full name(s), address(es), and title(s) of the document's author(s), addressee(s) and all persons who received an original or copy of the document;

5.  whether the document is a letter, tape, disk, memorandum, written agreement, drawing, graph, photograph, etc.;

6.  the number of pages of the document or its file size if electronic form;

7.  the current location of the document and all copies of the document; and

8.  a description of the general content and substance of the document.

E.  When used in reference to any oral communication, the word "identify" requires the Responding Party to:

1.  state the name, address and telephone number of the person(s) by whom it was made, the person(s) to whom it was made and the person(s) present at the time it was made;

2.  state the date or best approximate date it was made;

3.  state the location where the communication was made;

4.  describe the complete content and substance of the communication.

F.  When used in reference to a document, the word "identify" requires the Responding Party to:

1.  state the date appearing on such document, or if no date so appears, to so state and to give the date or best approximate date on which such document was prepared or created;

2.  provide identifying labels, code numbers, file numbers, names, markings or titles;

3.  state whether the document is a letter, tape, disk, memorandum, written agreement, drawing, graph, photograph, etc.;

4. state the document's number of pages;

5. set forth in writing the document's authors, including those who did not sign it;

6. set forth in writing every recipient of an original or copy of the document;

7. set forth in writing every person who possessed, controlled or otherwise had custody of the document;

8. attach a copy of the document to the Responding Party's answers to these interrogatories; and

9. describe the document's complete content and substance.

G.  As used in these interrogatories, the words "state" and "describe" require the Responding Party to fully put into words the act, transaction, relationship, thing, or occurrence referred to in the interrogatory by reference to specific facts rather than conclusions of fact or law and further requires the Responding Party to provide the identity of:

1. the source(s) of the Responding Party's information concerning such fact, including the date on which the Responding Party first received such information;

2. each document relating to, referring to, or evidencing such fact;

3. each document which the Responding Party intends to offer in evidence to prove, or with respect to, such fact; and

4. each person having knowledge of such fact.

H.  In answering these interrogatories, furnish such information available to the Responding Party, not merely such information of the Responding Party's own personal knowledge.  This means the Responding Party is to furnish information that is known by, or in the possession of, the Responding Parties' employees, representatives, or agents, including the Responding Party's attorney(s), subject to Instructions C and D.

I.  Do not incorporate by reference facts contained in documents or publications; specify the precise facts, allegations, names, etc., called for by the interrogatories.

J.     In answering these interrogatories, words used in the singular shall include the plural and vice versa.   Furthermore, whenever a question is framed in the conjunctive, it shall be construed as the disjunctive, as well, and vice versa.  Finally, "all" refers to "any" and "each," and vice versa.

K.     If the Responding Party encounters any ambiguity in construing either an interrogatory or a definition or instruction relevant to the interrogatory, identify the matter deemed ambiguous and set forth the construction chosen or used in answering the interrogatory.   In all instances, the construction that results in the provision of the most facts or most comprehensive answers is intended and should be assumed.

L.     Whenever an objection is made to a sub-part of an interrogatory, an answer shall be furnished to the parts of the interrogatory to which there is no objection.

## II.   DEFINITIONS

A.     As used herein, the term "Document," and all forms thereof, means all tangible forms and electronic media in which information is stored and includes all written or graphic matter of every kind and description, however produced or reproduced, WHETHER DRAFT OR FINAL, original or reproduction,  (including writings, drawings, graphs, charts, photographs, phone-records, and other data compilations from which information can be obtained and translated, if necessary, by the Responding Party through electronic devices into reasonably usable form).   It includes but is not limited to letters; emails; correspondence; memoranda; notes; transcripts; contracts; agreements; licenses; applications; memoranda of telephone conversations or personal conversations; minutes of meetings; interoffice communications; reports; financial statements; ledgers; books of account; proposals; prospectuses; offers; orders; receipts; working papers; desk calendars; appointment books; diaries; time sheets; logs; recordings or materials similar to any of the foregoing; however denominated; and including writing; drawings; graphs; photographs; charts; invoices; diaries; oral conversations; meetings; reports of telephone conversations; all video and audio recordings; microfilm; microfiche; computer discs, including floppy discs and hard drives; CD-Rom; computer printout or tape; data processing results; printouts and computations, (both in existence and stored in memory components), and other compilations from which information can be obtained or translated, if necessary, through detective devices into reasonably usable form.

B.     The term "Document" also includes all copies of material containing any additional writing, underlining, notes, deletions, other markings or notations, or are otherwise not identical copies of the original whether actually or constructively possessed.   The production of all electronic data shall be in its original native form, and must include all metadata.

---

C.    As used in these interrogatories, "person or persons" means an individual, company, partnership, corporation, association, or any governmental agency, department or unit. A request to "identify" a person shall require the identification of his or her: 1) full name; 2) present or last known home or business address (including street name and number, city or town, and state); 3) telephone number; and 4) present or last known position, business affiliation, or job description. A request to "identify" a company, partnership, corporation, association, or any governmental agency, department or unit shall require the identification of its: 1) full name and type of organization or entity; 2) address of principal place of business; and 3) jurisdiction and date of incorporation or organization.

D.    As used in these interrogatories, "Action" means the above-captioned matter.

E.    As used in these interrogatories, "Complaint" means the Plaintiff's Complaint, which was filed by Plaintiff in the Action.

F.    As used in these interrogatories, "Answer" means Defendant's Answer which was, or will be, filed by Defendant in the Action.

G.    As used in these interrogatories, "communication" means the exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior.

H.    As used in these interrogatories, "concern" and "concerning" mean referring to, relating to, regarding, involving or otherwise evidencing the subject matter of the question.

I.    As used in these interrogatories, "Plaintiff", and all forms thereof, shall mean Plaintiff Bobby L. Mitchell, his agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on his behalf.

J.    As used in these interrogatories, "VHS" and all forms thereof shall mean VHS Harlingen Hospital Company, LLC, and its agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on its behalf.

K.    As used in these interrogatories, "VB" and all forms thereof shall mean Defendant VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center. and its agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on its behalf.

L.    As used in these interrogatories, "CFC" and all forms thereof shall mean Defendant Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control, and its agents, attorneys, directors, employees, officers, representatives

and any other person who acts or has acted on its behalf. "You" shall mean Defendant CFC.

M.     As used in these interrogatories, "Credit Reporting Agencies" and all forms thereof shall mean the following credit reporting agencies, and their collective and respective agents, attorneys, directors, employees, officers, representatives and any other person who acts or has acted on their behalves:  Equifax, Experian, and TransUnion.

N.     As used in these interrogatories, "Dates of Service" and all forms thereof shall mean the medical services and supplies received by Plaintiff on or about September 10, 2013, September 13, 2013, and February 24, 2014.

O.     As used in these interrogatories, "Chargemaster List" and all forms thereof shall mean the list of all medical service, procedures, and supplies provided by VHS/VB during the Dates of Service.

## III.   INTERROGATORIES

**Interrogatory No. 1:** Identify all communications between You and Plaintiff concerning the medical services and supplies provided to Plaintiff by VHS/VB, which provision of medical services and supplies occurred during the Dates of Service.

**RESPONSE:**

**Interrogatory No. 2:** Identify all documents that concern each communication identified in Interrogatory No. 1.

**RESPONSE:**

**Interrogatory No. 3:** Identify all communications between You and any Credit Reporting Agency concerning Plaintiff's alleged debt for medical services and supplies provided to Plaintiff by VHS/VB, which provision of medical services and supplies occurred during the Dates of Service.

**RESPONSE:**

**Interrogatory No. 4:** Identify all documents that concern each communication identified in Interrogatory No. 3.

**RESPONSE:**

**Interrogatory No. 5:** Identify all communications between You and any Credit Reporting Agency concerning Plaintiff's alleged debt for medical services and supplies, which provision of medical services and supplies occurred during the Dates of Service.

**RESPONSE:**

**Interrogatory No. 6:** Identify all documents that concern each communication identified in Interrogatory No. 5.

**RESPONSE:**

**Interrogatory No. 7:** State when and how You investigated the accuracy of Plaintiff's alleged debt to VHS/VB as provided in the Texas Debt Collection Practices Act, Texas Finance Code § 392.202.

**RESPONSE:**

**Interrogatory No. 8:** Identify all documents that concern Your response to Interrogatory No. 7.

**RESPONSE:**

**Interrogatory No. 9:** Identify what documents You reviewed to investigate the accuracy of Plaintiff's alleged debt to VHS/VB as provided in the Texas Debt Collection Practices Act, Texas Finance Code § 392.202.

**RESPONSE:**

**Interrogatory No. 10:** Identify all documents that concern Your response to Interrogatory No. 9.

**RESPONSE:**

**Interrogatory No. 11:** Identify what relationship, if any, You have with VB, including, without limitation, any parent, subsidiary, or affiliate.

**RESPONSE:**

**Interrogatory No. 12:** Identify all documents that concern Your response to Interrogatory No. 11.

**RESPONSE:**

**Interrogatory No. 13:** Identify what relationship, if any, You have with VHS, including, without limitation, any parent, subsidiary, or affiliate.

**RESPONSE:**

**Interrogatory No. 14:** Identify all documents that concern Your response to Interrogatory No. 13.

**RESPONSE:**

**Interrogatory No. 15:** Identify all information that VHS/VB provided to You for collection of the alleged debt owed by Plaintiff to VHS/VB.

**RESPONSE:**

**Interrogatory No. 16:** Identify all documents that concern Your response to Interrogatory No. 15.

**RESPONSE:**

**Interrogatory No. 17:** Identify each of Your employees, independent contractors and/or agents that sought to collect the alleged debt from Plaintiff.

**RESPONSE:**

**Interrogatory No. 18:** Identify all documents that concern the subject matter of Interrogatory No. 17.

**RESPONSE:**

**Interrogatory No. 19:** Identify the relationship You have with VHS/VB.

**RESPONSE:**

**Interrogatory No. 20:** Identify all documents that concern Your response to Interrogatory No. 19.

**RESPONSE:**

**Interrogatory No. 21:** Identify all records or other documents searched in order to supply responsive answers to these interrogatories, including, but not limited to, a description of the records or other documents, the manner in which they have been kept since their generation, including all storage locations and current custodians, whether you believe responsive documents existed at one time that no longer exist and, if so, the basis for such belief, and the procedure utilized to examine such records to ascertain whether they were responsive to the discovery demands.

**RESPONSE:**

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

Pl. Ex. 34

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND D/B/A VALLEY | § | |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO
## DEFENDANT VHS HARLINGEN HOSPITAL COMPANY, LLC.

TO:   Defendant VHS Harlingen Hospital Company, LLC.

Plaintiff serves this request for production on Defendant VHS Harlingen Hospital Company, LLC ("Defendant"), as allowed by Texas Rule of Civil Procedure 196. Defendant must produce all requested documents (as they are kept in the ordinary course of business or organized and labeled to correspond with categories in each request) for inspection and copying, not more than 50 days after service to Plaintiff's Counsel, William J. Akins, FisherBroyles, LLP, 100 Congress Avenue, Suite 2000, Austin, Texas 78701, E-Mail: william.akins@fisherbroyles.com, Telephone: (214) 924-9504, Facsimile: (214) 481-3768, in accordance with the Texas Rules of Civil Procedure.

Respectfully submitted,

_____

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF

## I.   GENERAL INSTRUCTIONS

The Requesting Party incorporates the Instructions set forth in her First Set of Interrogatories propounded upon Defendant.  In addition to the Instructions contained therein, the Requesting Party instructs as follows:

A.   You are required to serve a written response to this request within the time prescribed by the Rules of Court, which response shall state, with respect to each item or category of documents or other tangible things requested, that inspection and related activities will be permitted as requested, unless any request is objected to, in which event the reasons for objection shall be stated.

B.   To the extent You refuse to produce any requested document (as defined herein) on the basis of a claim of privilege, confidentiality or the work-product doctrine, or any other immunity, You shall state the following for each such document:

1.   whether the document exists;

2.   the date the document was prepared;

3.   the type of document (i.e., three-page letter, one-paragraph memorandum);

4.   the subject matter or title of the document;

5.   each person who authored the document and his or her business title or position;

6.   all intended recipients of the document;

   7. all persons or organizations who have reviewed or at any time possessed the document;

   8. the location of the original and all copies of the document; and

   9. the nature of and basis for the privilege or immunity claimed.

C. If any document (as defined herein) sought in these requests has been misplaced, destroyed, erased or cannot be located, state the following separately for each such document:

   1. the request to which the document is responsive;

   2. the date of the document;

   3. the type of document (i.e., letter, memorandum, etc.);

   4. the subject matter of the document and its title;

   5. all recipients of the document and the business, legal title or position of each;

   6. each person who authored the document and his or her business, legal title or position;

   7. the last known location of the document; and

   8. the reason the document cannot be produced (i.e., misplaced, destroyed, cannot be located, etc.).

D. Where anything has been deleted from a document produced in response to this production request:

   1. specify the nature of the material deleted;

   2. specify the reason for the deletion; and

   3. identify the person responsible for the deletion.

E.   Each of the following requests shall be deemed a continuing request up to and until the time of trial.

F.   Your refusal to produce any document or the objection to any request in no way excuses You from timely production of all other documents requested herein.

G.   These document requests are deemed to be continuing in character so as to require You to serve supplemental responses if You obtain further or different documents prior to trial.  Such supplemental responses may be served from time-to-time, but in any event, not later than fifteen (15) days after such information is received.


## II.   DEFINITIONS

The Requesting Party incorporates the definitions set forth in his First Set of Interrogatories propounded upon Defendant.  In addition to the definitions contained therein, the Requesting Party provides the following additional definitions:

A.   **Archive:**  A long-term storage area, often on magnetic tape, for backup copies of files or for files no longer in active use; or the act of copying files to long-term storage medium for backup.  An archive copy is typically maintained for historical reference.

B.   **Backup:**  A snapshot of data at a specific point in time, typically stored on tape or disk.

C.   **Computer:**  Any programmable machine, including, but not limited to, network servers, desktops, laptops, notebook computers, employees' home computers, mainframes, the PDAs of the Responding Party and its employees (personal digital assistants, such as PalmPilot, Blackberry, Cassiopeia, HP Jornada and other such handheld computing devices), digital cell phones and pagers.

D.   **Data:**  Distinct pieces of information formulated in a special way for reading, storage or access on a computer.  The production of all electronic data shall be in its original native form, and must include all metadata.

E.   **Document:**  In addition to the definition set forth in the contemporaneously served interrogatories, this term shall include any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); any electronic files saved as backup; any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory [RAM] on a hard drive during the normal operation of a computer [file slack and or RAM

slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

F.    **Hard Drive:**  The mechanism that reads and writes data on a hard disk.  A hard drive is the primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

## III.    REQUESTS FOR PRODUCTION

1.    Any and all documents identified by You in Your answers to Plaintiff's First Set of Interrogatories.

2.    Any and all documents relied upon by You in formulating Your answers to Plaintiff's First Set of Interrogatories.

3.    Any and all documents that concern any of the allegations as set forth in the Complaint.

4.    Exact copies of all documents concerning medical services and supplies provided to Plaintiff by You, which provision of medical services and supplies occurred during the Dates of Service, including, but not limited to, admission paperwork, medical records, bills, acceptance of insurance payments, and documents concerning collection of an alleged debt.

5.    Exact copies of all documents that concern communications between You and Plaintiff.

6.    Exact copies of all documents that concern communications between You and any other person or entity concerning the collection of the alleged debt allegedly owed by Plaintiff to You.

7.    Exact copies of all documents that You provided to any third party to collect the alleged debt from Plaintiff.

8.    Exact copies of all documents that concern communications between You and any Credit Reporting Agency relating to Plaintiff.

9.    Exact copies of all documents that concern Your Chargemaster List as it relates to each and every medical service and supply provided to Plaintiff by You during the Dates of Service.

10.    Exact copies of all documents that concern Your file on Plaintiff.

11.    Exact copies of all documents that concern Your calculation of charges on the Chargemaster List for those medical procedures and services that You provided to Plaintiff.

12.    Exact copies of all documents that concern each and every medical service and supply that You provided to Plaintiff, which provision of medical services and supplies occurred during the Dates of Service.

13. Exact copies of all documents that concern the amount You charged Plaintiff for each and every medical service and supply that You provided to Plaintiff, which provision of medical services and supplies occurred during the Dates of Service.

14. Exact copies of all documents that You may introduce at trial as impeachment documents.

15. Without identifying the name or other identifying information of other patients, exact copies of all documents concerning what You have charged other patients for the three years prior to Plaintiff's admission to You for each and every medical service and supply that You provided to Plaintiff.

16. Without identifying the name or other identifying information of other patients, exact copies of all documents concerning what You have accepted as payment in full from other patients for the three years prior to Plaintiff's admission to You for each and every medical service and supply that You provided to Plaintiff.

17. Exact copies of all documents concerning payments made by or on behalf of Plaintiff for the medical services and supplies You provided to Plaintiff.

18. Exact copies of all documents concerning Your acceptance of any insurance or self-funded plan benefits of Plaintiff.

19. Exact copies of all documents concerning Your relationship with VB, including, but not limited to, contracts, bylaws, and articles of incorporation.

20. Exact copies of all documents concerning Your relationship with CFC, including, but not limited to, contracts, bylaws, and articles of incorporation.

21. Exact copies of all documents obtained by You through subpoena concerning this case.

22. Exact copies of all documents that You intend to introduce or rely upon at time of trial in connection with this case.

23. Exact copies of all documents and communications provided to You by third parties in connection with this case.

24. Exact copies of all documents and communications You provided to third parties in connection with this case.

25. Exact copies of all documents provided to You by Defendants in connection with this case.

26. Exact copies of all documents provided to Plaintiff by You in connection with this case.

27. Exact copies of all documents between You and any of Your employees, independent contractors, or agents that provided medical services or supplies to Plaintiff.

28. Exact copies of Your bylaws and articles of incorporation, including, but not limited to, a list of your current officers and directors.

29.     Exact copies of Your Financial Assistance Policy.

30.     Exact copies of all documentation concerning whether You determined whether Plaintiff qualified for financial assistance before attempting to collect an alleged debt from Plaintiff.

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

Pl. Ex. 35

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND D/B/A VALLEY | § | |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT VB HARLINGEN HOLDINGS, INDIVIDUALLY AND D/B/A VALLEY BAPTIST MEDICAL CENTER.

TO:     Defendant VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center.

Plaintiff serves this request for production on Defendant VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center ("Defendant"), as allowed by Texas Rule of Civil Procedure 196. Defendant must produce all requested documents (as they are kept in the ordinary course of business or organized and labeled to correspond with categories in each request) for inspection and copying, not more than 50 days after service to Plaintiff's Counsel, William J. Akins, FisherBroyles, LLP, 100 Congress Avenue, Suite 2000, Austin, Texas 78701, E-Mail: william.akins@fisherbroyles.com, Telephone: (214) 924-9504, Facsimile: (214) 481-3768, in accordance with the Texas Rules of Civil Procedure.

Respectfully submitted,

_____

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF

## I.     GENERAL INSTRUCTIONS

The Requesting Party incorporates the Instructions set forth in her First Set of Interrogatories propounded upon Defendant. In addition to the Instructions contained therein, the Requesting Party instructs as follows:

A.    You are required to serve a written response to this request within the time prescribed by the Rules of Court, which response shall state, with respect to each item or category of documents or other tangible things requested, that inspection and related activities will be permitted as requested, unless any request is objected to, in which event the reasons for objection shall be stated.

B.    To the extent You refuse to produce any requested document (as defined herein) on the basis of a claim of privilege, confidentiality or the work-product doctrine, or any other immunity, You shall state the following for each such document:

1.    whether the document exists;

2.    the date the document was prepared;

3.    the type of document (i.e., three-page letter, one-paragraph memorandum);

4.    the subject matter or title of the document;

5.    each person who authored the document and his or her business title or position;

6.    all intended recipients of the document;

      7.   all persons or organizations who have reviewed or at any time possessed the document;

      8.   the location of the original and all copies of the document; and

      9.   the nature of and basis for the privilege or immunity claimed.

C.    If any document (as defined herein) sought in these requests has been misplaced, destroyed, erased or cannot be located, state the following separately for each such document:

      1.   the request to which the document is responsive;

      2.   the date of the document;

      3.   the type of document (i.e., letter, memorandum, etc.);

      4.   the subject matter of the document and its title;

      5.   all recipients of the document and the business, legal title or position of each;

      6.   each person who authored the document and his or her business, legal title or position;

      7.   the last known location of the document; and

      8.   the reason the document cannot be produced (i.e., misplaced, destroyed, cannot be located, etc.).

D.    Where anything has been deleted from a document produced in response to this production request:

      1.   specify the nature of the material deleted;

      2.   specify the reason for the deletion; and

      3.   identify the person responsible for the deletion.

E.   Each of the following requests shall be deemed a continuing request up to and until the time of trial.

F.   Your refusal to produce any document or the objection to any request in no way excuses You from timely production of all other documents requested herein.

G.   These document requests are deemed to be continuing in character so as to require You to serve supplemental responses if You obtain further or different documents prior to trial. Such supplemental responses may be served from time-to-time, but in any event, not later than fifteen (15) days after such information is received.

## II.   DEFINITIONS

The Requesting Party incorporates the definitions set forth in his First Set of Interrogatories propounded upon Defendant. In addition to the definitions contained therein, the Requesting Party provides the following additional definitions:

A.   **Archive:**  A long-term storage area, often on magnetic tape, for backup copies of files or for files no longer in active use; or the act of copying files to long-term storage medium for backup. An archive copy is typically maintained for historical reference.

B.   **Backup:**  A snapshot of data at a specific point in time, typically stored on tape or disk.

C.   **Computer:**  Any programmable machine, including, but not limited to, network servers, desktops, laptops, notebook computers, employees' home computers, mainframes, the PDAs of the Responding Party and its employees (personal digital assistants, such as PalmPilot, Blackberry, Cassiopeia, HP Jornada and other such handheld computing devices), digital cell phones and pagers.

D.   **Data:**  Distinct pieces of information formulated in a special way for reading, storage or access on a computer. The production of all electronic data shall be in its original native form, and must include all metadata.

E.   **Document:**  In addition to the definition set forth in the contemporaneously served interrogatories, this term shall include any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); any electronic files saved as backup; any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory [RAM] on a hard drive during the normal operation of a computer [file slack and or RAM

slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

F. **Hard Drive:** The mechanism that reads and writes data on a hard disk. A hard drive is the primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

## III.  REQUESTS FOR PRODUCTION

1.  Any and all documents identified by You in Your answers to Plaintiff's First Set of Interrogatories.

2.  Any and all documents relied upon by You in formulating Your answers to Plaintiff's First Set of Interrogatories.

3.  Any and all documents that concern any of the allegations as set forth in the Complaint.

4.  Exact copies of all documents concerning medical services and supplies provided to Plaintiff by You, which provision of medical services and supplies occurred during the Dates of Service, including, but not limited to, admission paperwork, medical records, bills, acceptance of insurance payments, and documents concerning collection of an alleged debt.

5.  Exact copies of all documents that concern communications between You and Plaintiff.

6.  Exact copies of all documents that concern communications between You and any other person or entity concerning the collection of the alleged debt allegedly owed by Plaintiff to You.

7.  Exact copies of all documents that You provided to any third party to collect the alleged debt from Plaintiff.

8.  Exact copies of all documents that concern communications between You and any Credit Reporting Agency relating to Plaintiff.

9.  Exact copies of all documents that concern Your Chargemaster List as it relates to each and every medical service and supply provided to Plaintiff by You during the Dates of Service.

10.  Exact copies of all documents that concern Your file on Plaintiff.

11.  Exact copies of all documents that concern Your calculation of charges on the Chargemaster List for those medical procedures and services that You provided to Plaintiff.

12.  Exact copies of all documents that concern each and every medical service and supply that You provided to Plaintiff, which provision of medical services and supplies occurred

during the Dates of Service.

13. Exact copies of all documents that concern the amount You charged Plaintiff for each and every medical service and supply that You provided to Plaintiff, which provision of medical services and supplies occurred during the Dates of Service.

14. Exact copies of all documents that You may introduce at trial as impeachment documents.

15. Without identifying the name or other identifying information of other patients, exact copies of all documents concerning what You have charged other patients for the three years prior to Plaintiff's admission to You for each and every medical service and supply that You provided to Plaintiff.

16. Without identifying the name or other identifying information of other patients, exact copies of all documents concerning what You have accepted as payment in full from other patients for the three years prior to Plaintiff's admission to You for each and every medical service and supply that You provided to Plaintiff.

17. Exact copies of all documents concerning payments made by or on behalf of Plaintiff for the medical services and supplies You provided to Plaintiff.

18. Exact copies of all documents concerning Your acceptance of any insurance or self-funded plan benefits of Plaintiff.

19. Exact copies of all documents concerning Your relationship with VHS, including, but not limited to, contracts, bylaws, and articles of incorporation.

20. Exact copies of all documents concerning Your relationship with CFC, including, but not limited to, contracts, bylaws, and articles of incorporation.

21. Exact copies of all documents obtained by You through subpoena concerning this case.

22. Exact copies of all documents that You intend to introduce or rely upon at time of trial in connection with this case.

23. Exact copies of all documents and communications provided to You by third parties in connection with this case.

24. Exact copies of all documents and communications You provided to third parties in connection with this case.

25. Exact copies of all documents provided to You by Defendants in connection with this case.

26. Exact copies of all documents provided to Plaintiff by You in connection with this case.

27. Exact copies of all documents between You and any of Your employees, independent

contractors, or agents that provided medical services or supplies to Plaintiff.

28. Exact copies of Your bylaws and articles of incorporation, including, but not limited to, a list of your current officers and directors.

29. Exact copies of Your Financial Assistance Policy.

30. Exact copies of all documentation concerning whether You determined whether Plaintiff qualified for financial assistance before attempting to collect an alleged debt from Plaintiff.

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

Pl. Ex. 36

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND D/B/A VALLEY | § | |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT SYNDICATED OFFICE SYSTEMS, LLC, INDIVIDUALLY AND D/B/A CENTRAL FINANCIAL CONTROL.

TO:     Defendant, Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control.

Plaintiff serves this request for production on Defendant, Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control, ("Defendant") as allowed by Texas Rule of Civil Procedure 196. Defendant must produce all requested documents (as they are kept in the ordinary course of business or organized and labeled to correspond with categories in each request) for inspection and copying, not more than 50 days after service to Plaintiff's Counsel, William J. Akins, FisherBroyles, LLP, 100 Congress Avenue, Suite 2000, Austin, Texas 78701, E-Mail: william.akins@fisherbroyles.com, Telephone: (214) 924-9504, Facsimile: (214) 481-3768, in accordance with the Texas Rules of Civil Procedure.

PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO SYNDICATED OFFICE SYSTEMS, LLC, INDIVIDUALLY AND D/B/A CENTRAL FINANCIAL CONTROL.

PAGE 1
*Plaintiff's Exhibit 36*

Respectfully submitted,

_____

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF


## I.      GENERAL INSTRUCTIONS

The Requesting Party incorporates the Instructions set forth in his First Set of Interrogatories propounded upon Defendant.  In addition to the Instructions contained therein, the Requesting Party instructs as follows:

A.     You are required to serve a written response to this request within the time prescribed by the Rules of Court, which response shall state, with respect to each item or category of documents or other tangible things requested, that inspection and related activities will be permitted as requested, unless any request is objected to, in which event the reasons for objection shall be stated.

B.     To the extent You refuse to produce any requested document (as defined herein) on the basis of a claim of privilege, confidentiality or the work-product doctrine, or any other immunity, You shall state the following for each such document:

1.   whether the document exists;

2.   the date the document was prepared;

3.   the type of document (i.e., three-page letter, one-paragraph memorandum);

4.   the subject matter or title of the document;

5.   each person who authored the document and his or her business title or position;

6.   all intended recipients of the document;

      7.   all persons or organizations who have reviewed or at any time possessed the document;

      8.   the location of the original and all copies of the document; and

      9.   the nature of and basis for the privilege or immunity claimed.

C.    If any document (as defined herein) sought in these requests has been misplaced, destroyed, erased or cannot be located, state the following separately for each such document:

      1.   the request to which the document is responsive;

      2.   the date of the document;

      3.   the type of document (i.e., letter, memorandum, etc.);

      4.   the subject matter of the document and its title;

      5.   all recipients of the document and the business, legal title or position of each;

      6.   each person who authored the document and his or her business, legal title or position;

      7.   the last known location of the document; and

      8.   the reason the document cannot be produced (i.e., misplaced, destroyed, cannot be located, etc.).

D.    Where anything has been deleted from a document produced in response to this production request:

      1.   specify the nature of the material deleted;

      2.   specify the reason for the deletion; and

      3.   identify the person responsible for the deletion.

E.     Each of the following requests shall be deemed a continuing request up to and until the time of trial.

F.     Your refusal to produce any document or the objection to any request in no way excuses You from timely production of all other documents requested herein.

G.     These document requests are deemed to be continuing in character so as to require You to serve supplemental responses if You obtain further or different documents prior to trial. Such supplemental responses may be served from time-to-time, but in any event, not later than fifteen (15) days after such information is received.

## II.   DEFINITIONS

The Requesting Party incorporates the definitions set forth in his First Set of Interrogatories propounded upon Defendant. In addition to the definitions contained therein, the Requesting Party provides the following additional definitions:

A.     **Archive:** A long-term storage area, often on magnetic tape, for backup copies of files or for files no longer in active use; or the act of copying files to long-term storage medium for backup. An archive copy is typically maintained for historical reference.

B.     **Backup:** A snapshot of data at a specific point in time, typically stored on tape or disk.

C.     **Computer:** Any programmable machine, including, but not limited to, network servers, desktops, laptops, notebook computers, employees' home computers, mainframes, the PDAs of the Responding Party and its employees (personal digital assistants, such as PalmPilot, Blackberry, Cassiopeia, HP Jornada and other such handheld computing devices), digital cell phones and pagers.

D.     **Data:** Distinct pieces of information formulated in a special way for reading, storage or access on a computer. The production of all electronic data shall be in its original native form, and must include all metadata.

E.     **Document:** In addition to the definition set forth in the contemporaneously served interrogatories, this term shall include any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); any electronic files saved as backup; any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory [RAM] on a hard drive during the normal operation of a computer [file slack and or RAM

slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

F.      **Hard Drive:** The mechanism that reads and writes data on a hard disk.  A hard drive is the primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

## III.    REQUESTS FOR PRODUCTION

1.      Any and all documents identified by You in Your answers to the contemporaneously served Interrogatories.

2.      Any and all documents relied upon by You in formulating Your answers to the contemporaneously served Interrogatories.

3.      Any and all documents that concern any of the allegations as set forth in the Petition.

4.      Any and all documents relied upon by You in formulating Your Answer to the Petition.

5.      Exact copies of all documents provided by VHS/VB to You concerning collection of the alleged debt owed by Plaintiff to VHS/VB.

6.      Exact copies of all documents provided by You to VHS/VB concerning collection of the alleged debt owed by Plaintiff to VHS/VB.

7.      Exact copies of all documents provided by VHS/VB to You concerning Plaintiff.

8.      Exact copies of all documents provided by VHS/VB to You concerning collection of the alleged debt owed by Plaintiff to VHS/VB.

9.      Exact copies of all documents provided by You to Plaintiff concerning collection of the alleged debt owed by Plaintiff to VHS/VB.

10.     Exact copies of all documents provided by Plaintiff to You concerning collection of the alleged debt owed by Plaintiff to VHS/VB.

11.     Exact copies of all documents that concern communications between You and Plaintiff concerning collection of the alleged debt.

12.     Exact copies of all documents that concern communications between You and VHS/VB concerning collection of the alleged debt.

13.     Exact copies of all documents that concern communications between You and VHS/VB relating to the medical services and supplies provided to Plaintiff by VHS/VB.

14.     Exact copies of all documents that concern communications between You and any Credit Reporting Agency relating to Plaintiff.

15.     Exact copies of all documents that concern Your file on Plaintiff.

16.     Exact copies of all documents that You may introduce at trial as impeachment documents.

17.     Exact copies of all documents concerning payments made by or on behalf of Plaintiff for the medical services and supplies VHS/VB provided to Plaintiff.

18.     Exact copies of all documents concerning Your relationship with VHS, including, but not limited to, contracts, bylaws, and articles incorporation.

19.     Exact copies of all documents concerning Your relationship with VB, including, but not limited to, contracts, bylaws, and articles incorporation.

20.     Exact copies of all documents obtained by You through subpoena that concern this case.

21.     Exact copies of all documents that You intend to introduce or rely upon at time of trial in connection with this case.

22.     Exact copies of all documents and communications provided to You by third parties in connection with this case.

23.     Exact copies of all documents and communications You provided to third parties in connection with this case.

24.     Exact copies of all documents that You provided to Plaintiff.

25.     Exact copies of all documents that Plaintiff provided to You.

26.     Exact copies of Your bylaws, articles of formation, and trade name designations, including, but not limited to, a list of your current officers and directors.

27.     Exact copies of the "Code of Conduct" that You expect Your employees to practice and adhere to.

28.     Exact copies of the "Mission and Values Statement" that You expect Your employees to practice and adhere to.

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

# Pl. Ex. 37

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | |
| INDIVIDUALLY AND D/B/A VALLEY | § | _____ JUDICIAL DISTRICT |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S NOTICE OF ORAL DEPOSITION OF DEFENDANT VHS HARLINGEN HOSPITAL COMPANY, LLC.

TO:    Defendant VHS Harlingen Hospital Company, LLC.

Please take notice that, under Texas Rule of Civil Procedure 199.2, Plaintiff will take the oral deposition of Defendant VHS Harlingen Hospital Company, LLC ("VHS") on March 9, 2016 beginning at 10 a.m. at the office of Plaintiff's Counsel, 100 Congress Avenue, Suite 2000, Austin, TX 78701. VHS is directed to designate a person or persons to testify on its behalf about the following matters identified in *Schedule A* attached hereto. The deposition will take place before a duly authorized court reporter from US Legal Support, may be videotaped, and will continue from day to day until completed.

Respectfully submitted,

_____

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF

## SCHEDULE A

### I.    DEFINITIONS

Capitalized terms shall have the meaning provided in Plaintiff's first set of interrogatories directed to VHS, or as otherwise provided herein.

### II.    TOPICS FOR EXAMINATION

1.   The designated representative or representatives of VHS with the most knowledge of the claims and defenses in relation to the Complaint.

2.   The designated representative or representatives of VHS with the most knowledge of the charges to Plaintiff for medical services and supplies provided to Plaintiff on September 10, 2013, September 13, 2013, and February 24, 2014 (the "Dates of Service").

3.   The designated representative or representatives of VHS with the most knowledge of the communications between it and Plaintiff concerning the medical services and supplies provided to Plaintiff during the Dates of Service, including, but not limited to, (a) pre-admission communications, (b) the services and supplies that were provided to Plaintiff, (c) the cost of the services and supplies that were provided to Plaintiff, (d) VHS's Chargemaster List, (e) acceptance of insurance payments, (f) collection of the alleged outstanding amount, and (g) reporting to credit reporting agencies.

4.   The designated representative or representatives of VHS with the most knowledge of the communications between it and any third party, entity, or person, including, but not limited to, Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control and VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center, concerning the medical services and supplies provided to Plaintiff during the Dates of Service, including, but not limited to, (a) pre-admission communications, (b) the services and supplies that were provided to Plaintiff, (c) the cost of the services and supplies that were provided to

Plaintiff, (d) VHS's Chargemaster List, (e) acceptance of insurance payments, (f) collection of the alleged outstanding amount, and (g) reporting to credit reporting agencies.

5.   The designated representative or representatives of VHS with the most knowledge of communications with any credit reporting agency concerning Plaintiff's alleged debt for medical services and supplies provided to Plaintiff by VHS, which provision of medical services supplies took place during the Dates of Service.

6.   The designated representative or representatives of VHS with the most knowledge of its Chargemaster List during the Dates of Service.

7.   The designated representative or representatives of VHS with the most knowledge of how its costs are determined and calculated for each medical service and supply provided to Plaintiff by VHS during the Dates of Service.

8.   The designated representative or representatives of Plaintiff with the most knowledge of what it has charged other patients for the two years prior to Plaintiff's admission to VHS for each and every medical service and supply that VHS provided to Plaintiff.

9.   The designated representative or representatives of VHS with the most knowledge of what it has accepted as payment in full from or on behalf of other patients for the two years prior to Plaintiff's admission to VHS for each and every medical service and supply that VHS provided to Plaintiff.

10. The designated representative or representatives of VHS with the most knowledge of its billing and collection practices for medical services and supplies.

11. The designated representative or representatives of VHS with the most knowledge of its relationship with (a) Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control and (b) VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center.

12. The designated representative or representatives of VHS with the most knowledge of its financial assistance policy.

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

# Pl. Ex. 38

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND D/B/A VALLEY | § | |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S NOTICE OF ORAL DEPOSITION OF
## DEFENDANT VB HARLINGEN HOLDINGS, INDIVIDUALLY
## AND D/B/A VALLEY BAPTIST MEDICAL CENTER.

TO:   Defendant VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center.

Please take notice that, under Texas Rule of Civil Procedure 199.2, Plaintiff will take the oral deposition of Defendant VB Harlingen Holdings, Individually and D/B/A Valley Baptist Medical Center ("VB") on March 10, 2016 beginning at 10 a.m. at the office of Plaintiff's Counsel, 100 Congress Avenue, Suite 2000, Austin, TX 78701.  VB is directed to designate a person or persons to testify on its behalf about the following matters identified in *Schedule A* attached hereto. The deposition will take place before a duly authorized court reporter from US Legal Support, may be videotaped, and will continue from day to day until completed.

Respectfully submitted,

_____

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF

## SCHEDULE A

### I.      DEFINITIONS

Capitalized terms shall have the meaning provided in Plaintiff's first set of interrogatories directed to VB, or as otherwise provided herein.

### II.     TOPICS FOR EXAMINATION

1.   The designated representative or representatives of VB with the most knowledge of the claims and defenses in relation to the Complaint.

2.   The designated representative or representatives of VB with the most knowledge of the charges to Plaintiff for medical services and supplies provided to Plaintiff on September 10, 2013, September 13, 2013, and February 24, 2014 (the "Dates of Service").

3.   The designated representative or representatives of VB with the most knowledge of the communications between it and Plaintiff concerning the medical services and supplies provided to Plaintiff during the Dates of Service, including, but not limited to, (a) pre-admission communications, (b) the services and supplies that were provided to Plaintiff, (c) the cost of the services and supplies that were provided to Plaintiff, (d) VB's Chargemaster List, (e) acceptance of insurance payments, (f) collection of the alleged outstanding amount, and (g) reporting to credit reporting agencies.

4.   The designated representative or representatives of VB with the most knowledge of the communications between it and any third party, entity, or person, including, but not limited to, Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control and VHS Harlingen Hospital Company, LLC, concerning the medical services and supplies provided to Plaintiff during the Dates of Service, including, but not limited to, (a) pre-admission

communications, (b) the services and supplies that were provided to Plaintiff, (c) the cost of the services and supplies that were provided to Plaintiff, (d) VB's Chargemaster List, (e) acceptance of insurance payments, (f) collection of the alleged outstanding amount, and (g) reporting to credit reporting agencies.

5.   The designated representative or representatives of VB with the most knowledge of communications with any credit reporting agency concerning Plaintiff's alleged debt for medical services and supplies provided to Plaintiff by VB, which provision of medical services supplies took place during the Dates of Service.

6.   The designated representative or representatives of VB with the most knowledge of its Chargemaster List during the Dates of Service.

7.   The designated representative or representatives of VB with the most knowledge of how its costs are determined and calculated for each medical service and supply provided to Plaintiff by VB during the Dates of Service.

8.   The designated representative or representatives of Plaintiff with the most knowledge of what it has charged other patients for the two years prior to Plaintiff's admission to VB for each and every medical service and supply that VB provided to Plaintiff.

9.   The designated representative or representatives of VB with the most knowledge of what it has accepted as payment in full from or on behalf of other patients for the two years prior to Plaintiff's admission to VB for each and every medical service and supply that VB provided to Plaintiff.

10. The designated representative or representatives of VB with the most knowledge of its billing and collection practices for medical services and supplies.

11. The designated representative or representatives of VB with the most knowledge of its relationship with (a) Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control and (b) VHS Harlingen Hospital Company, LLC.

12. The designated representative or representatives of VB with the most knowledge of its financial assistance policy.

FILED
2016-DCL-00459
1/19/2016 5:15:02 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
8685690

# Pl. Ex. 39

CAUSE NO. _____

| | | |
|---|---|---|
| BOBBY L. MITCHELL, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| VHS HARLINGEN HOSPITAL COMPANY, | § | |
| LLC, VB HARLINGEN HOLDINGS, | § | _____ JUDICIAL DISTRICT |
| INDIVIDUALLY AND D/B/A VALLEY | § | |
| BAPTIST MEDICAL CENTER, AND | § | |
| SYNDICATED OFFICE SYSTEMS, LLC, | § | |
| INDIVIDUALLY AND D/B/A CENTRAL | § | |
| FINANCIAL CONTROL, | § | |
| | § | |
| *Defendants.* | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S NOTICE OF ORAL DEPOSITION OF DEFENDANT SYNDICATED OFFICE SYSTEMS, LLC, INDIVIDUALLY AND D/B/A CENTRAL FINANCIAL CONTROL.

TO:     Defendant Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control.

Please take notice that, under Texas Rule of Civil Procedure 199.2, Plaintiff will take the oral deposition of Defendant Syndicated Office Systems, LLC, Individually and D/B/A Central Financial Control, ("CFC") on March 11, 2016, beginning at 10 a.m. at the office of Plaintiff's Counsel, 100 Congress Avenue, Suite 2000, Austin, TX 78701. Defendant CFC is directed to designate a person or persons to testify on its behalf about the following matters identified in *Schedule A* attached hereto. The deposition will take place before a duly authorized court reporter from US Legal Support, may be videotaped, and will continue from day to day until completed.

Respectfully submitted,

_____

William J. Akins
State Bar No. 2401197
FISHERBROYLES, LLP
100 Congress Avenue, Suite 2000
Austin, Texas 78701
E-Mail: william.akins@fisherbroyles.com
Telephone: (214) 924-9504
Facsimile: (214) 481-3768

ATTORNEYS FOR PLAINTIFF

# SCHEDULE A

## I. DEFINITIONS

Capitalized terms shall have the meaning provided in Plaintiff's first set of interrogatories directed to Defendant CFC or as otherwise provided herein.

## II. TOPICS FOR EXAMINATION

1. The designated representative or representatives of CFC with the most knowledge of the claims and defenses in relation to the Complaint filed by Plaintiff in the above-captioned action.

2. The designated representative or representatives of CFC with the most knowledge of its relationship with VHS.

3. The designated representative or representatives of CFC with the most knowledge of its relationship with VB.

4. The designated representative or representatives of CFC with the most knowledge of the communications between it and Plaintiff concerning the medical services and supplies provided to Plaintiff by VHS/VB, which services and supplies occurred during the Date of Service, including, but not limited to, (a) pre-admission communications, (b) the services and supplies that were provided to Plaintiff, (c) the cost of the services and supplies that were provided to Plaintiff, (d) VHS/VB's Chargemaster List, (e) acceptance of insurance payments, (f) collection of the alleged outstanding amount, and (g) reporting to credit reporting agencies.

5. The designated representative or representatives of CFC with the most knowledge of the communications between it and VHS/VB concerning the medical services and supplies provided to Plaintiff by VHS/VB, which services and supplies occurred during the Date of Service, including, but not limited to, (a) pre-admission communications, (b) the services and supplies that

PLAINTIFF'S NOTICE OF ORAL DEPOSITION OF SYNDICATED OFFICE SYSTEMS, LLC, INDIVIDUALLY AND D/B/A CENTRAL FINANCIAL CONTROL

PAGE 3

*Plaintiff's Exhibit 39*

were provided to Plaintiff, (c) the cost of the services and supplies that were provided to Plaintiff, (d) VHS/VB's Chargemaster List, (e) acceptance of insurance payments, (f) collection of the alleged outstanding amount, and (g) reporting to credit reporting agencies.

6.  The designated representative or representatives of CFC with the most knowledge of communications with any credit reporting agency concerning Plaintiff's alleged debt for medical services and supplies provided to Plaintiff by VHS/VB, which services and supplies occurred during each of the Date of Service.

7.  The designated representative or representatives of CFC with the most knowledge of the documents and information provided to it by VHS/VB concerning Plaintiff.

8.  The designated representative or representatives of CFC with the most knowledge of how and what documents it relied upon to "validate" Plaintiff's alleged debt owed to VHS/VB.

9.  The designated representative or representatives of CFC with the most knowledge of the date it "validated" Plaintiff's alleged debt to VHS/VB and the date and method by which CFC informed Plaintiff of the "validation".

10. The designated representative or representatives of CFC with the most knowledge of its corporate history, records, and trade names.